IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ODELIA ABECASSIS, et al., | § | |
| | § | |
| Plaintiffs, | § | JURY |
| | § | |
| v. | § | C.A. NO. 4:09-CV-03884 |
| | § | |
| OSCAR S. WYATT, JR., et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT EL PASO CORPORATION'S REPLY TO PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

| | |
|---|---|
| John L. Shoemaker | William R. Pakalka |
| EL PASO CORPORATION | Layne E. Kruse |
| 1001 Louisiana, Suite 1545A | Anne M. Rodgers |
| Houston, Texas 77002 | Marsha Z. Gerber |
| Telephone: (713) 420-5651 | FULBRIGHT & JAWORSKI L.L.P. |
| Telecopier: (713) 420-6060 | 1301 McKinney, Suite 5100 |
| | Houston, Texas 77010 |
| | Telephone: (713) 651-5151 |
| | Telecopier: (713) 651-5246 |

**ATTORNEYS FOR DEFENDANT
EL PASO CORPORATION**

85672214

## TABLE OF CONTENTS

Page

ARGUMENT AND AUTHORITIES ................................................................................................ 1

    I.    Plaintiffs Fail To Allege Essential Elements of Their Time-Barred ATA Claim ................................................................................................................... 1

        A.    Plaintiffs Fail to Plead an Underlying Criminal Violation by El Paso ....................................................................................................... 1

            1.    Plaintiffs' Attempted Use of Section 2332d as an Underlying Offense Is Unprecedented and Unwarranted; A Financial Transaction With a Foreign Government Is Not International Terrorism ............................................................... 2

            2.    Plaintiffs' Section 2339B Claim Fails Because Iraq Is Not a Foreign Terrorist Organization .......................................................... 4

            3.    Plaintiffs' Section 2339A and 2339C Claims Fail Because Plaintiffs Do Not Allege Intent or Knowledge that OFP Money Would be Used for Terrorism ............................................. 6

        B.    Plaintiffs Fail To Allege That OFP Kickback Money Was Targeted to Fund Terrorism Against Americans ......................................................... 9

        C.    Plaintiffs Fail To Allege Causation Because They Do Not Allege That Their Injuries Were a Natural Consequence of El Paso's Actions ................................................................................................ 10

        D.    Plaintiffs' ATA Claim Is Barred By Limitations ..................................... 11

    II.    Plaintiffs' Remaining Claims Should Be Dismissed Because They Are Derivative of Primary Liability ............................................................................... 14

    III.    If Reached, El Paso Is Not A Proper Party To This Lawsuit ................................ 14

CONCLUSION ............................................................................................................................... 14

CERTIFICATE OF SERVICE ....................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abecassis v. Wyatt*,
 No. H-09-3884, 2010 WL 1286871 (S.D. Tex. Mar. 31, 2010) .........................1, 2, 3, 7, 11

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2009).......................................................................................................1

*Boim v. Holy Land Found. (Boim III)*,
 549 F.3d 685 (7th Cir. 2008) .........................................................................................9, 10

*Boim v. Quranic Literacy Institute* (*Boim I*),
 291 F.3d 1000, 1028 ..........................................................................................................2, 3

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
 274 F. Supp. 2d 86 (D.D.C. 2003).....................................................................................1

*In re Chiquita Brands Int'l, Inc. Alien Tort Statute and S'holder Derivative Litig.*,
 Nos. 08-1916, 08-20641, 2010 WL 432426 (S.D. Fla. Feb. 4, 2010) ...........................8, 11

*David v. Bayless*,
 70 F.3d 367 (5th Cir. 1995) ...............................................................................................13

*Holder v. Humanitarian Law Project*,
 130 S. Ct. 2705 (2010)................................................................................................5, 6, 11

*In re Katrina Canal Breaches Litig.*,
 495 F.3d 191 (5th Cir. 2007) .............................................................................................4

*Little v. Arab Bank*,
 507 F. Supp. 2d. 267 (E.D.N.Y. 2007) ........................................................................13, 14

*Mastafa v. Australian Wheat Board Ltd.*,
 No. 07-Civ-7955(GEL), 2008 WL 4378443 (S.D.N.Y. Sept. 25, 2008)............................3

*Saher v. Norton Simon Museum of Art*,
 592 F.3d 954 (9th Cir. 2010) .............................................................................................13

*Teemac v. Henderson*,
 298 F.3d 452 (5th Cir. 2002) .............................................................................................12

*In re UBS Auction Rate Sec. Litig.*,
 No. 08 Civ. 2967, 2010 WL 2541166 (June 10, 2010).....................................................13

*Williams v. Travelers Ins. Co.*,
 99 F.3d 1135 (5th Cir. 1996) .............................................................................................4

- iii -

## RULES AND STATUTES

18 U.S.C. § 2232d .................................................................................................................. 1

18 U.S.C. § 2239B .............................................................................................................. 5, 6

18 U.S.C. § 2331 .................................................................................................................... 2

18 U.S.C. § 2332d ............................................................................................................. 2, 3

18 U.S.C. § 2333(a) ............................................................................................................... 2

18 U.S.C. § 2339A ..................................................................................................... 1, 2, 3, 6, 7

18 U.S.C. § 2339B ..................................................................................................... 1, 4, 5, 6, 7

18 U.S.C. § 2339C ........................................................................................................... 1, 6, 7

**ARGUMENT AND AUTHORITIES**

**I.      Plaintiffs Fail To Allege Essential Elements of Their Time-Barred ATA Claim**

Plaintiffs' unsupported and conclusory amended complaint does not provide "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Abecassis v. Wyatt*, No. H-09-3884, 2010 WL 1286871, at \*22 (S.D. Tex. Mar. 31, 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  While their ATA claim is not subject to a heightened pleading standard, "[t]he use of the privileged medium of a lawsuit to publicly label someone an accomplice of terrorists can cause incalculable reputational damage." *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 103 (D.D.C. 2003). Therefore, "given the extreme nature of the charge of terrorism, fairness requires extra-careful scrutiny of plaintiffs' allegations as to any particular defendant, to ensure that he -- or it -- does indeed have fair notice of what the plaintiffs' claim is and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the [complaint]." *Id.* at 103-04.

**A.      Plaintiffs Fail to Plead an Underlying Criminal Violation by El Paso**

Plaintiffs claim they can meet their pleading burden if they "point to" the criminal statutes they say El Paso violated and upon which they base their civil ATA claim. *See* Plaintiffs' Opposition, D.E. 141 at 9 n.4.  Despite their failure to do so in their amended complaint, plaintiffs now point in a footnote in their brief to 18 U.S.C. §§ 2232d, 2339A, 2339B, and 2339C as the statutes El Paso allegedly violated. *Id.*  Aside from that brief mention, plaintiffs never again discuss those statutes or try to show how El Paso violated any of them.

1. **Plaintiffs' Attempted Use of Section 2332d as an Underlying Offense Is Unprecedented and Unwarranted; A Financial Transaction With a Foreign Government Is Not International Terrorism**

As an initial matter, there is no indication that Congress intended a private right of action for violations of 18 U.S.C. § 2332d, which prohibits engaging in a financial transaction with the government of a country designated as supporting international terrorism. *See* 18 U.S.C. § 2332d.[1] El Paso noted in its motion that it has found no case in which Section 2332d has been used as a vehicle to impose civil liability under the ATA. And Section 2332d is not an enumerated offense in 18 U.S.C. § 2339A, which prohibits providing material support to terrorists.

Moreover, the ATA provides a civil remedy only for U.S. nationals "injured . . . by reason of an act of ***international terrorism*** . . . ." 18 U.S.C. § 2333(a). Therefore, if Section 2232d could somehow provide a private cause of action, then engaging in a financial transaction with the government of a country designated as supporting international terrorism would have to constitute "international terrorism" as defined in the ATA, 18 U.S.C. § 2331(1). *See Abecassis*, 2010 WL 1286871, at *29 (quoting 18 U.S.C. 2331(1)). However, the court in *Boim I* analyzed that definition and determined that "funding, *simpliciter*, of a foreign terrorist organization is not sufficient to constitute an act of terrorism under 18 U.S.C. § 2331." *Boim v. Quranic Literacy Institute (Boim I)*, 291 F.3d 1000, 1028; *see also Abecassis*, 2010 WL 1286871, at *35. To hold

---

[1] Specifically, Section 2332d provides, "[e]xcept as provided in regulations issued by the Secretary of the Treasury, in consultation with the Secretary of State, whoever, being a United States person, knowing or having reasonable cause to know that a country is designated under section 6(j) of the Expert Administration Act of 1979 (50 U.S.C. App. 2405) as a country supporting international terrorism, engages in a financial transaction with the government of that country, shall be fined under this title, imprisoned for not more than 10 years, or both." 18 U.S.C. § 2332d.

otherwise, the court reasoned, would "give the statute an almost unlimited reach." *Boim I*, 291 F.3d at 1011.

To prevent that outcome, the court in *Boim I* looked to Section 2333, which requires that the plaintiff "be injured '***by reason of***' an act of international terrorism," meaning that "murder was a reasonably foreseeable result of making the donation." *Id.* at 1011-12 (emphasis added). The act proscribed by Section 2332d, engaging in a financial transaction with a state sponsor of terrorism, is fundamentally different from the acts proscribed by Sections 2339A and B, which were at issue in *Boim* and which prohibit providing "material support for an extensive list of violent crimes associated with terrorism" and providing material support to a foreign terrorist organization. *See id.* at 1014-15.

As this Court has explained, Iraq "was a recognized sovereign nation with a variety of responsibilities and pursuing a variety of interests, with whom American and other companies were encouraged to do business, with restrictions." *Abecassis*, 2010 WL 1286871, at \*39. While murder would likely be the foreseeable result of funding violent acts of terrorism or a designated terrorist organization, it is not the foreseeable result of engaging in a financial transaction with a sovereign state that is designated a state sponsor of terrorism. "As the *Mastafa* court stated, 'aiding the Hussein regime is not the same thing as aiding and abetting its alleged human rights abuses.'" *Id.* (quoting *Mastafa v. Australian Wheat Board Ltd.*, No. 07-Civ-7955(GEL), 2008 WL 4378443, at \*4 (S.D.N.Y. Sept. 25, 2008)). Engaging in a financial transaction with a government, even one designated a sponsor of terrorism, does not fall within the definition of international terrorism. Section 2232d does not provide plaintiffs a vehicle for their ATA claim against El Paso.

Plaintiffs' 2332d claim also fails because plaintiffs have not alleged that El Paso engaged in a financial transaction with a foreign government. Indeed, they concede that El Paso "indirectly" purchased the oil at issue. *See* D.E. 141 ¶ 28. Moreover, El Paso has demonstrated that it is not a proper party to this lawsuit because it did not purchase the oil at issue; rather, three subsidiaries were the purchasers from third parties. *See* D.E. 26, Exh. 1 ¶ 8 at D.E. 26-2; Exh. 1-A at D.E. 26-3 - 26-5. El Paso's purchases of oil of Iraqi origin that are the subject of and central to the amended complaint are the same purchases that were the subject of and central to the original complaint. *Compare, e.g.*, D.E. 3 ¶ 4 (**"**El Paso bought approximately $420 million worth of oil from Iraq and made illegal surcharge payments of approximately $5.5 million dollars to Saddam Hussein and the Saddam Regime") *with* D.E. 121 ¶ 4 (same); D.E. 3 ¶ 14 ("El Paso consented to pay over $7.5 million to settle the charge that it indirectly paid almost $5.5 million in illegal surcharges in order to purchase oil from Iraq under the UN's Oil for Food program."); D.E. 121 ¶ 26 (same). The Court, therefore may consider the contracts for those purchases without converting the motion to dismiss into a motion for summary judgment, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("we may consider the terms of the contracts in assessing the motions to dismiss") (citation omitted); *Williams v. Travelers Ins. Co.*, 99 F.3d 1135 (5th Cir. 1996) (per curiam) (court may consider plaintiff's personnel file referenced in her complaint to ascertain that she "cannot possibly prevail on her theory").

    **2.**  **Plaintiffs' Section 2339B Claim Fails Because Iraq Is Not a Foreign Terrorist Organization**

Similarly of no avail to plaintiffs here is Section 2339B, which prohibits providing "material support or resources to a foreign terrorist organization, or attempt[ing] or conspir[ing]

to do so."[2]  18 U.S.C. § 2339B.  The Government of Iraq was not a designated "foreign terrorist organization" in 2001 or 2002 when the attacks at issue occurred (or, to El Paso's knowledge, at any other time).[3]  Plaintiffs do not allege otherwise.  Indeed, plaintiffs admit as much, but nevertheless make the wholly conclusory and unsupported *ipse dixit* that "there is no meaningful distinction between a FTO and a 'sovereign nation' engaged in, and directing and controlling numerous FTOs engaged in, terrorism targeting American nationals and others."  D.E. 141 at 25.  Congress, however, has made that distinction.  As the Supreme Court recently acknowledged, Section 2339B "only applies to designated foreign terrorist organizations."  *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2728 (2010).  Because Iraq was not a designated terrorist organization, Section 2239B cannot provide the underlying criminal liability for plaintiffs' civil ATA claim.

Additionally, Section 2239B(1) "prohibits providing a service '*to* a foreign terrorist organization.'"  *Id.* at 2721-22 (quoting 18 U.S.C. § 2239B) (emphasis in original).  The Supreme Court has explained that "[t]he use of the word 'to' indicates a connection between the service and the foreign group."  *Id.* at 2722.  Plaintiffs have not pled any connection between El Paso and Hamas and PIJ or AAMB, which are the terrorist organizations to which the suicide bombers at issue here allegedly belonged.  (For that matter, plaintiffs have not alleged a

---

[2] Plaintiffs do not allege that El Paso attempted or conspired to provide material support or resources to a foreign terrorist organization.  There is no allegation regarding any attempt.  And the only sentence in the amended complaint asserting that El Paso may have entered into a conspiracy with Iraq to do so reads, "El Paso and the Coastal Group Defendants utilized the office and name of Sarenco as a front to manage Nafta and Mednafta, and conspire with the Saddam Regime to launder money and pay kickbacks and other illegal payments to Saddam and the Saddam Regime."  D.E. 121 ¶ 38.  Plaintiffs provide no factual basis whatsoever for that allegation with respect to El Paso.

[3] *See* Global Patterns of Terrorism 2001 and 2002, D.E. 127-6 at page 8 of 10, Exh. F to El Paso's Motion at 85; D.E. 127-7 at page 7 of 11, Exh. G to El Paso's Motion at 90.

connnection between El Paso and the Iraq government either.) Plaintiffs' Section 2239B claim fails for that reason as well.

### 3. Plaintiffs' Section 2339A and 2339C Claims Fail Because Plaintiffs Do Not Allege Intent or Knowledge that OFP Money Would be Used for Terrorism

Plaintiffs fail to allege a factual basis for their assertion that El Paso allegedly paid illegal surcharges "knowing and intending that they wre to be used in preparation for, or in carrying out of international terrorism," D.E. 121 at ¶ 244, which is fatal to their claims under the two remaining criminal statutes to which plaintiffs point. The Supreme Court recently confirmed that both Sections 2339A and 2339C require knowledge or intent that the funds are to be used for terrorism.[4] Specifically, the Court contrasted the knowledge requirement in Section 2339B to the "intent language" in Sections 2339A and 2339C, explaining that "Congress did not import the intent language of those provisions into § 2339B." *Humanitarian Law Project*, 130 S. Ct. at

---

[4] Section 2339A provides, "Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out a violation of [enumerated criminal statutes] or in preparation for, or in carrying out, the concealment of an escape from the commission of any such violation, or attempts or conspires to so such an act, shall be fined under this title, imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life." 18 U.S.C. § 2339A.

Section 2339C provides, "Whoever, in a circumstance described in subsection b, by any means, directly or indirectly, unlawfully and willfully provides or collects funds with the intention that such funds by used, or with the knowledge that such funds are to be used, in full or in part, in order to carry out --

    (A) an act which constitutes an offense within the scope of a treaty specified in subsection (e)(7), as implemented by the United States, or

    (B) any other act intended to cause death or serious bodily injury to a civilian, or to any other person not taking an active part in the hostilities in a situation of armed conflict, when the purpose of such act, by its nature or context, is to intimidate a population, or to compel a government or an international organization to do or to abstain from doing any act,

shall be punished as prescribed in subsection (d)(1)." 18 U.S.C. § 2339C.

2717. Section 2339A establishes "criminal penalties for one who 'provides material support or resources . . . *knowing or intending that they are to be used* in preparation for, or in carrying out, a violation of' statutes prohibiting violent terrorist acts." *Id.* (quoting 18 U.S.C. § 2339A(a)) (emphasis added). Section 2339C similarly sets "out criminal penalties for one who 'unlawfully and willfully provides or collects funds *with the intention that such funds be used or with the knowledge that such funds are to be used*, in full or in part, in order to carry out' other unlawful acts." *Id.* (quoting 18 U.S.C. § 2339C(a)(1)) (emphasis added).

Plaintiffs' amended complaint does not meet the knowledge and intent requirements of Sections 2339A or 2339C. The Court explained just last month that while "the mental state for a violation of § 2339B" is merely "knowledge about the organization's connection to terrorism," both Sections 2339A and 2339C require knowledge or intent "to further terrorist activity." *Id.* Plaintiffs' assertion here that "[t]he mere fact that the funds *could* have been used for various reasons does not justify dismissal," D.E. 141 at 20, is directly contrary to *Humanitarian Law Project*.

Plaintiffs proclaim as "misplaced" El Paso's "reliance on the fact that the news articles cited in Plaintiffs' complaint do not specifically link the illegal surcharges paid on Iraqi oil to Hussein's payments to suicide bombers." D.E. 141 at 12. But this Court did not find that fact irrelevant in dismissing plaintiffs' first complaint: "There are no allegations that, if proven, would show that the defendants had information that Hussein was using OFP kickback money to fund terrorism targeting Americans." *Abecassis*, 2010 WL 1286871, at *38. The Court allowed plaintiffs to replead their ATA claims based on their representation "that some other new articles may have been published." *Abecassis*, 2010 WL 1286871, at *39. Plaintiffs merely repeat in their brief the allegations in their amended complaint, which El Paso has already demonstrated

do not link OFP payments to Hussein's support of terrorism, let alone Palestinian suicide bombers. *See* El Paso's Motion to Dismiss, D.E. 127 at 8-12; Plaintiffs' Opposition, D.E. 141 at 13-14 (repeating allegations in D.E. 121 ¶¶ 48, 53-57, 59, 62, 65, 70, 85, 103) and at 15 (repeating allegations in D.E. 121 ¶¶ 106-110, 112). These allegations and reports do no more to show El Paso's knowledge or intent than those cited in plaintiffs' original complaint. Indeed, the articles indicate that Hussein was writing checks for the political purpose of currying the favor of the Palestinians. *See, e.g.*, D.E. 127-2, Exh. B to El Paso's Motion ("Hussein's campaign of benevolence appears to have won the hearts of many Palestinians, who are critical of Arafat for his handling of peace negotiations and for corruption in his government.").

Plaintiffs then resort to outright fabrications to try to make this case appear similar to *In re Chiquita Brands Int'l, Inc. Alien Tort Statute and S'holder Derivative Litig.*, Nos. 08-1916, 08-20641, 2010 WL 432426 (S.D. Fla. Feb. 4, 2010). There is absolutely no factual allegation to support plaintiffs' statement that "El Paso took affirmative steps to withhold its illegal surcharge payments from the United States government, including the filing of false and misleading documents and burying illegal kickback payments in its bookkeeping." D.E. 141 at 12.[5] Moreover, far from engaging in "atypical practices," El Paso was purchasing crude from third parties for its refinery. There is no factual basis alleged that would link those purchases to any "front company" other than plaintiffs' inserting phrases like "on behalf of El Paso," "and El Paso," and "for El Paso's benefit" in their amended complaint.

---

[5] Equally baseless are plaintiffs' statements that "El Paso continued to pay illegal surcharges even after it was reported that Saddam Hussein was using oil proceeds to fund terrorism," D.E. 141 at 17, and that "it is irrelevant whether El Paso was the direct purchaser of the oil as it know and took affirmative actions to conceal its connection with illegal front companies." *Id.* at 18 n.11.

### B. Plaintiffs Fail To Allege That OFP Kickback Money Was Targeted to Fund Terrorism Against Americans

Plaintiffs do not dispute El Paso's showing that the very State Department reports plaintiffs cite in their amended complaint establish that the terrorist organizations who claimed responsibility for the bombings that allegedly injured plaintiffs were *not* targeting Americans. *See* D.E. 127 at 11-12. Plaintiffs respond that it is somehow irrelevant that the terrorist organizations plaintiffs claim caused injuries for which they seek to recover in this lawsuit were not targeting Americans. Plaintiffs now assert that the relevant inquiry is instead whether Iraq was generally targeting terrorism against Americans. But the uncontested fact that the OFP kickback funds at issue allegedly were used by Iraq to fund terrorism *not* targeting Americans is an incurable defect in plaintiffs' ATA claim.[6]

Even if it were only the Iraq government, rather than the terrorist organizations or the suicide bombers themselves, that was required to target terrorist acts against Americans,[7] plaintiffs have not made that showing. Plaintiffs cite the Patterns of Global Terrorism for 2001 and 2002 for the propositions that Iraq "provided training and political encouragement to numerous terrorist groups, although its main focus was on dissident Iraqi activity overseas"; Iraq's "history is studded with anti-Western attacks"; Iraq "prepared for possible attacks against Western targets"; Iraqi Intelligence Services "laid the groundwork for possible attacks against civilian and military targets in the United States and other Western countries"; Baghdad overtly assisted a "variety of Palestinian groups opposed to peace with Israel"; and that Saddam paid the

---

[6] If it is not, then the Court may wish to reconsider its ATA standing ruling because the complete absence of a causal chain linking kickbacks allegedly paid by El Paso to the acts that allegedly injured these plaintiffs surely would not pass Article III muster.

[7] As Judge Wood noted, the *en banc* majority in *Boim III* did not provide an answer to that question. *See Boim v. Holy Land Found. (Boim III)*, 549 F.3d 685, 725 (7th Cir. 2008) (Wood, J., concurring in part and dissenting in part).

families of deceased "Palestinian suicide bombers to encourage Palestinian terrorism." D.E. 141 at 15. At best, plaintiffs have shown that Iraq had targeted the entire Western world, which is not sufficient. *See Boim III*, 549 F.3d at 725 (Wood, J., concurring in part and dissenting in part) ("I find it difficult to read § 2333 as creating a claim against an organization that has, in effect, declared war on the entirety of civilization."). Additionally, none of plaintiffs' cites links OFP kickback payments to Iraq's support of terrorism.[8]

### C. Plaintiffs Fail To Allege Causation Because They Do Not Allege That Their Injuries Were a Natural Consequence of El Paso's Actions

El Paso is not asking the "Court to decide as a *matter of law* that it is implausible that El Paso could foresee Saddam Hussein would use these funds to finance suicide bombings." D.E. 141 at 23. El Paso is asking the Court to find that plaintiffs have failed to allege causation because they have not alleged a plausible factual basis for the proposition that El Paso's purchase of oil of Iraqi origin before March 9, 2002, should have made it anticipate that its payments would be used to finance Palestinian suicide bombings in Israel -- *i.e.*, they have not alleged facts linking the alleged conduct to the alleged injury.

Instead, plaintiffs now do a complete about-face with their causation argument. They even go so far as to say "it is alleged that Saddam Hussein is the very actor responsible for the attacks that killed Plaintiffs." D.E. 141 at 24. They assert no factual basis for that statement, and never try to reconcile it with the allegations in their complaint that suicide bombers from Hamas or AAMB and PIJ perpetrated those attacks. *See, e.g.*, D.E. 121 ¶¶ 232-234. They also say

---

[8] Plaintiffs cite one *Oil Daily* article reporting on a Senate vote "in favor of stopping oil imports from Iraq until it stops funding Palestine suicide bombers." *See* D.E. 141-5. While the article does note that "[t]he US imports oil from Iraq under the UN's oil-for-food program," it says nothing about any illegal surcharges. Additionally, the article is dated April 18, 2002, well after the last bombing at issue here, which was on March 9, 2002. As with the August 2002 *Washington Post* article plaintiffs previously cited, the *Oil Daily* article "does not allege knowledge during the period relevant to this case." *Abecassis*, 2010 WL 12868871, at *39.

(again without any factual basis) that they "are not alleging that Iraq was a 'funnel of funds to terrorists' but that Defendants were the 'funnel' and Hussein was the 'terrorist.'" *Id*. This would indicate that plaintiffs seek to hold El Paso liable as a primary violator of Sections 2339A and 2339C.

But as the Court previously explained, regardless whether the alleged liability is primary or vicarious, plaintiffs' wordplay with labels does not change the fact that El Paso could only be held liable "for those injuries that might have reasonably been anticipated as a natural consequence of [its] actions." *Abecassis*, 2010 WL 1286871, at *38. Labeling Iraq a terrorist rather than a funnel for funds to terrorists does not change the fact that "Iraq was a recognized sovereign nation with a variety of responsibilities and pursuing a variety of interests, with whom American and other companies were encouraged to do business." *Id.* at *39. And as noted above, the Supreme Court disagrees with plaintiffs' assertion that "there is no meaningful distinction between a FTO and a 'sovereign nation' engaged in, and directing and controlling numerous FTOs engaged in terrorism targeting American nationals and others." D.E. 141 at 25; *Humanitarian Law Project*, 130 S. Ct. at 2728. As before, plaintiffs have failed to allege facts making it plausible that that El Paso should have reasonably anticipated that a natural consequence of its purchases of oil of Iraqi origin would be that funds from those purchases would be used to pay the families of Palestinian suicide bombers so as to incite other suicide bombers to injure people in Israel, let alone American nationals.

D. **Plaintiffs' ATA Claim Is Barred By Limitations**

Plaintiffs appear to agree that they are not entitled to invoke the ATA's statutory tolling provision or the due diligence-discovery rule. *See* D.E. 141 at 26-31 & n.18. They apparently seek instead to invoke the extraordinary doctrine of equitable tolling. They contend "[t]he fact that Defendants intentionally concealed facts relating [to] their wrongdoing is undeniable." *Id.* at

28. It should be no surprise that El Paso in fact denies that, and plaintiffs allege no factual basis in their amended complaint to support the assertion that El Paso concealed anything with respect to its purchases of oil of Iraqi origin. Plaintiffs' equitable tolling argument should be denied for that reason alone because "[t]he party who invokes equitable tolling bears the burden of proof." *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002).

Indeed, nowhere do plaintiffs allege what El Paso allegedly did to "fruadulently conceal" any of its actions. Plaintiffs allege no facts showing that El Paso made "furtive, secret payments," "assist[ed] in creating false front organizations and dummy corporations," "buried secret payments in its bookeeping," made any "payments . . . through intermediaries," made "false and misleading entries on its books and records," and "fil[ed] false and/or misleading documents with the . . . United States government." *See* D.E. 141 at 28 (citing *Chiquita*, 2010 U.S. Dist. LEXIS at *32-33).

In fact, far from hiding anything, on November 23, 2004, El Paso publicly disclosed in its SEC Form 10-Q the following information:

> In September 2004, The Coastal Corporation (now known as El Paso CGP Company, which we acquired in January 2001) received a subpoena from the grand jury of the U.S. District Court for the Southern District of New York to produce records regarding the United Nations' Oil for Food Program governing sales of Iraqi oil. The subpoena seeks various records relating to transactions in oil of Iraqi origin[] during the period from 1995 to 2003. In November 2004, we received an order from the SEC to provide a written statement and to produce certain documents in connection with the Oil for Food Program. We have also received an inquiry from the United States Senate's Permanent Subcommittee of Investigations related to a specific transaction in 2000.
>
> In September 2004, the Special Advisor to the Director of Central Intelligence issued a report on the Iraqi regime, including the Oil for Food Program. In part, the report found that the Iraqi regime earned kick backs or surcharges associated with the Oil for Food Program. The report did not name U.S. companies or individuals for privacy reasons, but according to various news reports congressional sources have identified The Coastal Corporation and the former chairman and CEO of Coastal, among others, as having purchased Iraqi crude during the period when allegedly improper surcharges were assessed by Iraq.

*See* Excerpt from El Paso Corporation Form 10-Q for the Period Ended June 30, 2004, filed as Exhibit H to this Reply.**9**

As that filing indicates, numerous news reports preceded El Paso's announcement. For example, a prominant headline in the October 13, 2004 Wall Street Journal read, "Iraq: Oil-for Food probe hits U.S. Oil Companies -- Exxon, Chevron, and El Paso Are Named in CIA Report On Hussein-Era Program.**10**  *See* Exhibit I to this Reply. An October 11, 2004 report in CNN Money noted that "[t]he SEC is seeking information on at least three publicly held companies that did business with Iraq -- El Paso and two suppliers of humanitarian goods to Iraq -- Wyeth and Tyco Itnernational, according to the companies." *See* Exhibit J to this Reply.**11**  The storm warnings that plaintiffs should have pursued, therefore, were fully public by October 2004 at the latest. The first eight ATA plaintiffs did not file suit until January 2, 2009, over four years later. The remainder of the ATA plaintiffs did not file suit until April 23, 2010, over five years later.

Not surprisingly, therefore, plaintiffs allege no facts to demonstrate what they themselves did to fulfill their admitted duty to "'exercise[] due diligence in pursuing the discovery of the claim during the period they seek to have tolled.'" D.E. 141 at 27 (citing *Little v. Arab Bank*, 507 F. Supp. 2d. 267, at 276-77 (E.D.N.Y. 2007). Plaintiffs have not met their burden upon evoking the doctrine of equitable tolling to show extraordinary circumstances "'that are both

---

**9** A*vailable at* http://www.sec.gov/Archives/edgar/data/1066107/000095012904009313/h19668e10vqpdf.pdf at 26. The Court may "refer to matters of public record when deciding a 12(b)(6) motion to dismiss." *David v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995) (citation omitted).

**10** The Court  may take judicial notice of newspaper articles in considering a motion to dismiss "to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010) (citations omitted); *see also In re UBS Auction Rate Sec. Litig.*, No. 08 Civ. 2967, 2010 WL 2541166, at *15-16 (June 10, 2010) (the fact of press publications is properly subject to judicial notice on a motion to dismiss).

**11** *Available at* http://money.cnn.com/2004/12/16/news/international/oil_for_food/.

beyond their control and unavoidable even with diligence.'" *Id.* (citing *Chiquita*, 2010 U.S. Dist. LEXIS 9488, at *31). The claims of all of the ATA plaintiffs are barred by limitations.

## II. Plaintiffs' Remaining Claims Should Be Dismissed Because They Are Derivative of Primary Liability

Plaintiffs appear to agree that their miscellaneous claims are derivative of primary liability, D.E. 141 at 31-32.

## III. If Reached, El Paso Is Not A Proper Party To This Lawsuit

Both plaintiffs and El Paso have adopted their prior briefing and exhibits with respect to the issue of whether El Paso is a proper party to this lawsuit. The Court may therefore take notice that El Paso was not a party to the 14 purchases of crude of Iraqi origin that plaintiffs attribute to it. Those transactions were entered into by subsidiaries of the post-acquisition Coastal, now known as El Paso CGP Company L.L.C. *See* D.E. 27-2 ¶ 8. Additionally, El Paso did not acquire the assets and liabilitites of The Coastal Corporation; those assets and liabilities stayed with Coastal (now El Paso CGP Company L.L.C.), a wholly owned subsidiary of El Paso. *See id.* ¶¶ 4-5. El Paso is simply not a proper party to this lawsuit.

## CONCLUSION

For all these reasons, defendant El Paso Corporation respectfully requests that the Court dismiss plaintiffs' amended complaint with prejudice. El Paso requests all other relief to which it may be justly entitled.

Respectfully submitted,


   */s/ William R. Pakalka*
William R. Pakalka
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone:  (713) 651-5151
Telecopier:  (713) 651-5246

Attorney-in-Charge for Defendant
El Paso Corporation

Of Counsel:
   Layne E. Kruse
   Anne M. Rodgers
   Marsha Z. Gerber
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone:  (713) 651-5151
Telecopier:  (713) 651-5246

   John L. Shoemaker
EL PASO CORPORATION
1001 Louisiana, Suite 1545A
Houston, Texas  77002
Telephone:  (713) 420-5651
Telecopier:  (713) 420-6060

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2010, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all registered counsel of record listed below:

Carl Parker
The Parker Law Firm
1 Plaza Square
Port Arthur, Texas  77642

Francis I. Spagnoletti
David S. Toy
401 Louisiana Street, 8th Floor
Houston, Texas  77002

Dale Jefferson
Raul Suazo
Martin, Disiere, Jefferson & Wisdom, L.L.P.
808 Travis St., Suite 1800
Houston, Texas  77002

Michael J. Miller
The Miller Firm, LLC
108 Railroad Avenue
Orange, Virginia  22960

The following counsel will be served by U.S. Mail:

Gavriel Mairone
Bena Ochs
MM-Law LLC
980 Michigan Avenue, Suite 1400
Chicago, Illinois  60611

Don C. Nelson
3355 West Alabama, Suite 1020
Houston, Texas  77098

     */s/ Anne M. Rodgers*
           Anne M. Rodgers