**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ODELIA ABECASSIS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. No. 4:09-CV-03884 |
| | § | |
| OSCAR S. WYATT, JR., et al., | § | |
| | § | |
| Defendants. | § | |

**CHEVRON CORPORATION'S MOTION TO DISMISS
THIRD-PARTY COMPLAINT AGAINST CHEVRON**

N. Scott Fletcher, attorney-in-charge
TX Bar No. 00789046
S.D. Tex. No. 16546
Christopher H. Domingo
TX Bar No. 24069621
S.D. Tex. No. 1054774
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Phone: 832-239-3939
Fax: 832-239-3600
Email: sfletcher@jonesday.com
          chdomingo@jonesday.com

OF COUNSEL:

Thomas E. Lynch (*pro hac vice* admission pending)
S.D.N.Y. No. TL8540
Meir Feder (*pro hac vice* admission pending)
S.D.N.Y. No. MF2574
JONES DAY
222 East 41st St.
New York, NY 10017
Phone: 212-326-3939
Fax: 212-755-7306
Email: telynch@jonesday.com
          mfeder@jonesday.com

*Attorneys for Third-Party Defendant Chevron Corporation*

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING ........................................................ 1

STATEMENT OF ISSUES ........................................................................................ 2

STANDARD OF REVIEW ....................................................................................... 2

SUMMARY OF ARGUMENT .................................................................................. 3

ARGUMENT ........................................................................................................... 4

    I.      THE THIRD-PARTY COMPLAINT SHOULD BE DISMISSED BECAUSE THERE IS NO PERSONAL JURISDICTION OVER CHEVRON .................................................................................... 4

    II.    THE THIRD-PARTY COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ....................................................... 7

        A.    There is no claim for contribution under the ATA ................................... 7

        B.    Even if a contribution claim did exist, the Third-Party Complaint fails to allege facts to show an underlying violation of the Antiterrorism Act ................................................................................ 12

CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abecassis v. Wyatt,*
704 F. Supp. 2d 623 (S.D. Tex. 2010) .................................................................1, 15

*Abecassis v. Wyatt,*
785 F. Supp. 2d 614 (S.D. Tex. 2011) ...........................................1, 13, 15, 16, 18

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ...........................................................................................9

*Americas Ins. Co. v. Engicon, Inc.,*
894 F. Supp. 1068 (S.D. Tex. 1995) ..............................................................3, 6

*Anderson v. Griffin,*
397 F.3d 515 (7th Cir. 2005) ...........................................................................9

*Asahi Metal Ind. v. Superior Court,*
480 U.S. 102 (1987) ...........................................................................................5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...........................................................................................3

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ...........................................................................................2

*Boim v. Holy Land Found. for Relief and Dev.,*
549 F.3d 685 (7th Cir. 2008) (en banc) ......................................................13, 15

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ...........................................................................................5

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
131 S. Ct. 2846 (2011) .......................................................................................5

*Helicopteros Nacionales de Columbia, S.A. v. Hall,*
466 U.S. 408 (1984) .......................................................................................5, 6

*In re Walker,*
51 F.3d 562 (5th Cir. 1995) .....................................................................8, 10, 11

*Litle v. Arab Bank, PLC,*
611 F. Supp. 2d 233 (E.D.N.Y. 2009) ....................................3, 7, 8, 9, 10, 11, 12

## TABLE OF AUTHORITIES
(continued)

Page

*McFee v. Chevron Int'l Oil Co.*,
    753 S.W.2d 469 (Tex. App.—Houston [1st Dist.] 1988) ........................................6

*Musick, Peeler & Garrett v. Employers Ins. of Wausau*,
    508 U.S. 286 (1993)...........................................................................................12

*Myers v. Lennar Corp.*,
    No. 08–CV–2799 (JFB)(MLO), 2010 WL 1992200 (E.D.N.Y. May 17, 2010) ....................4

*Nw Airlines, Inc. v. Transp. Workers Union of Am.*,
    451 U.S. 77 (1981)...........................................................................................8, 9

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ............................................................................4, 6

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*,
    688 F.3d 214 (5th Cir. 2012) ..........................................................................2, 4, 5

*Rothstein v. UBS AG*,
    --- *F.3d* ---, 2013 WL 535770 (2d Cir. Feb. 14, 2013) ...................................13, 17

*Texas Indus. Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981)...........................................................................8, 9, 10, 11, 12

**STATUTES**

18 U.S.C. §§ 2331 *et seq*............................................................................................1

18 U.S.C. § 2332d(a) ................................................................................................14

18 U.S.C. § 2333................................................................................................8, 9, 13, 15, 17

18 U.S.C. § 2337......................................................................................................11

18 U.S.C. § 2339A..............................................................................................13, 15

18 U.S.C. § 2339B..............................................................................................13, 15

18 U.S.C. § 2339C..............................................................................................13, 15

**TABLE OF AUTHORITIES**
(continued)

**Page**

RULES

Fed. R. Civ. P. 12(b)(2)................................................................................2, 4

Fed. R. Civ. P. 12(b)(6)....................................................................................2

TREATISES

6 Charles Alan Wright, et al., Federal Practice & Procedure–Civil § 1445 (2d ed.).......................4

OTHER AUTHORITIES

137 Cong. Rec. S4511 (Apr. 16, 1991)...........................................................10

S. Rep. No. 102-342 (1992) ...........................................................................10

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs allege that they are victims and family members of persons killed or injured in terrorist attacks in Israel from 2001 to 2002, and they brought claims against Defendants El Paso Corporation, Bayoil Companies, NuCoastal Companies, David Chalmers, Jr., and Oscar Wyatt, Jr.  Plaintiffs allege that Defendants were involved in buying Iraqi oil with payments that included illegal kickbacks to a secret bank account in Jordan controlled by Saddam Hussein, in violation of regulations of the United Nations Oil-for-Food Program ("OFP").  *See Abecassis v. Wyatt*, 785 F. Supp. 2d 614, 617 (S.D. Tex. 2011).  Plaintiffs further allege that Hussein used funds from this account to make reward payments to the families of the suicide bombers who carried out the terrorist attacks in Israel.  *Id.* at 623.

On January 2, 2009, Plaintiffs filed their original complaint, which made claims under the Torture Victims Protection Act ("TVPA"), international law with jurisdiction based on the Alien Tort Statute ("ATS"), and the Antiterrorism Act ("ATA"), 18 U.S.C. §§ 2331 *et seq*.  On March 31, 2010, this Court dismissed the TVPA and ATS claims with prejudice, and dismissed the ATA claims with leave to replead.  *See Abecassis v. Wyatt*, 704 F. Supp. 2d 623 (S.D. Tex. 2010).  Plaintiffs amended their complaint, and on March 31, 2011, this Court denied Defendants' motion to dismiss the ATA claims.  *See Abecassis v. Wyatt*, 785 F. Supp. 2d 614 (S.D. Tex. 2011).

On October 30, 3012, Defendants Bayoil, NuCoastal, Chalmers, and Wyatt ("Third-Party Plaintiffs") filed a Third-Party Complaint against 62 corporations and individuals, including Chevron Corporation ("Chevron").  The Third-Party Complaint did not include any specific allegations regarding Chevron's conduct, and the only factual allegation regarding Third-Party Defendants as a group is that they "made payments to Hussein."  Third-Party Compl. ¶ 3.5. According to the Third-Party Complaint, "any individuals or businesses who paid money to

Hussein as part of doing business with Iraq during the pendency of [the Hussein] Regime would also be liable to Plaintiffs under the ATA." *Id.* ¶ 3.3.  Third-Party Plaintiffs further allege that if they are liable, "then Third Party Defendants are also liable to Third Party Plaintiffs." *Id.* ¶ 3.5. The only cause of action is a claim for contribution to the payment of any award to Plaintiffs.  *Id.* ¶ 4.1.

## STATEMENT OF ISSUES

1.   Whether Third-Party Plaintiffs' claim against Chevron should be dismissed because there is no personal jurisdiction over Chevron.

2.   Whether Third-Party Plaintiffs' claim against Chevron should be dismissed because there is no contribution cause of action for an ATA claim.

3.   Whether Third-Party Plaintiffs' claim against Chevron should be dismissed because—based on the lack of factual allegations regarding conduct, scienter, and causation— they failed to state a claim against Chevron for an underlying violation of the ATA.

## STANDARD OF REVIEW

For issue one, a complaint is properly dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure where, as here, the plaintiffs fail to satisfy their burden of establishing a prima facie basis of minimum contacts with the forum sufficient for personal jurisdiction.  *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219–20 (5th Cir. 2012).

For issues two and three, a complaint is properly dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure where, as here, it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.  Moreover, to overcome a motion to dismiss, the plaintiff must establish "more than a

NYI-4505746v6

sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## SUMMARY OF ARGUMENT

The Third-Party Complaint should be dismissed as against Chevron both for lack of personal jurisdiction over Chevron and for failure to state a claim on which relief can be granted.

To begin with, Third-Party Plaintiffs make no contention that their claim arises from or relates to any contacts between Chevron and Texas—and specific personal jurisdiction does not apply here—nor does Chevron have the substantial and continuous contacts with this forum required to make it "at home" in Texas, as would be necessary for general personal jurisdiction. Chevron is a Delaware corporation based in California, and it has no significant contacts of any kind in Texas. Indeed, this Court has previously recognized that Chevron's lack of contacts in Texas precludes general personal jurisdiction over Chevron. *See Americas Ins. Co. v. Engicon, Inc.*, 894 F. Supp. 1068 (S.D. Tex. 1995).

Furthermore, the lone claim against Chevron—for "contribution"—has no legal basis. Supreme Court precedent makes clear that no claim for contribution exists with respect to federal statutory causes of action unless created by statute or common law. There is nothing in the ATA to suggest that Congress intended to allow a claim for contribution, and there is likewise nothing in the ATA to suggest that Congress was empowering courts to create federal common law on this issue. There is therefore no claim for contribution available to a defendant in an ATA action, as the one court to address the issue has held. *See Litle v. Arab Bank, PLC*, 611 F. Supp. 2d 233 (E.D.N.Y. 2009).

Finally, even if a cause of action for contribution did exist, it would still require Third-Party Plaintiffs to state a claim against Chevron for an underlying violation of the ATA, and there are no factual allegations to support such a claim. A claim under the ATA requires

NYI-4505746v6

material support for terrorism, knowledge or intent to provide such support to a terrorist group, and causation of the harm to plaintiffs.  Here, Third-Party Plaintiffs do not make any factual allegations specific to Chevron.  Moreover, their only factual allegation regarding Third-Party Defendants as a group is that they paid money to the Hussein regime.  However, this lone allegation does not establish the conduct, scienter, or causation elements required for an ATA claim.

## ARGUMENT

## I.    THE THIRD-PARTY COMPLAINT SHOULD BE DISMISSED BECAUSE THERE IS NO PERSONAL JURISDICTION OVER CHEVRON

This Court lacks personal jurisdiction over Chevron, and therefore Chevron should be dismissed from the case.  *See* Fed. R. Civ. P. 12(b)(2).  "The cases unanimously hold that a federal court must obtain personal jurisdiction over a third-party defendant before it proceeds to adjudicate a third-party claim."  *Myers v. Lennar Corp.*, No. 08–CV–2799 (JFB)(MLO), 2010 WL 1992200, at *10 (E.D.N.Y. May 17, 2010) (quoting 6 Charles Alan Wright, et al., Federal Practice & Procedure–Civil § 1445 (2d ed.)) (attached hereto as Exhibits A and B, respectively).  Third-Party Plaintiffs bear the burden of establishing personal jurisdiction over Chevron, *see Pervasive Software*, 688 F.3d at 219, and conclusory allegations are insufficient to satisfy this burden, *see Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).  The burden rests squarely on Third-Party Plaintiffs to establish, on at least a *prima facie* basis, that (a) "the forum state's long-arm statute . . . confer[s] personal jurisdiction" and (b) "the exercise of jurisdiction [does] not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment."  *Pervasive Software*, 688 F.3d at 220.  Because Texas' long-arm statute permits the exercise of jurisdiction over a nonresident defendant to the fullest extent allowed by the United States Constitution, these two inquiries merge into one.  *See id.*

NYI-4505746v6

To carry its burden, a plaintiff must show that the non-resident defendant has "purposefully established 'minimum contacts' in the forum State." *Asahi Metal Ind. v. Superior Court*, 480 U.S. 102, 108–09 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  These minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal*, 480 U.S. at 109 (citations omitted); *see also Burger King*, 471 U.S. at 474 (plaintiff must show that "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there").  While personal jurisdiction can be based on general or specific jurisdiction, Third-Party Plaintiffs do not identify any conduct in Texas related to this case, and thus specific jurisdiction is inapplicable.  *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) (specific jurisdiction refers to an exercise of jurisdiction based on a controversy "arising out of or related to the defendant's contacts with the forum").

There is also no general jurisdiction here.  The Supreme Court recently made clear that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see also Pervasive Software*, 688 F.3d at 230–31 (relying upon the "at home" requirement to deny personal jurisdiction over a corporation).  *Goodyear* suggested that the "at home" requirement includes only the place of incorporation and principal place of business. 131 S. Ct. at 2854 (citing article that "identif[ies] domicile, place of incorporation, and principal place of business as 'paradig[m]' bases for the exercise of general jurisdiction").  In any event, at a minimum, general jurisdiction

NYI-4505746v6

requires such "continuous and systematic general business contacts" with the forum as to render any exercise of jurisdiction fundamentally fair. *Helicopteros*, 466 U.S. at 416.

Here, there are no significant contacts between Chevron and Texas, let alone the continuous and systematic contacts required for general jurisdiction. The only allegation in the Third-Party Complaint is that Third-Party Defendants have "continuous and systematic contacts with and in the State of Texas," Third-Party Compl. ¶ 2.2, but that conclusory allegation is insufficient to satisfy Third-Party Plaintiffs' burden to establish jurisdiction. *See Panda Brandywine*, 253 F.3d at 869. The only allegation specific to Chevron is that Chevron "has offices and operations in this District." Third-Party Compl. ¶ 1.5.20. However, Third-Party Plaintiffs do not identify these "offices" and "operations" because they do not exist.

The facts establish that Chevron has no substantial contacts in Texas. This Court and a Texas state court have previously recognized that there is no general jurisdiction over Chevron in Texas because its contacts with this forum are insufficient. *See Americas Ins. Co. v. Engicon, Inc.*, 894 F. Supp. 1068 (S.D. Tex. 1995); *McFee v. Chevron Int'l Oil Co.*, 753 S.W.2d 469, 473 (Tex. App.—Houston [1st Dist.] 1988). As this Court explained, "Chevron is a Delaware corporation with its principal place of business in California," "does not maintain an office in Texas," and "does not have, conduct, or transact any business in Texas." *Americas Ins.*, 894 F. Supp. at 1072; *see also id.* at 1073 ("The Defendant engages in no activity whatsoever in Texas."). Thus, Chevron's "contacts with Texas were not sufficiently 'continuous and systematic,' and 'substantial' to merit this Court's exercise of general personal jurisdiction." *Id.* at 1072.

Third-Party Plaintiffs do not allege that anything about Chevron's contacts with Texas has changed since these rulings, and as shown in the declaration filed with this motion, the same

-6-

lack of contacts is true today.  Based in San Ramon, California, and organized under the laws of Delaware, Chevron is a holding company that owns stock in a number of other companies.  (*See* Declaration of Frank G. Soler, "Soler Decl." ¶¶ 6–8.)  Chevron has no significant contacts with the state of Texas because it:

- Is not registered or licensed to do business in Texas.
- Does not have a registered agent for service of process in Texas.
- Does not conduct business in Texas.
- Has no office in Texas.
- Has no bank account in Texas.
- Has no property in Texas.
- Does not sell products in Texas.
- Does not provide services in Texas.

(Soler Decl. ¶¶ 10–17.)  Thus, Chevron lacks the contacts necessary to make it generally amenable to the personal jurisdiction of Texas courts.

## II.   THE THIRD-PARTY COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.   There is no claim for contribution under the ATA.

There is no legal basis to support the creation of a claim for contribution under the ATA. For federal statutory claims like an ATA claim, a defendant has no automatic right to seek contribution from other alleged tortfeasors.  Rather, such a right exists only when affirmatively created by Congress or by the federal courts as federal common law.  In the case of the ATA, there is no such contribution right.  And since contribution is the only claim Third-Party Plaintiffs allege, *see* Third-Party Compl. ¶ 4.1, the Third-Party Complaint should be dismissed.

The lone court to consider the issue held that a defendant to an ATA claim has no claim for contribution from other supposed wrongdoers.  *See Litle v. Arab Bank, PLC*, 611 F. Supp. 2d 233 (E.D.N.Y. 2009).  In *Litle*, victims of terrorist attacks brought an ATA claim against Arab Bank for providing banking and administrative services to terrorist organizations.  *Id.* at 235.

NYI-4505746v6

Arab Bank then filed a third-party complaint against several other banks, alleging that if it were liable under the ATA, then those banks would also be liable. *Id.* at 236. The district court held that neither the ATA nor common law created a right to contribution, and therefore the third-party claim must be dismissed. *Id.* at 248–49.

The decision in *Litle* necessarily follows from Supreme Court precedent regarding when a claim for contribution can and cannot be read into a federal statute. "[A] right to contribution may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution." *Texas Indus. Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981). Neither route is available to the Third Party Plaintiffs here.

*First*, the ATA itself does not create a right to contribution. There is obviously no express right because the ATA does not mention contribution at all. *See* 18 U.S.C. § 2333; *Litle*, 611 F. Supp. 2d at 241. There is also no clear implication of congressional intent to create such a right. The Supreme Court and Fifth Circuit have consistently held that a right of contribution does not exist under statutes, like the ATA, that contain an express cause of action without an express right of contribution. *See, e.g.*, *Nw Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77 (1981) (Equal Pay Act and Title VII); *Texas Indus.*, 451 U.S. 630 (Sherman and Clayton Acts); *In re Walker*, 51 F.3d 562 (5th Cir. 1995) (Bankruptcy Code § 362). In deciding whether there is a clear implication, the "focus . . . is on the intent of Congress," based on "the identity of the class for whose benefit the statute was enacted," "the overall legislative scheme," and "legislative history." *Texas Indus.*, 451 U.S. at 639; *see also In re Walker*, 51 F.3d at 566. More recently, the Court has made clear that implied rights of action are particularly disfavored, and interpreted a contribution case (*Northwest Airlines*) to say that "the interpretive inquiry begins

with the text and structure of the statute, and ends once it has become clear that Congress did not provide a cause of action." *Alexander v. Sandoval*, 532 U.S. 275, 288 n.7 (2001) (internal citation omitted).

Applying the *Texas Industries* framework here, "it is clear that the ATA was enacted to benefit the victims of terrorism, not terrorists or those who aid and abet them." *Litle*, 611 F. Supp. 2d at 242. The statute provides only that a U.S. national "injured in his or her person, property, or business by reason of an act of international terrorism . . . may sue therefor." 18 U.S.C. § 2333. Thus, the class to be benefited is plainly terrorist victims, and, as in *Texas Industries*, Third-Party Plaintiffs are "member[s] of the class whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class." 451 U.S. at 639. The creation of a right to contribution would not aid the victims of terrorism that the ATA intended to protect because the victims are already "entitled to full recovery from [the party they sued], and adding a right of contribution would add to the expense of their litigation." *Litle*, 611 F. Supp. 2d at 242; *see also Anderson v. Griffin*, 397 F.3d 515, 523 (7th Cir. 2005) ("[A]ll that a right of contribution does is add to the costs of litigation, and so unless there is a compelling reason to suppose that the legislature would want such a right to be enforced, . . . it will not be."). Furthermore, the comprehensive statutory remedies in the ATA—including criminal liability and treble damages—"strongly evidences an intent not to authorize additional remedies." *Nw. Airlines*, 451 U.S. at 93–94. Indeed, in *Texas Industries*, the Court held that "[t]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." 451 U.S. at 639.

As for legislative history, there is likewise no suggestion of a right to contribution: "[T]he ATA's legislative history neither addresses the issue of contribution nor indicates in any

way that Congress was concerned with the welfare of those who intentionally violate the ATA's provisions." *Litle*, 611 F. Supp. 2d at 242.  Instead, the legislative history makes clear that Congress was concerned only with providing a remedy for victims of terrorism.  *See* 137 Cong. Rec. S4511 (Apr. 16, 1991) (statement of Sen. Grassley) ("The ATA accords victims of terrorism the remedies of American tort law.") (attached hereto as Exhibit C); S. Rep. No. 102-342, at 45 (1992) ("This bill opens the courthouse door to victims of international terrorism.") (attached hereto as Exhibit D).[1]  As in *Texas Industries*, "[t]he absence of any reference to contribution in the legislative history or of any possibility that Congress was concerned with softening the blow on joint wrongdoers in this setting makes examination of other factors unnecessary."  451 U.S. at 639; *see also In re Walker*, 51 F.3d at 566 ("The combination of these two factors—the absence of legislative history mentioning contribution and the fact that [the statute] was not enacted to protect violators . . . indicates that Congress did not intend to create a cause of action for contribution.").  In short, there is no implication at all that Congress intended to create a right to contribution under the ATA, let alone the required "*clear* implication" of congressional intent to do so.  *See Texas Indus.*, 451 U.S. at 638 (emphasis added).

*Second*, there is no federal common law right to contribution for ATA claims.  The situations allowing for the creation of such a federal common law right are "few and restricted, and fall into essentially two categories: those in which a federal rule of decision is necessary to protect uniquely federal interests, and those in which Congress has given the courts the power to develop substantive law."  *Texas Indus.*, 451 U.S. at 640 (internal quotation marks and citations

---

[1] In fact, the only other party Congress considered allowing to pursue ATA claims was the United States, suing on behalf of terrorist victims, and Congress ultimately rejected this possibility.  *See Litle*, 611 F. Supp. 2d at 245 & n.7.

-10-

omitted); *see also In re Walker*, 51 F.3d at 567 (noting that "[t]his grant of power is very

narrow").

Here, there are no "uniquely federal interests" because those interests "exist[] only in

such narrow areas as those concerned with the rights and obligations of the United States,

interstate and international disputes implicating the conflicting rights of States or our relations

with foreign nations, and admiralty cases." *Texas Industries*, 451 U.S. at 640–41.  For a statute

that creates "a private suit involving the rights and obligations of private parties," there may be a

general "federal interest" in vindicating those rights, but there is still no uniquely federal interest

sufficient for a common law claim where "contribution . . . does not involve the duties of the

Federal Government, the distribution of powers in our federal system, or matters necessarily

subject to federal control even in the absence of statutory authority." *Id.* at 642.  Similarly, the

Fifth Circuit held that while the Bankruptcy Code involves federal interests generally, there still

is no uniquely federal interest that would allow for a common law right to contribution.  *See In*

*re Walker*, 51 F.3d at 567.  Here, contribution under the ATA would not involve the federal

government, distribution of powers, or matters that require federal control.  *See Litle*, 611 F.

Supp. 2d at 247 ("Nor does the ATA, although it unquestionably deals with an important issue of

federal law, fall within the category of cases where a federal rule of decision is necessary to

protect uniquely federal interests. . . .  A private suit brought by private parties pursuant to a

federal statute does not, without more, implicate uniquely federal interests.").[2]  Because a federal

common law right to contribution for ATA claims is not necessary to protect uniquely federal

interests, there is no basis for its creation.

---

[2] Indeed, the ATA precludes suits against a foreign government or officer acting in his
official capacity, *see* 18 U.S.C. § 2337, thereby minimizing any impact on foreign relations.  In
any event, it is difficult to imagine how allowing a claim for contribution would be beneficial, let
alone necessary, to protect federal interests regarding foreign relations.

Moreover, Congress has not "given the courts the power to develop substantive law," *Texas Indus.*, 451 U.S. at 640, in the ATA context.  There is nothing in the ATA suggesting a grant of power to the courts to create a common law right of action.  *See Litle*, 611 F. Supp. 2d at 246.  While courts do define, to some extent, the elements of an ATA violation, there is "a sharp distinction between the lawmaking powers conferred in defining violations and the ability to fashion the relief available to parties claiming injury." *Texas Indus.*, 451 U.S. at 644.  Only the latter would allow for the creation of a federal common law right to contribution, and just as Congress did not empower courts to create additional remedies under the Sherman Act, *see id.*, it also did not suggest any such power under the ATA.

Finally, even if this Court had power to fashion a new federal common law claim for contribution, it should not do so because no such claim would exist here under the common law.  A claim for contribution applies only to negligent—not knowing or intentional—violations of a statute.  *See Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 297 (1993) ("The course of tort law in this century has been to reverse the old rule against contribution, but this movement has been confined in large part to actions in negligence.").  However, as discussed below, the ATA requires knowing or intentional misconduct to establish a violation.  Thus, the equities do not support a right to contribution, as "traditional equitable standards have something to say about the septic state of the hands of such a [defendant] in the courts." *Litle*, 611 F. Supp. 2d at 248 (quoting *Texas Indus.*, 451 U.S. at 635).

**B.     Even if a contribution claim did exist, the Third-Party Complaint fails to allege facts to show an underlying violation of the Antiterrorism Act.**

Third-Party Plaintiffs' claim of contribution relies upon the supposed existence of Third-Party Defendants' underlying violation of the ATA.  *See* Third-Party Compl. ¶ 3.3 ("[I]f [Defendants] are found liable for violating the ATA as Plaintiffs allege, then Third Party

-12-

Plaintiffs allege any individuals or businesses who paid money to Hussein as part of doing business with Iraq during the pendency of that Regime would also be liable to Plaintiffs under the ATA.").  However, the facts alleged in the Third-Party Complaint fail to establish the elements of an ATA claim against Chevron.  As this Court has recognized, an ATA claim requires that the defendant:  (1) provided material support to a terrorist organization; (2) had knowledge that the support was going to a terrorist group; and (3) caused harm to the plaintiff.  None of these elements is satisfied here.[3]

*First*, the Third-Party Complaint fails to allege that Chevron provided material support to a terrorist organization.  While Third-Party Plaintiffs do not specify the provision of the ATA that Chevron supposedly violated, all of the potentially relevant sections require material support (or providing funds) to a terrorist organization.  *See* 18 U.S.C. § 2339A (it is a crime to "provide[] material support or resources . . . knowing or intending that they are to be used in preparation for, or in carrying out, a violation of [various federal criminal statutes]"); *id.* § 2339B ("[w]hoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so" is guilty of a crime); *id.* § 2339C ("[w]hoever . . . by any means, directly or indirectly, unlawfully and willfully provides or collects funds with the

---

[3] Third Party-Plaintiffs do not allege that Chevron is liable based on secondary liability, but this theory would be inapposite even if properly alleged.  The only two courts of appeals to address the issue have correctly held that the ATA does not allow for aiding-and-abetting, or other secondary, liability.  *See Rothstein v. UBS AG*, --- F.3d ---, 2013 WL 535770, at *15 (2d Cir. Feb. 14, 2013) ("We doubt that Congress, having included in the ATA several express provisions with respect to aiding and abetting in connection with the criminal provisions, can have intended § 2333 to authorize civil liability for aiding and abetting through its silence.") (attached hereto as Exhibit E); *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (en banc) ("statutory silence on the subject of secondary liability means there is none; and section 2333(a) . . . does not mention aiders and abettors or other secondary actors").  Nonetheless, even if secondary liability were permissible, the same requirements of conduct, scienter, and causation would still apply and bar the claim here.  *See Abecassis*, 785 F. Supp. 2d at 645–46 (reserving judgment on whether secondary liability is permissible, but concluding that proximate cause and knowledge are required under both direct or secondary liability).

intention that such funds be used, or with the knowledge that such funds are to be used . . . in order to carry out" terrorism is guilty of a crime).[4]  The only allegation regarding Third-Party Defendants' conduct is that they "made payments to Hussein."  Third-Party Compl. ¶ 3.5.

It is clear, however, that merely making payments to Saddam Hussein, without more, does not constitute material support to a terrorist organization.  There are no allegations regarding when or how Third-Party Defendants (let alone Chevron, in particular) supposedly paid money to Hussein.  In contrast, Plaintiffs in this case alleged specific transactions whereby Defendants provided funds to Hussein's regime via illegal kickbacks.  *See* First Am. Compl. ¶ 165 ("An El Paso consultant and former Coastal official arranged to pay $0.10 per barrel in illegal surcharges to Saddam Hussein and the Saddam Regime for oil acquired under the contract.  The illegal surcharge of $201,877.00 was paid in two installments on December 19, 2001 and March 25, 2002 to an Iraqi-controlled account at Jordan National Bank."); *id.* ¶ 190 ("On or about August 24, 2001, a representative of the Bayoil Company sent approximately $1,092,345 via wire transfer, which passed through a bank in Manhattan, to a bank account of Al Wasel and Babel General Trading (L.L.C.), located in the United Arab Emirates, knowing that such accounts were secretly owned and controlled by the Iraqi regime.").[5]  Simply put, without

---

[4] Another provision makes it a crime to "engage[] in a financial transaction" with the government of a country that a person knows or reasonably should know to be designated as a country supporting international terrorism, "[e]xcept as provided in regulations issued by the Secretary of the Treasury, in consultation with the Secretary of State."  18 U.S.C. § 2332d(a).  However, Third-Party Plaintiffs do not allege that Chevron (or any of the Third-Party Defendants) violated the Treasury Department's OFP regulations.

[5] *See also, e.g.*, First Am. Compl. ¶ 168 ("After El Paso's purchase of Coastal, El Paso continued to purchase Iraqi oil through Wyatt's Off-Shore Front Companies through which the front companies would pay the illegal surcharge payments to the Saddam Regime."); *id.* ¶ 169 ("Between June 2001 and June 2002, El Paso entered into transactions to purchase oil from Iraq through the Wyatt Off-Shore Front Companies to hide the illegal surcharge payments to SOMO."); *id.* ¶ 179 ("From in or about April 2001, up to and including in or about September 2001, representatives of the Bayoil Company located outside the United States faxed invoices to

any specifics regarding the nature of the supposed payments to Iraq—when they occurred and how they were made—there is no violation of the ATA.

*Second*, the Third-Party Complaint fails to allege scienter.  All of the relevant statutory provisions of the ATA expressly require at least knowledge that the money was going to terrorism.  *See* 18 U.S.C. § 2339A ( "provid[ing] material support or resources . . . knowing or intending that they are to be used" for terrorism); *id.* § 2339B ("knowingly provides material support" for terrorism); *id.* § 2339C ("willfully provides or collects funds . . . with the knowledge that such funds are to be used" for terrorism).  More generally, because "section 2333 provides for an automatic trebling of damages[,] it . . . require[s] proof of intentional misconduct," and "[t]o give money to an organization that commits terrorist acts is not intentional misconduct unless one either knows that the organization engages in such acts or is deliberately indifferent to whether it does or not."  *Boim*, 549 F.3d at 692–93.

Applying the statutory language to the situation here, this Court recognized that Plaintiffs' ATA claim "must allege, at a minimum, that each defendant knew that the oil it was buying through the OFP was tied to a kickback to Hussein and that Hussein was using OFP kickback money to fund terrorism that targeted American nationals."  *Abecassis*, 704 F. Supp. 2d at 665.  This Court adopted the same rule in its later ruling on the motion to dismiss Plaintiffs' amended complaint.  *See Abecassis*, 785 F. Supp. 2d at 645 (for §§ 2339A and 2339C, "the defendant must know (or intend) that its money is going to a group engaged in terrorist acts or is

---

representatives of the Bayoil Companies in Houston, Texas, requesting funds with which to pay illegal surcharges to Al Wasel and Babel General Trading (L.L.C.)"); *id.* ¶ 181 ("From on or about May 7, 2001, up to and including on or about May 13, 2001, Wyatt, El Paso, the Wyatt Off-Shore Front Companies, Miguel and Saidji caused approximately $590,000 in cash to be deposited in a secret bank account controlled by the Saddam Regime at the Jordan National Bank in Amman."); *id.* ¶ 188 ("On or about July 11, 2001, Wyatt, El Paso and the Wyatt Off-Shore Front Companies, Miguel and Saidji caused approximately $588,000 in cash to be deposited in a secret bank account controlled by the Saddam Regime at the Jordan National Bank in Amman.").

being used to support terrorist acts," and "the defendant must also know (or intend) that the terrorism or terrorist group it is supporting targets Americans"); *id.* at 646 (for § 2339B, plaintiffs must "allege that each defendant knew its money was going 'to' a particular entity if the basis of liability is that the entity falls in a particular category, such as a designated foreign terrorist organization").  Plaintiffs made clear allegations of scienter for Defendants.  *See* Am. Compl. ¶ 8 ("The named Defendants knew or were willfully blind to the fact that these illegal oil surcharge payments were not going to be deposited into the legal UN accounts set aside for humanitarian needs of the Iraqi people but instead would be used by Saddam to make contractual payments to terrorists."); *id.* ¶ 245 ("The defendants illegally paid millions of dollars with actual knowledge and awareness that these same funds were to be used in part for the purpose of supporting Palestinian genocidal murders and maimers . . . .").[6]

In sharp contrast, Third-Party Plaintiffs make no such allegations for Third-Party Defendants, including Chevron.  The Third-Party Complaint does not allege that Chevron knew that kickbacks from surcharges were going to the Hussein regime, or that the Hussein regime was using funds to support terrorism.  Indeed, Third-Party Plaintiffs do not mention the

---

[6] *See also, e.g.*, Am. Compl. ¶ 97 ("Defendants knew that by paying illegal surcharges to the Saddam Regime it would be financing terrorism against United States nationals around the world."); *id.* ¶ 186 ("El Paso knew at this time that it was funding the illegal surcharges of Wyatt and the Wyatt Off-Shore Front Companies."); *id.* ¶ 217 ("Chalmers and the Bayoil Companies paid inflated commissions to sellers of Iraqi oil allocations, including the Bayoil Foreign Company and others, with the knowledge and expectation that the sellers would use some portion of those inflated commissions to satisfy their illegal surcharge obligations to the Saddam Regime."); *id.* ¶ 244 ("Defendants provided material support and resources to Saddam Hussein and the Saddam regime [and] concealed and disguised the nature, location, source, and ownership of their material support and resources, knowing and intending that they were to be used in preparation for, or in carrying out of international terrorism."); *id.* ¶ 250 ("Defendants had knowledge that the Saddam Regime was designated a state supporter/sponsor of terrorism and that he directed, authorized and incited terrorist organizations including Hamas, PIJ and AAMB to commit terrorist attacks against United States civilians.").

knowledge or intent of Chevron at all.  Accordingly, the Third-Party Complaint plainly fails to satisfy the element of scienter.

*Third*, the Third-Party Complaint fails to allege causation.  The ATA applies only to an injury that occurs "by reason of an act of international terrorism."  18 U.S.C. § 2333(a).  As the Second Circuit recently explained, "[t]he 'by reason of' language ha[s] a well-understood meaning . . . as requiring proof of proximate cause."  *Rothstein v. UBS AG*, --- F.3d ---, 2013 WL 535770, at *12 (2d Cir. Feb. 14, 2013).  Indeed, when used in other statutes, "by reason of" has "required a showing that the defendant's violation" was both "a 'but for' cause of his injury" and "the proximate cause as well."  *Id.* (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267–68 (1992)).  Under this standard, the giving of money to a country that sponsors terrorism is, by itself, insufficient to satisfy causation, and the Second Circuit affirmed dismissal of ATA claims on this ground:

> The fact that the transfers were made to a state sponsor of terrorism of course made it more likely that the moneys would be used for terrorism than if the transfers were to a state that did not sponsor terrorism.  But the fact remains that Iran is a government, and as such it has many legitimate agencies, operations, and programs to fund.  We see no nonconclusory allegation in the Complaint that plausibly shows that the moneys UBS transferred to Iran were in fact sent to Hizbollah or Hamas or that Iran would have been unable to fund the attacks by Hizbollah and Hamas without the cash provided by UBS.

*Rothstein*, 2013 WL 535770 at *14.  Likewise, here, the payment of money to Hussein does not establish a sufficient link to the terrorist acts that harmed Plaintiffs.  There is no allegation that any funds provided by Chevron actually made it into the hands of the groups that committed terrorist acts against Plaintiffs, or that the Hussein regime would have been unable to provide funds for the attacks without money supposedly received from Chevron.  Accordingly, the basic element of causation is absent.

-17-

Moreover, even under the view of causation adopted in this Court's prior rulings, the Third-Party Complaint still fails to allege causation.  This Court held that "'but for' causation is not required," but "proximate cause is required" such that "a defendant will be held liable only for those injuries that might have reasonably been anticipated as a natural consequence of the defendant's actions."  *Abecassis*, 785 F. Supp. 2d at 646 (internal quotation marks omitted).  And this Court explained that Plaintiffs' "allegations support an inference that the defendants knew that money paid in kickbacks would be used to support terrorist activity in Israel" because "the very object of sidestepping the OFP was to provide money for Hussein to achieve ends other than providing for the welfare of Iraqi civilians."  *Id.* at 647.  Here, however, there is no allegation regarding causation with respect to Chevron:  no allegation that use of the funds for terrorism was a "natural consequence" of Chevron's actions, or that the funds were foreseeably going to be used for nefarious purposes.  In the absence of any factual allegation in support of causation, the element is not satisfied.

## CONCLUSION

For all the foregoing reasons, Third-Party Defendant Chevron respectfully requests that the Court grant its motion to dismiss the claim against Chevron in Third-Party Plaintiffs' Complaint.

NYI-4505746v6

Dated:  March 7, 2013                           Respectfully submitted,


                                                /s/ N. Scott Fletcher
                                                N. Scott Fletcher, attorney-in-charge
                                                TX Bar No. 00789046
                                                S.D. Tex. No. 16546
                                                Christopher H. Domingo
                                                TX Bar No. 24069621
                                                S.D. Tex. No. 1054774
                                                JONES DAY
                                                717 Texas, Suite 3300
                                                Houston, TX 77002
                                                Phone:  832-239-3939
                                                Fax:  832-239-3600
                                                Email:  sfletcher@jonesday.com
                                                        chdomingo@jonesday.com

OF COUNSEL:

Thomas E. Lynch (*pro hac vice* admission pending)
S.D.N.Y. No. TL8540
Meir Feder (*pro hac vice* admission pending)
S.D.N.Y. No. MF2574
JONES DAY
222 East 41st St.
New York, NY 10017
Phone:  212-326-3939
Fax:  212-755-7306
Email: telynch@jonesday.com
        mfeder@jonesday.com

                     *Attorneys for Third-Party Defendant Chevron Corporation*

                            CERTIFICATE OF SERVICE

        I hereby certify that on March 7, 2013 I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to all counsel

of record who are registered to receive such notifications.

                                                /s/ Christopher H. Domingo
                                                Christopher H. Domingo

                                         -19-