Not Reported in F.Supp.2d, 2010 WL 1992200 (E.D.N.Y.)
**(Cite as: 2010 WL 1992200 (E.D.N.Y.))**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.
Constance MYERS and Mark Myers, Plaintiffs,
v.
LENNAR CORPORATION, Defendant.

No. 08–CV–2799 (JFB)(MLO).
May 17, 2010.

Julio C. Galarza, Galarza Law Office, Massapequa Park, NY, for plaintiffs.

Allison Ann Snyder, Schnader Harrison Segal & Lewis, New York, NY, for defendant.

### MEMORANDUM AND ORDER
JOSEPH F. BIANCO, District Judge.

*1 Defendant Lennar Corporation moves under 28 U.S.C. § 1404 to transfer this case to the U.S. District Court for the Eastern District of North Carolina and under Rule 14(a) of the Federal Rules of Civil Procedure to implead a third party, CLC Services Corporation. As set forth in more detail below, both motions are denied. Lennar has not met its burden of showing that transfer to North Carolina is warranted given, *inter alia,* plaintiff's choice of forum and the absence of other factors weighing heavily in favor of transfer. Nor is it proper to allow Lennar to implead CLC because, by Lennar's own admission, this Court cannot obtain personal jurisdiction over CLC.

### I. BACKGROUND
This is a personal injury case. Plaintiff Constance Myers alleges that, on September 3, 2006, she fell while walking across the front lawn of a model home in Roleville, North Carolina owned by defendant Lennar and that she suffered serious injuries as a result of the fall. She claims that the cause of her fall was Lennar's negligence in maintaining the lawn. Her husband, plaintiff Mark Myers, brings claims for loss of society and consortium.

Plaintiffs began this action by filing a complaint in New York State Supreme Court, Suffolk County, on June 6, 2008. Lennar subsequently removed the case to this Court on July 15, 2008 and answered the complaint five days later. The parties engaged in discovery for much of 2009. On October 9, 2009, Lennar filed the instant motions to transfer venue and for leave to implead CLC Services, Inc. CLC maintained an irrigation system in the area of the model home, and, during discovery, Lennar learned that, a few days after plaintiff's fall, one of its employees found out that "there was a leaking irrigation head in the area of [the] incident." (Snyder Aff. ¶ 11.) It can be inferred that Lennar intends to argue that, even if Constance Myers's fall was due to the condition of the lawn, the leaking irrigation head contributed to the lawn's condition.

While the instant motions were pending, Lennar filed a letter requesting a pre-motion conference in anticipation of moving for summary judgment. (Docket 27.) In its letter, Lennar argued that there was no evidence that it was aware of any defect on the front lawn where Constance Myers fell. The Court held a pre-motion conference on March 8, 2010. The parties agreed that briefing on Lennar's summary judgment motion would be held in abeyance pending the outcome of the instant motions.

### II. DISCUSSION
As set forth in more detail below, the Court denies both Lennar's motion to transfer and its motion for leave to implead CLC Services, Inc.

#### A. Motion to Transfer
#### 1. Standard
Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Thus, in determining whether to transfer venue, courts examine: (1) whether the action could have been brought in the proposed forum; and (2) whether "the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." *Clarendon Nat'l Ins. Co. v. Pascual,* No. 99 Civ. 10840(JGK)(AJP), 2000 WL 270862, at *2

Not Reported in F.Supp.2d, 2010 WL 1992200 (E.D.N.Y.)
**(Cite as: 2010 WL 1992200 (E.D.N.Y.))**

(S.D.N.Y. Mar. 13, 2000) (quoting Coker v. Bank of Am., 984 F.Supp. 757, 764 (S.D.N.Y.1997)).

2. Application
a. This Action Could Have Been Brought in the Eastern District of North Carolina

***2** Thus, as a threshold matter, the Court must determine whether this action could have been brought in the Eastern District of North Carolina. Diversity of citizenship forms the basis for federal jurisdiction in this personal injury case. 28 U.S.C. § 1391(a) states that, in diversity cases, venue is proper in:

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Here, the parties do not dispute that the incident occurred in Roleville, North Carolina and that Roleville is in the Eastern District of North Carolina. Accordingly, "a substantial part of the events ... giving rise to the claim" occurred in that district, and it is a permissible venue under § 1391(a)(2). *Cf. Hill v. Golden Corral Corp.,* No. 98–CV7872 (JG), 1999 WL 342251, at *2 (E.D.N.Y. May 21, 1999) ("There is no dispute that the alleged incident giving rise to [plainitff's] injuries took place within the Middle District of North Carolina, and thus, under 28 U.S .C. § 1391, the plaintiff could have brought suit in that judicial district." (footnote omitted)); *Schechter v. Tauck Tours, Inc.,* 17 F.Supp.2d 255, 260 (S.D.N.Y.1998) ("And given that the accident allegedly occurred in Hawai'i as a result of the negligent supervision there by [defendant's] tour guide, there is no doubt" that action could have been brought in U.S. District Court for the District of Hawaii). Thus, Lennar has met the threshold showing that this action could have been brought in the proposed transferee district.

b. Discretionary Factors

Because this action could have been brought in the Eastern District of North Carolina, the Court must now determine whether the action should be transferred there. In doing so, the Court has "broad discretion" and may consider a number of factors relating to convenience and the interests of justice. *See D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106 (2d Cir.2006) ("District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis."). Among these factors are:

(1) the plaintiff's choice of forum,

(2) the convenience of the witnesses,

(3) the availability of process to compel the attendance of unwilling witnesses,

(4) the location of relevant documents and relative ease of access to sources of proof,

(5) the convenience of the parties,

(6) the locus of operative facts, [and]

(7) the relative means of the parties.

*See D.H. Blair & Co.,* 462 F.3d at 106–07 (quoting *Albert Fadem Trust v. Duke Energy Corp.,* 214 F.Supp.2d 341, 343 (S.D.N.Y.2002)). Some courts have identified additional factors, including (1) "the forum's familiarity with the governing law," and (2) "trial efficiency and the interests of justice, based on the totality of the circumstances." *Glass v. S & M NuTec,* 456 F.Supp.2d 498, 501 (S.D.N.Y.2006); *accord In re Hanger Orthopedic Group, Inc. Sec. Litig.,* 418 F.Supp.2d 164, 167–68 (E.D.N.Y.2006); *see also Dealtime.com v. McNulty,* 123 F.Supp.2d 750, 755 (S.D.N.Y.2000).

**\*3** There is no strict formula for the application of these factors, and no single factor is determinative. *See, e.g., Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.,* No. 04 Civ. 629(ARR)(ASC), 2004 WL 1812821, at *4 (E.D.N.Y. July 19, 2004); *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.,* 419 F.Supp.2d 395, 402 (S.D.N.Y.2005). Instead, these factors should be applied and weighed in the context

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 4:09-cv-03884   Document 210-1   Filed in TXSD on 03/07/13   Page 3 of 9

Page 3

Not Reported in F.Supp.2d, 2010 WL 1992200 (E.D.N.Y.)
**(Cite as: 2010 WL 1992200 (E.D.N.Y.))**

of the individualized circumstances of the particular case. Moreover, the moving party—here, the defendant—has the burden "of establishing the need for a change of forum...." *Wildwood Imports v. M/V Zim Shanghai,* No. 04 Civ. 5538(MBM), 2005 WL 425490, at *3 (S.D.N.Y. Feb. 20, 2005) (citing *Factors, Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978) and *Jasol Carpet, Inc. v. Patcraft Commercial Carpet, Inc.,* No. 96–3064, 1997 WL 97831, at *3 (S.D.N.Y. Mar. 6, 1997)).

    (1) The Plaintiff's Choice of Forum
Generally speaking, " '[t]he plaintiff's choice of forum is entitled to substantial weight and will not be disturbed lightly.' " *Ball v. MTV Networks on Campus, Inc.,* No. 08 Civ. 2888(LAK), 2008 WL 4131346, at *1 (S.D.N.Y. Oct. 28, 2008) (quoting *Totilo v. Herbert,* 538 F.Supp.2d 638, 640 (S.D.N.Y.2008)). Courts afford a plaintiff's choice of forum less weight when the operative events occurred outside of the district or when the plaintiff is not a resident of the district. *See, e.g., Guccione v. Harrah's Mktg. Servs. Corp.,* No. 06 Civ. 4361(PKL), 2009 WL 2337995, at *7 (S.D.N.Y. July 29, 2009) ("While significant deference is normally accorded to plaintiff's choice of forum, this factor 'is given less weight where the case's operative facts have little connection with the chosen forum.' " (quoting *Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co.,* 245 F.Supp.2d 523, 525 (S.D.N.Y.2003))); *GLMKTS, Inc. v. Decorize, Inc.,* No. 04 CV 2805(JG), 2004 WL 2434717, at *3 (E.D.N.Y. Nov. 1, 2004) ("A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer. A plaintiff's choice will merit less deference, however, where it is neither his home district or the locus of the majority of operative events." (internal quotations and citations omitted)).

    Here, although Constance Myers's injuries occurred in North Carolina, both she and her husband are residents of this district. (*See* Constance Myers Aff. ¶ 1.) Accordingly, the Court affords their choice of forum significant weight. *See Merkur v. Wyndham Int'l Inc.,* No. 00 CV 5843(ILG), 2001 WL 477268, at *3 (E.D.N.Y. Mar. 30, 2001) ("Here, although the accident occurred in Puerto Rico, plaintiffs filed their action in New York, which is also their home state. Accordingly, this factor dictates against transfer."); *Hill,* 1999 WL 342251, at *3 (giving plaintiff's choice of forum "substantial consideration," even though injuries occurred in North Carolina, "[b]ecause [plaintiff] filed this action in the state in which she resides"); *Carruthers v. Amtrak,* No. 95 Civ. 0369(PKL), 1995 WL 378544, at *4 (S.D.N.Y. June 26, 1995) ("In the instant action, although the cause of action [involving injuries sustained while traveling on an Amtrak train] arose in Florida, plaintiff resides in New York. Thus, plaintiff's choice of forum, standing alone, weighs significantly against defendant motion to transfer.").[FN1] This factor, therefore, weighs significantly in favor of denying the motion to transfer.

> FN1. Although, technically, plaintiffs actually chose New York State Supreme Court as their forum before Lennar removed this case, this district is considered their chosen forum for purposes of the § 1404 analysis. In each of the three cases cited above, for example, the plaintiff originally filed the case in New York State Supreme Court, and the defendant removed the case to federal court. *See, e.g., Mekur,* 2001 WL 477268, at *3 (considering this district as the plaintiff's chosen forum even though case was removed from New York State Supreme Court); *Hill,* 1999 WL 342251, at *3 (same); *Carruthers,* 1995 WL 378544, at *4 (considering Southern District of New York as the plaintiff's chosen forum even though case was removed from New York State Supreme Court, Bronx County).

(2) Convenience of Witnesses and (3) Availability of Process to Compel Attendance by Unwilling Witnesses

**\*4** The convenience of witnesses and availability of process factors are closely related in this case. As set forth below, neither factor tips strongly for or against transfer.

    In deciding whether to disturb the plaintiff's choice of forum, the convenience of the witnesses is generally the most important factor in the transfer analysis. *See, e.g., DLJ Mortgage Capital, Inc. v. Cameron Fin. Group, Inc.,* No. 07 Civ. 3746(LAP), 2007 WL 4325893, at *5 (S.D.N.Y. Dec. 4, 2007) ("[T]he convenience of witnesses is typically the most important factor in a motion pursuant to § 1404(a)."); *accord Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F.Supp.2d 325, 329 (E.D.N.Y.2006) ("The convenience of the witnesses is probably the single most important factor in the transfer analysis."); *see also*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1992200 (E.D.N.Y.)
**(Cite as: 2010 WL 1992200 (E.D.N.Y.))**

*Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.,* 774 F.Supp. 858, 868 (S.D.N.Y.1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." (citations omitted)). "In assessing this factor, 'a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum.' Rather, 'the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide.' " *AIG Fin. Prods. Corp. v. Pub. Utility Dist. No. 1 of Snohomish County,* 675 F.Supp.2d 354, 369 (S.D.N.Y.2009) (quoting *Herbert Ltd. v. Elec. Arts Inc.,* 325 F.Supp.2d 282, 286 (S.D.N.Y.2004) (internal citation omitted)).

Both sides argue that their witnesses would suffer hardship if the case were to be transferred. Defendant states that it will call two former employees, Thomas Spicci and Jeff Bickel, as witnesses. (Snyder Aff. ¶ 9.) Mr. Spicci was with Mark and Constance Myers in the model home before Constance Myers fell, but did not see her fall. Lennar asserts that Mr. Spicci will testify regarding the maintenance of the front lawn at the model home. (Snyder Aff. ¶ 11.) Mr. Bickel is a former construction manager for Lennar. Lennar anticipates that Mr. Bickel will testify that, a few days after Ms. Myers's fall, he learned about a leaking irrigation head in the area of the incident and that CLC Services installed the irrigation system. Both Spicci and Bickel live in North Carolina, and Lennar asserts they would be inconvenienced by having to travel to New York. For their part, plaintiffs assert that both Mark and Constance Myers are likely to testify [FN2] and would be inconvenienced by having to travel to North Carolina. (Galarza Aff. ¶¶ 8–9.) Constance Myers states that having to travel to North Carolina would result in "loss of pay, undue expense, and disruption to my career and household." [FN3]

> FN2. (*See* Pls.' Opp. at 9.)

> FN3. Both parties' papers refer to medical personnel in New York and North Carolina who treated Constance Myers's injuries. The parties do not specify, however, the names of medical personnel likely to testify at trial. The Second Circuit has stated that a party seeking to rely on the convenience of witnesses factor "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978) ("When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."); see also *Beatie & Osborn LLP v. Patriot Scientific Corp.,* 431 F.Supp.2d 367, 396 (S.D.N.Y.2006) ("A party moving to transfer on the ground that witnesses will be inconvenienced is obliged to name the witnesses who will be appearing and describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum." (internal quotations and citations omitted)). Accordingly, because neither party has specified which medical personnel are likely to testify at trial, the Court does not consider any potential medical witnesses in analyzing the "convenience of witnesses" factor. In any event, the issue regarding medical personnel would not alter the Court's ultimate determination of the transfer motion under the circumstances of this case.

Based on the above, the convenience of witnesses factor does not weigh either for or against transfer to any significant extent. Some courts have stated that the convenience of non-party witnesses is more important than the convenience of party witnesses,[FN4] a fact that would seem to favor transfer. However, the case law is also clear that an important part of the analysis here is evaluating the materiality of each likely witness's testimony. *See, e.g., AIG Fin. Prods. Corp.,* 675 F.Supp.2d at 369; *accord Quan v. Computer Scis. Corp.,* Nos. CV 06–3927(CBA)(JO), CV 06–5100(CBA) (JO), 2008 WL 89679, at *5 (E.D.N.Y. Jan. 7, 2008) ("In considering this factor, I must not simply compare the number of witnesses who reside in each relevant area; instead, I must qualitatively evaluate the materiality of the testimony that the witnesses may provide." (internal quotation omitted)). Here, plaintiffs are the only eyewitnesses to the incident, and their testimony, therefore, will arguably be more material than the testimony of Lennar's witnesses. *Merkur,* 2001 WL 477268, at *4 ("[Defendant] acknowledges that those witnesses did not observe the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1992200 (E.D.N.Y.)
**(Cite as: 2010 WL 1992200 (E.D.N.Y.))**

accident and do not have personal knowledge of the events and conditions at the time of the accident. Accordingly, the inconvenience to those witnesses is not as important as the inconvenience to plaintiffs that would be incurred through a transfer of venue.").

> FN4. *See, e.g., AIG Fin. Prods. Corp., 675 F.Supp.2d at 369.* Other courts, however, have not distinguished between party and non-party witnesses in considering this factor. *See, e.g., Wagner v. N.Y. Marriott Marquis, 502 F.Supp.2d 312, 315 (N.D.N.Y.2007)* ("[T]he convenience of both party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." (internal quotation marks and citation omitted)).

**\*5** Moreover, although Lennar identifies several potential challenges with having Spicci and Bickel testify in this district, those challenges appear overstated and easily addressed. Lennar asserts that both Spicci and Bickel are former employees of the company and outside of the Court's subpoena power. However, Lennar does not actually assert that either witness has stated he would be unwilling to testify in this district. *Cf. Hill,* 1999 WL 342251, at \*3 (finding availability of compulsory process factor did not weigh in favor of transfer because, although defendant "repeatedly stat[ed] that two defense witnesses ... are no longer employed by [defendant], and reside or were last known to reside within the Middle District of North Carolina ... defendant has not provided any reason to believe that [the witnesses] would be unwilling to testify in" the Eastern District of New York or the Middle District of North Carolina); *Soto v. Bey Transp. Co.,* No. 95 Civ. 9329, 1997 WL 407247, at \*4 (S.D.N.Y. July 21, 1997) (stating that when no evidence suggests that any of the non-party witnesses would be unwilling to testify, the availability of compulsory process should not enter into the court's analysis). If Lennar's witnesses did in fact refuse to travel to this district, they could instead testify via deposition. *See Johnsen, Fretty & Co. v. Lands South, LLC,* 526 F.Supp.2d 307, 314 (D.Conn.2007) (" 'Nonetheless, non-party witnesses who cannot be compelled to testify by subpoena can appear at trial through a videotaped deposition.' " (quoting *Argent Funds Group, LLC v. Schutt,* No. 3:05CV01456 (SRU), 2006 WL 2349464, at \*5 (D. Conn. June 27, 2006))); *Kirkman v. Martin,* No. 3:06cv393(MRK),

2006 WL 3041101, at \*4 (D. Conn. Oct 24, 2006) ("It is not at all unusual in today's federal courts to have non-party witnesses appear at trial via videotaped depositions."); *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 561 (S.D .N.Y.2000) ("However, the unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists."); *Orb Factory, Ltd. v. Design Sci. Toys,* 6 F.Supp.2d 203, 209 (S.D.N.Y.1998) (holding that convenience of witnesses factor did not favor transfer where, *inter alia,* deposition testimony is an available alternative to live testimony).[FN5] Accordingly, the convenience of witnesses and availability of compulsory factors do not tip either strongly for or against transfer.

> FN5. In its reply brief, Lennar attempts to counter plaintiffs' argument that Spicci and Bickel could testify via deposition by stating that plaintiffs "fail to address the critical issue that these NorthCarolina-resident witnesses are not subject to compulsory process in New York. The parties have no way to compel either of these witnesses to appear for deposition or trial." (Def.'s Reply Brief at 3.) Lennar's argument is without merit. First, it can be inferred from Lennar's letter requesting a pre-motion conference in anticipation of moving for summary judgment that Bickel and Spicci have already been deposed in this case. (*See* Docket 27, at 1–2.) Second, if it became necessary to compel Spicci's or Bickel's appearance at a future deposition, Lennar could do so by having the appropriate federal district court in North Carolina issue a subpoena. *See* Fed.R.Civ.P. 45(a); *In re Guthrie,* 733 F.2d 634, 638 (4th Cir.1984) ("The scheme of Rule 45 therefore permits a litigant to obtain a deposition subpoena in any district court of the United States regardless of where the principal litigation is pending, a discovery opportunity well established and often alluded to in the opinions of the federal courts.").

(4) Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Neither party argues that this factor weighs heavily either for or against transfer. In any event, the Court does not view this factor as significant given the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1992200 (E.D.N.Y.)
**(Cite as: 2010 WL 1992200 (E.D.N.Y.))**

fact that this personal injury case is not likely to involve many documents, and, to the extent documents are required, modern technology lessens the hardships to the parties. *See, e.g.,* Schwartz v. Marriott Hotel, 186 F.Supp.2d 245, 250 (E.D.N.Y.2002) (stating that this factor was neutral in a slip and fall case because "this case will involve the introduction of a small number of documents and photographs, all of which are easily mailed or carried from one venue to the other"); Merkur, 2001 WL 477268, at *3 ("Plaintiff already has disclosed photographs of the accident site that will be available to the jury. Moreover, any documentary evidence that currently is in Puerto Rico ... can be easily transferred to New York.... Accordingly, while Puerto Rico is the place where the injury underlying this action took place and where most of the evidence may be located, this factor does not strongly weigh in favor of transfer."); Hill v. Golden Corral Corp., No. 98–CV–7872 (JG), 1999 WL 342251, at *3 (E.D.N.Y. May 21, 1999) (noting that "in tort cases such as this, the majority of proof takes the form of witness testimony" and that "evidence relating to the site of plaintiff's injury ... can be introduced in the form of documents, photographs, or videotapes."). Accordingly, this factor is neutral.

(5) The Convenience of the Parties

**\*6** In terms of the convenience of the parties, the Court recognizes that " '[w]here transfer would merely shift the inconvenience from one party to the other,' the Court should leave plaintiff's choice of venue undisturbed." *See* Wagner, 502 F.Supp.2d at 316 (quoting Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp., 976 F.Supp. 174, 182 (W.D.N.Y.1997)); *accord* Schieffelin & Co. v.. Jack Co. of Boca, Inc., 725 F.Supp. 1314, 1322 (S.D.N.Y.1989). Here, Constance Myers asserts that transfer would be inconvenient to her.[FN6] Lennar does not assert that it would be inconvenienced by transfer as much as that its witnesses would be inconvenienced, *see supra.* As such, this factor supports retaining venue in this district.

>FN6. (Constance Myers Aff. ¶ 8. (stating that transfer would cause "loss of pay, undue expense, and disruption to my career and household.").)

(6) The Locus of Operative Facts
Plaintiff's fall occurred in North Carolina so this factor tips in favor of transfer. However, as noted in the context of the "Location of Relevant Documents and Relative Ease of Access to Sources of Proof" factor, this is a relatively straightforward case, and much of the relevant evidence is, as a practical matter, equally available in New York and North Carolina. *See* Schwartz, 186 F.Supp.2d at 250 (analyzing, in slip and fall case, "locus of operative facts" and "location of relevant documents" factors in tandem and concluding that, "[g]iven the straightforward nature of the allegations and the availability of photographs and diagrams, the Court is not persuaded by the defendants' argument that the case should be transferred ...."). Therefore, although this factor favors transfer in the abstract, its weight is not significant given the circumstances here.

(7) The Relative Means of the Parties
This factor would appear to favor plaintiffs because plaintiffs are individuals and Lennar is a corporation with offices in multiple states. *Cf.* Hawley v. Accor N. Am., 552 F.Supp.2d 256, 260–61 (D.Conn.2008) ("Plaintiffs are individuals; [defendant] is a nation-wide business. This factor clearly and strongly weighs against transfer."); Young v. Starbucks Coffee Co., No. 01 CIV 4566(GEL), 2002 WL 221588, at *2 (S.D.N.Y. Feb. 11, 2002) (denying transfer, in part because "[b]oth parties already have lawyers here in New York, and the burden of finding new lawyers or paying additional expenses for lawyers' travel time will fall more heavily on plaintiff if a transfer is ordered."). However, the only evidence plaintiffs submit regarding this factor is the single, conclusory statement in Constance Myers's affidavit that transfer would cause "loss of pay, undue expense, and disruption to my career and household." (Myers Aff. ¶ 8.) Accordingly, the Court affords this factor little weight. Quan, 2008 WL 89679, at *7 ("Absent any information demonstrating that the plaintiffs would be financially prejudiced by having to litigate in California, this factor adds nothing to my analysis."); Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F.Supp.2d 325, 331 (E.D.N.Y.2006) ( " 'A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances.' " (quoting Federman Assocs. v. Paradigm Med. Indus., Inc., No. 96 Civ. 8545, 1997 WL 811539, at *4 (S.D.N.Y. Apr. 8, 1997))).

(8) Familiarity with the Law
**\*7** Given that the incident occurred in North

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1992200 (E.D.N.Y.)
**(Cite as: 2010 WL 1992200 (E.D.N.Y.))**

Carolina and that this is a diversity case, the Court will assume that the substantive law of North Carolina will apply. However, the Court affords this factor little weight given the straightforward nature of this tort case. Hill, 1999 WL 342251, at *4 (finding in a slip and fall case that this factor did not favor transfer because the only significant difference between New York law and North Carolina law was that New York is a comparative negligence state while North Carolina was a contributory negligence state); *accord* G. Angel Ltd. v. Camper & Nicholsons USA, Inc., No. 06 Civ. 3495(PKL), 2008 WL 351660, at *6 (S.D.N.Y. Feb. 8, 2008) ("[T]his factor is entitled to little weight in cases where, as here, 'the governing law presents no complex legal questions and has not been shown to be unclear, unsettled or difficult." (quoting Royal Ins. Co. of Am. v. Tower Records, Inc., No. 02 Civ. 2612(PKL), 2002 WL 31385815, at *8 (S.D . N.Y. Oct. 22, 2002))).

(9) Trial Congestion

The Court also affords the trial congestion factor little weight. In a footnote in its reply brief, Lennar argues that this factor favors transfer and attaches a 2008 Judicial Case Load Report. This factor is typically not significant in a court's analysis,[FN7] and it is especially insignificant here. The Court is confident that the case will be adjudicated in a timely fashion in this district.

FN7. *See, e.g.,* Hill, 1999 WL 342251 at *4.

(10) Ability to Implead a Third Party

Lennar also argues that transfer is appropriate because CLC Services-which it seeks to implead as a third party-is not subject to personal jurisdiction in this district but is subject to personal jurisdiction in the Eastern District of North Carolina. Lennar asserts that this factor favors transfer because CLC cannot be sued in New York, and, therefore, Lennar would be forced to bring a separate action against CLC in North Carolina if the transfer motion is denied. The ability to implead a third party is a significant consideration on a motion to transfer. *See, e.g.,* Posven, C.A. v. Liberty Mut. Ins. Co., 303 F.Supp.2d 391, 406 (S.D.N.Y.2004) ("[I]t is well established that the ability to implead a third-party in the proposed transferee forum and thereby resolve related claims in a single action weighs heavily in favor of transfer. Transfer under such circumstances substantially advances the interests of fairness, efficiency and judicial economy by preventing duplicative proceedings and thereby reducing the overall burden on the parties, non-party witnesses and the judicial system." (internal citations omitted)); Ouding v. National Railroad Passenger Corporation (d/b/a Amtrak), No. 93 CIV. 7621(PKL), 1994 WL 381437, at *1 (S.D.N.Y. July 19, 1994) ("Since plaintiff's action is premised in part on the contention that defendant failed to remove snow and ice, [defendant] has a legitimate interest in litigating this matter in a venue that affords it an opportunity to implead the party that contracted to provide such snow removal."). In short, all else being equal, this factor clearly weighs in favor of transfer.

*8 However, the Court declines to afford this factor dispositive weight here for two reasons. First, often, when courts transfer cases to allow the defendant to implead a third party, other factors also weigh in favor of transfer, or at least weigh against retaining venue in the transferor district. *See* Russell v. Hilton Int'l of P.R., Inc., No. 93 Civ. 2552(KMW), 1994 WL 38516, at *6 (S.D.N.Y. Feb. 4, 1994) ("[T]he ability to join third parties in the transferee district is an important consideration in the decision whether to transfer, however, it is not dispositive. Where the defendant has not otherwise shown that the balance of conveniences tips heavily in its favor, 'it is entitled to less weight than it might ordinarily assume.' " (quoting Prentice–Hall Corp. v. Ins. Co. of N. Am., 81 F.R.D. 477, 481 (S.D.N.Y.1979))); *see, e.g.,* Posven, 303 F.Supp.2d at 404 (transferring case because transferee court could exercise personal jurisdiction over proposed third-party defendant and other factors, including plaintiff's choice of forum, the convenience of the witnesses, the forum's familiarity with the governing law, and trial efficiency did not support keeping the case in the transferor district). Here, as set out above, most of the factors do not tip heavily either for or against transfer. And the other factor that does support transfer—the locus of operative facts—is not particularly significant given the nature of this case. Moreover, the plaintiffs' choice of forum is accorded significant weight here because the plaintiffs are residents of this district. *Cf.* Ball, 2008 WL 4131346, at * 1–2 (giving the ability to implead factor heavy weight and deciding to transfer case from the Southern District of New York to the Northern District of New York and also noting the "diminished degree of deference" due plaintiff's choice of forum because plaintiff lived in Texas); Halliwell v. Moran Towing & Transp. Co., No. 98 Civ. 6500(JSR), 1999 WL 258260, at *1–2 (S.D.N.Y. Apr. 29, 1999)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1992200 (E.D.N.Y.)
**(Cite as: 2010 WL 1992200 (E.D.N.Y.))**

(transferring case to Eastern District of Virginia where "ability to implead" factor favored transfer and, *inter alia,* plaintiff lived in Virginia and no fact witnesses lived in New York).

Additionally, even in those cases that have accorded significant weight to this factor, the connection of the proposed third-party defendant to plaintiff's alleged injuries was clear. In *Ouding,* for example, the plaintiff sued Amtrak after she slipped and fell on an icy train platform in Toledo, Ohio. The plaintiff alleged Amtrak was negligent in failing to clear the platform of snow and ice. The Court transferred the case to the Northern District of Ohio, in part to allow Amtrak to implead the company that Amtrak had contracted with to remove snow and ice from the platform. 1994 WL 381437 at * 1–2; *see also Waxman v. Westin Hotels & Resorts,* No. 94 Civ. 5796(MBM), 1995 WL 242055, at *2 (S.D.N.Y. Apr. 26, 1995) (transferring case in which plaintiff claimed to be injured by sliding glass door at hotel to allow defendant to implead company responsible for installation and maintenance of the door); *Falconwood Fin. Corp. v. Griffin,* 838 F.Supp. 836, 843 (S.D.N.Y.1993) (transferring case concerning loans to allow impleader of third-party where "it [was] apparent" that "the prinicpal, perhaps only serious issue in contention" could not be resolved without considering transactions between plaintiff and third-party defendant).

**\*9** Here, by contrast, CLC's connection to plaintiff's fall is more conjectural. Defendant's basis for believing CLC may have played some role in plaintiff's fall is that CLC was responsible for installing an irrigation system [FN8] and that "a few days after" Constance Myers's fall, a Lennar Construction Manager "learned that there was a leaking irrigation head in the area of this incident." (Snyder Aff. ¶ 11.) [FN9] The potential role of the leaking irrigation system was unknown-even to Lennar-until more than a year after this case began. (*See id.*) It is not entirely clear (1) if an irrigation head was leaking when Ms. Myers fell (as opposed to "a few days after"); (2) what role, if any, the leaking irrigation head would have played in the conditions on the front lawn where Ms. Myers fell; and (3) assuming the leaking irrigation head did affect the conditions of the front lawn, why this went undiscovered for over a year after the case began (and three years after the incident occurred). Cf. *Vassallo v. Neidermeyer,* 495 F.Supp. 757, 761 (S.D.N.Y.1980) (denying motion to transfer case to Georgia, in part because the moving party had not shown "that the need for third-party practice is more than just a remote possibility. Defendants' mere assertion that an unspecified roadway-safety issue may require bringing in additional parties falls well short of this mark."). Given the lack of an obvious connection between the leaking irrigation head and plaintiff's fall, the Court declines to give the "ability to implead" factor more weight than the plaintiff's choice of forum factor.

> FN8. It can be inferred from the record that the model home was located in a housing development and that CLC was responsible for the irrigation system in the development.

> FN9. The Court takes judicial notice of the fact that an "irrigation head" is also known as a "sprinkler head."

In sum, the plaintiff's choice of forum factor supports retaining venue in this district, and the Court affords significant weight to this factor. Although the ability to implead CLC supports transferring the action, no other factors strongly support transfer, and CLC's alleged connection to Constance Myers's slip and fall is somewhat attenuated. Accordingly, the Court finds that Lennar has not met its burden to show that transfer is warranted, and the Court denies the motion to transfer the case to the U.S. District Court for the Eastern District of North Carolina.

B. Motion to Implead
Additionally, Lennar moves to implead CLC as a third-party defendant. That motion is also denied.

The procedural mechanism for impleader is Rule 14 of the Federal Rules of Civil Procedure. Rule 14(a) allows a defending party to implead a party "who is or may be" liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. Fed.R.Civ.P. 14(a). "Rule 14 provides a *procedural* mechanism whereby a defendant can have derivative, contingent claims against others not originally parties to the action adjudicated contemporaneously with the claims against it: it does not create new substantive rights against those other parties." *Shafarman v. Ryder Truck Rental, Inc.,* 100 F.R.D. 454, 457 (S.D.N.Y.1984) (citation omitted) (emphasis in original).

**\*10** However, a party may not be impled if the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 1992200 (E.D.N.Y.)
**(Cite as: 2010 WL 1992200 (E.D.N.Y.))**

court would not have personal jurisdiction over the party. 6 Charles Alan Wright, et al., Federal Practice & Procedure–Civil § 1445 (2d ed.) ("The cases unanimously hold that a federal court must obtain personal jurisdiction over a third-party defendant before it proceeds to adjudicate a third-party claim. If jurisdiction cannot be obtained, impleader will be denied as an initial matter ...." (footnotes omitted)); *see, e.g., United Arab Republic of Egypt v. M/V Robert E. Lee,* No. 96 CIV. 7170(LBS), 1997 WL 403478, at *2 (S.D.N.Y. July 17, 1997) ("The parties agree that [the proposed third-party defendant] is not subject to personal jurisdiction in New York—thus, it is not possible for [defendant] to implead [the third-party defendant] in this Court."); *Plywood Panels, Inc. v. M/V Thalia,* 141 F.R.D. 689, 692 (E.D.La.1992) (denying Rule 14 motion where, *inter alia,* "no *prima facie* basis exist[ed] for exercise of personal jurisdiction over most of the third-party defendants"); *Nat'l Gypsum Co. v. Dalemark Indus., Inc.,* 779 F.Supp. 147, 148 (D.Kan.1991) ("A federal court must have personal jurisdiction over the third-party defendant before the third-party claim can be adjudicated. The lack of personal jurisdiction over the proposed third-party defendant is cause for denying a Rule 14 motion." (internal citations omitted)); *accord* Moore's Federal Practice–Civil § 14.40 ("[T]he third-party defendant must be amenable to personal jurisdiction in the court in which the action is pending.").[FN10]

> FN10. The Court notes the existence of a little-used, common-law procedure known as "vouching in" that can sometimes be used as a substitute for impleader when a court is not able to obtain personal jurisdiction over a third-party defendant. *See generally SCAC Transp. (USA), Inc. v. S.S. "Danaos",* 845 F.2d 1157, 1161–62 (2d Cir.1988). Lennar does not argue that vouching in is applicable here, and the Court declines to address the issue *sua sponte.*

Here, one of the main reasons that Lennar seeks to transfer this case to North Carolina is that, it believes, it does not have personal jurisdiction over CLC in this district. Accordingly, given that Lennar itself asserts that this Court does not have personal jurisdiction over CLC, the motion to implead CLC is denied.[FN11]

> FN11. Additionally, allowing Lennar to implead CLC would not necessarily result in efficiency gains. As noted above, while the instant motions were pending, Lennar requested to move for summary judgment. Certainly the Court is not in a position to assess the merits of Lennar's anticipated summary judgment motion at this time. However, the fact that Lennar has stated its intention to move for summary judgment at least suggests that this case could be resolved by summary disposition and without the third-party practice (to include additional discovery) that would be necessary should CLC be impled.

### III. CONCLUSION

The motion to transfer venue pursuant to 28 U.S.C. § 1404 and the motion to implead CLC pursuant to Federal Rule of Civil Procedure 14(a) are both denied. The parties shall participate in a telephone conference on Wednesday, May 26, 2010 at 12:30 p.m. to discuss a briefing schedule for Lennar's summary judgment motion. At that time, counsel for defendant shall initiate the call and, once all parties are on the line, shall contact Chambers at (631) 712 5670.

SO ORDERED.

E.D.N.Y.,2010.
Myers v. Lennar Corp.
Not Reported in F.Supp.2d, 2010 WL 1992200 (E.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.