# 50-Off Stores v. Banque Paribas (Suisse) S.A.

United States District Court for the Western District of Texas, San Antonio Division
May 19, 1997, Decided ; May 20, 1997, FILED
CIVIL NO. SA-95-CA-159

**Reporter:** 1997 U.S. Dist. LEXIS 11136; 1997 WL 790739

50-OFF STORES, INC., Plaintiff, v. BANQUE PARIBAS (SUISSE)S.A., et al., Defendants, v. THE CHASE MANHATTAN BANK, N.A., et al., Third-party defendants.

**Subsequent History:** Later proceeding at 50-Off Stores, Inc. v. Banques Paribas (Suisse) S.A., 180 F.3d 247, 1999 U.S. App. LEXIS 14797 (5th Cir. Tex., 1999)
Related proceeding at Chase Manhattan Bank v. Akin, Gump, Hauer & Feld L.L.P., 2003 N.Y. App. Div. LEXIS 8999 (N.Y. App. Div. 1st Dep't, Aug. 21, 2003)

**Prior History:** 50-Off Stores v. Banque Paribas (Suisse) S.A., 1996 U.S. Dist. LEXIS 21258 (W.D. Tex., Nov. 19, 1996)

**Disposition:** [*1] Motions to dismiss and the motion to strike GRANTED. Alternative relief sought in the motions to sever DENIED.

## Case Summary

**Procedural Posture**
Plaintiff sued defendant for fraud and conversion in connection with a stock transaction. Defendant asserted counterclaims against plaintiff and third party claims against plaintiff's law firm for libel, slander, defamation, and business disparagement. Plaintiff and the law firm moved to dismiss these claims. Defendant also asserted a third party claim against the law firm for contribution, which plaintiff and the law firm moved to strike.

**Overview**
Defendant alleged that plaintiff's lawyer made defamatory statements about how defendant had engaged in criminal activity in connection with the stock transaction. The statements were published in a local newspaper. Defendant's contribution claim was based on the law firm's alleged legal malpractice in connection with the stock transaction. A magistrate judge recommended that the claims for slander, libel, defamation, and business disparagement be dismissed for failure to state a claim and that the contribution claim be stricken. First, the claims based on slander, libel, and defamation were defeated because the attorney was absolutely privileged to publish defamatory statements in furtherance of the lawyer's representation of his client. In particular, statements made to a reporter were covered by the privilege, unless they were made at a press conference. Second, the claims based on business disparagement failed to state a claim because defendant sought to protect its reputation instead of protecting its economic interests against pecuniary loss. Finally, under the governing Texas law, defendant could not maintain a claim for contribution against the law firm.

**Outcome**
The magistrate judge recommended that the motions to dismiss and the motion to strike be granted.

**Counsel:** For 50-OFF STORES, INC., plaintiff: Barry A. Chasnoff, Akin, Gump, Strauss Et Al, San Antonio, TX. Daniel McNeel Lane, Jr., Akin, Gump, Strauss, Hauer & Feld, L.L.P., San Antonio, TX.

For BANQUES PARIBAS (SUISSE) S.A., defendant: Keith E. Kaiser, Cox & Smith Inc, San Antonio, TX. Robert Polifka, Flemming, Zulack & Williamson, LLP, New York, NY. For BETAFID S.A., defendant: Andrew Klinger, Mario Gazzola, Grant, Herrmann, Schwartz & Klinger, New York, NY. DENNIS MORRIS, defendant, Pro se, Toronto, Ontario, Canada, For HOWARD . WHITE, defendant: Ricardo G. Cedillo, Davis, Adami, & Cedillo, Inc., San Antonio, TX. Susan G. Lozano, Davis, Adami & Cedillo, San Antonio, TX. William S. Hechter, Hechter & Associates, Toronto, Ontario, Canada. MORRIS & ASSOCIATES, defendant, Pro se, Morris & Associates, Toronto, Ontario Canada,

For HOWARD . WHITE, third-party plaintiff: Ricardo G. Cedillo, Davis, Adami, & Cedillo, Inc., San Antonio, TX. Susan G. Lozano, Davis, Adami & Cedillo, San Antonio, TX. William S. Hechter, Hechter & Associates, Toronto, Ontario, Canada.

For THE [*2] CHASE MANHATTAN BANK, N.A., third-party defendant: Joseph B. Latting, Liddell, Sapp, etal, Austin, TX. Janis G. White, The Chase Manhattan Bank, Legal Department, New York, NY.

For THE CHASE MANHATTAN BANK, N.A., defendant: Janis G. White, The Chase Manhattan Bank, Legal Department, New York, NY. For ARIES PEAK, INC., defendant: Ricardo G. Cedillo, Davis, Adami, & Cedillo, Inc., San Antonio, TX. Leslie J. Strieber, III, Davis, Adami and Cedillo, San Antonio, TX.

For BANQUES PARIBAS (SUISSE) S.A., third-party plaintiff: Keith E. Kaiser, Cox & Smith Inc, San Antonio, TX. Robert Polifka, Flemming, Zulack & William-

1997 U.S. Dist. LEXIS 11136, *2

son, LLP, New York, NY.

For AKIN, GUMP, third-party defendant: George G. Brin, Brin & Brin, San Antonio, TX.

For BANQUES PARIBAS (SUISSE) S.A., cross-claimant: Keith E. Kaiser, Cox & Smith Inc, San Antonio, TX. Robert Polifka, Flemming, Zulack & Williamson, LLP, New York, NY.

For BETAFID S.A., cross-defendant: Andrew Klinger, Mario Gazzola, Grant, Herrmann, Schwartz & Klinger, New York, NY.

For BANQUES PARIBAS (SUISSE) S.A., counter-plaintiff: Keith E. Kaiser, Cox & Smith Inc, San Antonio, TX. Robert Polifka, Flemming, Zulack & Williamson, LLP, New [*3] York, NY.

For 50-OFF STORES, INC., counter-defendant: Barry A. Chasnoff, Akin, Gump, Strauss Et Al, San Antonio, TX. Daniel McNeel Lane, Jr., Akin, Gump, Strauss, Hauer & Feld, L.L.P., San Antonio, TX.

**Judges:** JOHN W. PRIMOMO, United States Magistrate Judge

**Opinion by:** JOHN W. PRIMOMO

**Opinion**

## MEMORANDUM AND RECOMMENDATION

Before the Court is *Plaintiff's Motion To Dismiss Counterclaim, Motion To Strike Third Party Claims And Affirmative Defenses or in the alternative Motion To Sever Counterclaim and Third Party Claims* (Docket no. 328), and *Third-Party Defendant's Motion To Dismiss Third Party Claims, or in the alternative Motion To Sever Third Party Claims* (Docket no. 336) filed by plaintiff's counsel.[1] Plaintiff 50-Off Stores, Inc. ("50-Off") and third party defendant Akin, Gump, Strauss, Hauer & Feld, L.L.P. ("Akin Gump"), counsel for 50-Off, seek to dismiss the counterclaims and third party claims made by defendant Banque Paribas (Suisse) S.A. ("BPS") in response to allegedly defamatory statements made by counsel for 50-Off that were published in a local newspaper. The counterclaims and third party claims are claims for slander, libel, defamation and business disparagement. [*4] 50-Off and Akin Gump also seek to strike the third party claim for contribution asserted against Akin Gump. 50-Off also asks this Court to dismiss certain affirmative defenses pled by BPS. Upon consideration of the arguments and authorities presented, the undersigned believes that the motions to dismiss and motion to strike should be granted.

## Background

On March 20, 1997, BPS filed its *Original Answer, Counterclaim, Cross-Claims and Third-Party Claim* ("Answer")(Docket no. 303), wherein BPS asserted counterclaims against 50-Off and third party claims against Akin Gump for libel, slander, defamation and business disparagement. Those claims are based on an article published in the *San Antonio Express-News* on March 2, 1997 (the "article"). According to BPS, the article contained statements attributed to an Akin Gump lawyer that accused BPS of participating in an "international scam" composed of Swiss bankers, [*5] English traders and convicted criminals who got together to steal millions from 50-Off. *Answer*, p.24. The article also contained a statement from the Akin Gump lawyer that accused BPS of conspiring with two co-defendants "to break the law." *Id.*

The motions to dismiss filed by 50-Off and Akin Gump seek dismissal of BPS' counterclaims against 50-Off and BPS' third party claims against Akin Gump for libel, slander, defamation and business disparagement based upon comments attributed to an Akin Gump lawyer in the article. In the motions, 50-Off and Akin Gump contend that (1) BPS' counterclaims are not compulsory counterclaims, and, thus, lack a jurisdictional basis, (2) BPS failed to state a claim for defamation (including slander and libel)[2] or business disparagement, and (3) the statements attributed in the article to 50-Off's counsel are absolutely privileged. BPS filed separate responses to the motions, and a supplemental response as to 50-Off's motion. The undersigned will jointly consider the arguments presented in BPS' responsive pleadings.

[*6] BPS' third party claim against Akin Gump for contribution is unrelated to the claims based on the article. BPS contends that Akin Gump is or may be liable to BPS for all or part of 50-Off's claims against BPS because, along with 50-Off, Akin Gump (1) failed to exercise any reasonable degree of care in their handling of the underlying stock transaction that forms the basis of this suit, and (2) failed to do anything to protect the shares of stock at issue after Akin Gump and 50-Off became aware of problems with payment of those shares. The motions to dismiss and to strike filed by 50-Off and Akin Gump request that the Court strike BPS' third party claim for contribution against Akin Gump because the claim allegedly lacks a substantive basis. In the alternative, they seek severance of the counterclaims and the third party claims.

---

[1] These motions are very similar in the relief requested and the authorities presented.

[2] The undersigned's analysis of defamation applies to both slander and libel as they are simply types of defamation whose distinguishing characteristics do not affect the analysis of the motions under consideration.

1997 U.S. Dist. LEXIS 11136, *6

### Motion to Dismiss

*HN1* Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for lack of subject matter jurisdiction. The Court may look beyond the complaint's jurisdictional allegations to determine if jurisdiction is present. It is well settled in the Fifth Circuit that the Court has the power to [*7] dismiss a case for lack of subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. U.S., 74 F.3d 657, 659 (5th Cir.1996).*

*HN2* Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); Hobbs v. Hawkins, 968 F.2d 471, 480 (5th Cir. 1992).* The Court may not go outside the pleadings and must accept all well-pleaded facts as true, viewing them most favorably to the plaintiff. *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974). Hobbs, 968 F.2d at 480.* However, materials attached to the complaint may be considered by the Court. [*8] *Morton v. Becker, 793 F.2d 185, 187 (2d Cir. 1986).* The Court may also consider those matters outside the pleadings to which there is no dispute. *Espinoza v. Missouri Pacific Railroad Co., 754 F.2d 1247, 1249 n.1 (5th Cir. 1985).*

### A. Defamation and Business Disparagement
### 1. Dismissal of BPS' counterclaims for lack of jurisdiction.

50-Off contends [3] that BPS' counterclaims for slander, libel, defamation and business disparagement should be dismissed for lack of jurisdiction because they are permissive counterclaims that lack an independent jurisdictional basis. BPS contends that they are compulsory counterclaims, which do not need an independent basis of jurisdiction.

BPS argues that this issue is governed by the statute addressing the Court's [*9] supplemental jurisdiction. *HN3* As provided by statute, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367 (1993). If a counterclaim is "so related" to the claims within the original jurisdiction of the Court that they form part of the same case or controversy, then it is considered to be a compulsory counterclaim under Fed. R.Civ.P. 13(a). *Naranjo v. County of Rio Arriba, 862 F. Supp. 328, 334 (D.N.M.1994)*(citations omitted). In contrast, a counterclaim that is not "so related" is considered to be a permissive counterclaim, which requires an independent basis of jurisdiction. *Zurn Ind. Inc. v. Acton Constr. Co., 847 F.2d 234, 237 (5th Cir.1988).*

*HN4* Under Fed.R.Civ.P. 13(a), a compulsory counterclaim that is not asserted is barred. *McDaniel v. Anheuser-Busch, Inc., 987 F.2d 298, 304 (5th Cir.1993).* The Fifth Circuit has established a test for determining whether a claim is compulsory. An affirmative answer to [*10] any of these four questions indicates that the counterclaim is compulsory:

> (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same;(2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule;(3) whether substantially the same evidence will support or refute plaintiff's claim as well as the defendant's counterclaim; and(4) whether there is any logical relationship between the claim and the counterclaim.

*Underwriters At Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd., 79 F.3d 480, 483 n.2 (5th Cir.1996).*

The *Nautronix* court addressed the issue of whether the trial court abused its discretion by allowing the amendment of the complaint when the amendment effectively dismissed the defendant's compulsory counterclaims that would be potentially barred by limitations if reasserted. *79 F.3d at 485.* The court held that district court abused its discretion because the amendment was unduly prejudicial to the rights of the defendant. *Id.* In reaching its ruling, the *Nautronix* court indicated that the defendant's counterclaims [*11] of slander and commercial disparagement were, indeed, compulsory counterclaims. *Id. at 483 n.2.* 50-Off contends that the statement regarding the nature of the counterclaims is dicta and not controlling. Although it is dicta, it is highly persuasive.

Similar to the *Nautronix* court, the undersigned finds that the same evidence will support or refute 50-Off's claims and BPS's counterclaims of defamation and business disparagement. Also, there exists a logical relationship between the claims and the counterclaims. There-

---

[3] As previously noted, the arguments proffered by 50-Off and Akin Gump are very similar. Therefore, the undersigned will consider the motions jointly, but will refer to the arguments as being made by 50-Off, unless otherwise indicated.

fore, the undersigned concludes that the counterclaims for defamation and business disparagement are compulsory counterclaims. Accordingly, those counterclaims should not be dismissed for lack of jurisdiction.

## 2. Dismissal for failure to state a claim.

50-Off contends that BPS' counterclaims against 50-Off and third party claims against Akin Gump for defamation and business disparagement fail to state a claim. 50-Off contends that since libel is defined in terms of injury to a "person," a corporation can only assert a claim for libel only if the allegedly defamatory statement refers to or identifies an owner or officer of the corporation. [*12] The failure to refer to such an ascertainable person would, according to 50-Off, defeat a claim of libel asserted by a corporation.

HN5 Texas law provides the following definition for libel:

> A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public ridicule, or financial injury.

TEX.CIV.PRAC. & REM.CODE ANN. § 73.001 (Vernon 1986). Although the definition of libel is expressed in terms of injury to an individual, those entitled to sue for libel are individuals, corporations and partnerships. *Newspapers, Inc. v. Matthews*, 161 Tex. 284, 339 S.W.2d 890, 893 (Tex.1960). [4] The wording of the statute precludes application to a business, but a claim for libel can be asserted by the owner of the business, and it makes no difference if the owner is an individual, partnership or corporation. *Id.*

[*13] In holding that the plaintiff could not recover for libel to his <u>person</u>, the *Newspapers* court indicated that HN6 "the asserted libel must refer to some ascertained or ascertainable person, and that person must by the plaintiff." *Id. at 893*. 50-Off uses the "ascertainable person" requirement to support its argument that a corporation can be libeled only if the asserted libel refers to or identifies an officer or owner of the corporation. If such an interpretation were followed, then it would render meaningless the statement of law in *Newspapers* regarding the entitlement of corporations and partnerships to sue for libel. Since the definition of libel is expressed in terms of injury to an individual, yet those entitled to sue for libel include corporations and partnerships, it follows that the term "ascertainable person" should be similarly interpreted to apply to ascertainable corporations or partnerships. Also, the holding in *Newspapers* that a corporation can assert a cause of action is not conditioned upon the reference to an ascertainable individual in the asserted libel.

50-Off's argument is not supported by case law. In *General Motors* [*14] *Acceptance Corp. v. Howard* ("*GMAC*"), the Texas Supreme Court allowed a corporation and its owner, an individual, to maintain a cause of action for libel, 487 S.W.2d 708, 712 (Tex.1972). Suit was instituted by Hugh Howard and Howard Motor Company, Inc., wherein they alleged that General Motors Acceptance Corporation ("GMAC") published defamatory statements against them. *Id. at 709*. The asserted libel was contained in a letter sent to a bank on behalf of GMAC, indicating that (1) Howard Motor Company, Inc. was in default on a "floor plan" financing agreement, and (2) the cars formerly offered for sale by Howard Motor Company, Inc. had been repossessed. *Id., at 710*. In ruling that the corporation had a cause of action, the *GMAC* court stated that the opinion in *Newspapers* specifically recognized that a corporation may be libeled. *Id. at 712*. The ruling was not conditioned upon a finding that an individual that owned the corporation was ascertainable in the asserted libel, which would be necessary to support 50-Off's argument. Additionally, the *GMAC* court held that plaintiff Hugh Howard also had a cause of action because Mr. [*15] Howard was known by the bank president that received the letter at issue to be the president of Howard Motor Company, Inc. and the person responsible for its actions. *Id.* Therefore, the separate causes of action for the corporate and individual plaintiffs undermines 50-Off's arguments.

Similarly, in a Fifth Circuit case involving counterclaims for libel, the court rejected an argument that a corporation cannot maintain an action for libel under Texas law. *Snead v. Redland Aggregates, Ltd.*, 998 F.2d 1325, 1328 n.3 (5th Cir.1993). The *Snead* court upheld the trial court's judgment awarding damages to the defendant corporations on their counterclaims for libel, yet the opinion is devoid of any indication that the asserted libel referred to an "ascertainable individual" that was an officer or owner of either corporation. Therefore, 50-Off's suggested interpretation of Texas law cannot serve as a basis for dismissing the claims for defamation for failure to state a claim.

50-Off also contends that BPS has failed to state a claim for libel because BPS has failed to plead the elements for the tort of business disparagement. *Pl. Mot.*, p.6. BPS

---

[4] The statutory definition of libel that was analyzed in *Newspapers* was the same, in all material respects, to the current statutory definition. See *Newspapers, 339 S.W.2d at 893*.

1997 U.S. Dist. LEXIS 11136, *15

responds [*16] to this contention as being an additional challenge to BPS' defamation claim. **Response to Pl. Mot. Dismiss**, p.9; **Response to Third Party Pl. Mot. Dismiss**, p.11. Although similar to defamation, the tort of business disparagement is a separate and distinct claim. Therefore, a separate analysis is required.

50-Off contends that dismissal of the business disparagement claim is appropriate because BPS has failed to plead that a specific economic loss resulted from the asserted business disparagement. BPS contends that specific economic loss need not be proven in cases that involve libel per se. [5]

The Texas Supreme Court has distinguished the tort of business disparagement from the tort of defamation. In *Hurlbut v. Gulf Atlantic Life Ins. Co., 749 S.W.2d 762, 766 (Tex.1987)*, the court held that *HN8* the elements for a claim of business disparagement are:

> (1) publication by the defendant of [*17] disparaging words,(2) falsity,(3) malice,(4) lack of privilege, and(5) special damages.

BPS contends that special damages need not be proven because this is a case that involves an allegation of libel per se, but BPS' allegation does not find support in Texas law. In distinguishing the tort of business disparagement from the tort of defamation, the *Hurlbut* court stated, in regard to damages, that:

> the common law required plaintiff in a defamation action to prove special damages in only a limited number of situations, whereas pecuniary loss to the plaintiff must always be proved to establish a cause of action for business disparagement.

*Hurlbut*, 749 S.W.2d at 766 (emphasis added). Therefore, the existence of libel per se does not eliminate the requirement of proving special damages.

Additionally, the torts of business disparagement and defamation are further distinguished by the interests that they protect. The *Hurlbut* court stated that the tort of defamation "is to protect the personal reputation of the injured party, whereas the action for injurious falsehood or business disparagement is to protect the economic interests [*18] of the injured party against pecuniary loss." *Id.* at 766. Accordingly, Texas law provides that damages may be presumed in defamation cases involving libel per se because damage to a person's reputation is difficult to quantify. *Snead*, 998 F.2d at 1331. In contrast, proof of special damages is an essential part of the plaintiff's cause of action for business disparagement, thus requiring the plaintiff to "establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales." *Hurlbut*, 749 S.W.2d at 767 (citation omitted).

BPS has merely alleged that, as a result of the statements by Akin Gump and 50-Off, "BPS has suffered injury to its reputation in an amount not presently determined." *Answer*, p. 25 (emphasis added). BPS' claim that seeks to protect its reputation does not state a claim for business disparagement, and BPS' non-specific allegation of damages also falls short of the requirement for the tort of business disparagement. Therefore, the undersigned concludes that BPS has failed to state a claim for business disparagement.

### 3. Absolute Privilege

50-Off contends that all claims based [*19] on the statements in the article attributable to an Akin Gump lawyer should be dismissed because of the absolute privilege accorded communications by attorneys. BPS contends that this privilege is not properly before the Court and that it does not apply because the statements were made during a "de facto press conference." *HN9* An absolute privilege is a complete defense to an action for defamation. *Matta v. May*, 888 F. Supp. 808, 813 (S.D.Tex.1995). Therefore, if the Court determines that 50-Off is protected by an absolute privilege as to certain claims, then dismissal of those claims would be proper.

Texas courts have adopted the rule governing privileged communications by attorneys, as set forth in the Restatement (Second) of Torts § 586 (1977). *Russell v. Clark*, 620 S.W.2d 865, 870 (Tex.Civ.App.--Dallas 1981, writ ref'd n.r.e.); *Hill v. Herald-Post Pub. Co.*, 877 S.W.2d 774, 782 (Tex. App.--El Paso 1994), *rev'd on other grounds*, 891 S.W.2d 638 (Tex.1994). Under this privilege, an attorney is absolutely privileged to publish defamatory statements concerning another in "communications preliminary to a proposed judicial proceeding, or in the institution [*20] of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Russell*, 620 S.W.2d at 869 (citing Restatement (Second) of Torts § 586). The privilege applies even if the statements are false and are published with malice. *Hill*, 877 S.W.2d at 782. The privilege does not apply to statements made during a press conference, but it does apply if the attorney responds to a telephone call from a reporter and provides the reporter a statement that bears a substantial relationship to the court proceedings and was made in furtherance of the representation of the attorney's client. 877 S.W.2d 774, 1994 Tex. App. LEXIS 353 at *25.

BPS contends that 50-Off has not properly asserted the privilege because privilege is an affirmative defense,

---

[5] *HN7* A false statement that charges a party with the commission of a crime is libelous per se.

1997 U.S. Dist. LEXIS 11136, *20

which 50-Off and Akin Gump have the burden of pleading and proving. BPS contends that the claim of privilege cannot be addressed by a motion to dismiss. Instead, according to BPS, it must be pleaded in the answer in order to be placed in issue before the Court.

BPS' argument fails to distinguish between absolute privilege and qualified privilege. The cases that BPS cites in support [*21] of its argument involve qualified privilege. See *Golden Bear Distr. Systems of Texas v. Chase Revel, Inc.*, 708 F.2d 944, 949 (5th Cir.1983); *Olan Mills, Inc. v. Enterprise Pub. Co.*, 210 F.2d 895, 897 (5th Cir.1954). *HN10* In a case involving absolute privilege, a motion to dismiss may be granted if the privilege is apparent on the face of the complaint, but a defense of qualified privilege cannot be asserted by way of a motion to dismiss. *Gierbolini Rosa v. Banco Popular De Puerto Rico*, 930 F. Supp. 712, 717 n.2 (D. Puerto Rico 1996). The *Matta* court dismissed the plaintiff's defamation claim under *Federal Rules of Civil Procedure 12(b)(6)* and *12(c)* because it ruled that the statements at issue were protected by absolute immunity. *Matta*, 888 F. Supp. at 813. Cases in other jurisdictions have found it proper to address a claim of absolute privilege by motion to dismiss. See *Buschel v. Metrocorp*, 957 F. Supp. 595, 1996 U.S. Dist. LEXIS 14094, 1996 WL 526916 (E.D. Penn. 1996); *Vantassell-Matin v. Nelson*, 741 F. Supp. 698 (N.D.Ill.1990). Therefore, the Court finds that the issue of absolute privilege is properly raised by a motion to dismiss.

BPS next contends that the [*22] statements went beyond the scope of the privilege. *HN11* Under Texas law, the question of the relationship of the defamatory matter to a proposed or existing judicial proceeding is a question of law. *Russell*, 620 S.W.2d at 870. In making its determination, the Court must consider the entire communication in it context, and must extend the privilege to any statement that bears some relation to an existing or proposed judicial Proceeding. *Id.* The Court must resolve all doubts as to relevance in favor of the party claiming the privilege. *Id.*

*HN12* As the motion under consideration is a motion to dismiss, the Court is generally precluded from considering material outside the complaint. Under an exception to the general rule, the Court may consider a document referred to in the complaint that is not attached to the complaint if the complaint refers to the document, it is "central" to the dispute, and no party questions the authenticity of the document. *Internat'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2nd Cir.1995); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.), *cert. denied*, 512 U.S. 1219, 114 S. Ct. 2704, 129 L. Ed. 2d 832 [*23] (1994); *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir.1993). The article is clearly referred to in the complaint and is central to the dispute regarding absolute privilege. Although no party has provided a copy of the article, a copy is easily obtained by means of electronic legal research. The undersigned presumes that there is no dispute regarding the authenticity of such a copy of the article in question. Therefore, the undersigned will consider such copy of the article in question in order to properly analyze the absolute privilege issue. [6]

The allegations of BPS indicate that this dispute stems from the statements in the article:

> More specifically, such statements were contained in a March 2, 1997, San Antonio [*24] Express-News article. In that article, Lane *[the Akin Gump lawyer representing 50-Off]* and Akin Gump made statement falsely accusing BPS of, among other things, participating in an "international scam" composed of "Swiss bankers, English traders and convicted criminals who got together to steal millions from [50-Off]." Further, Lane and Akin Gump publicly accused BPS of conspiring with White and Koutsoubos "to break the law." Such statements constitute libel, slander and defamation, per se.

*Answer*, p.24 (statement in italics added for clarity). The quoted portion of the allegations made by BPS relate to three paragraphs in the article:

> "50-Off's stock was stolen in an international scam," said Daniel McNeel Lane, Jr., a lawyer for the close-out retailer."It was a case of Swiss bankers, English traders and convicted criminals who got together to steal millions from a San Antonio company-."..."It's our contention that White and Koutsoubos and Banque Paribas conspired to break the law," Lane said. Howard White caused the shares to be put in the account of Koutsoubos, who began to trade shares he'd obtained for nothing," Lane said.

[*25] Vicki Vaughan, *When Good Faith Turns Bad - 50- Off Fights To Recover Millions After International Stock Sale Bust*, San Antonio Express-News, Mar. 2, 1997, at 1H, 1997 WL 3163236. From a review of the entire article, the undersigned finds that the statements made by the Akin Gump lawyer bear a relationship to the litigation in this case. The undersigned also finds that the statements were made in furtherance of the law-

---

[6] As an alternative, in regard to the absolute privilege issue, the Court could convert the motion to dismiss to a motion for summary judgment, provide notice to the parties and wait for a copy of the article to be presented for consideration.

1997 U.S. Dist. LEXIS 11136, *25

yer's representation of his client, 50-Off.

BPS next contends that the privilege should be unavailable because they were made at a "de facto press conference." The article does not indicate that the statements were obtained at a press conference. BPS' contention of a "de facto" press conference indicates that the statements were related to the writer of the article by a means other than an "actual" press conference. Statements made to a reporter are covered by the privilege, unless they are made at a press conference. BPS' answer does not allege that the statements were made at a press conference called by 50-Off or its lawyers, and there is nothing before the Court that would indicate that the statements at issue were made at a press conference. Therefore, the [*26] absolute privilege is not defeated.

For these reasons, the undersigned concludes that the statements in the article attributable to the Akin Gump lawyer are absolutely privileged. BPS' counterclaims against 50-Off and third party claims against Akin Gump for slander, libel, defamation and business disparagement are based on the privileged statements. Therefore, they should be dismissed for failure to state a claim.

**B. Contribution**

BPS filed a third party claim of contribution against Akin Gump because the law firm allegedly is or may be liable to BPS for all or part of 50-Off's claims against BPS due to Akin Gump's alleged legal malpractice. The basis for this claim is that, along with 50-Off, Akin Gump (1) failed to exercise any reasonable degree of care in their handling of the underlying stock transaction that forms the basis of this suit, and (2) failed to do anything to protect the shares of stock at issue after Akin Gump and 50-Off became aware of problems with payment of those shares. 50-Off contends that BPS has no substantive right to claim contribution from Akin Gump for conversion or fraud because they are intentional torts. 50-Off also contends that BPS' [*27] affirmative defenses, namely contributory negligence, comparative responsibility and mitigation of damages, are not available as defenses to the intentional torts of fraud and conversion. 50-Off requests the Court to strike the third party claim of contribution against Akin Gump, along with all of BPS' affirmative defenses, because they are unavailable under governing law.

HN13 Federal Rule of Civil Procedure 14(a) provides that a defendant may bring in a third-party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." FED. R. CIV. P. 14(a). Case law provides that the procedural device of impleader is permitted only when the third-party defendant's potential liability is dependent upon the outcome of the main claim asserted by the plaintiff. Southeast Mtg. Co. v. Mullins, 514 F.2d 747, 749 (5th Cir.1975). The third party claim must be based on secondary or derivative liability, such as contribution or indemnity, and there must be a substantive basis for the third party defendant's liability. Kim v. Fujikawa, 871 F.2d 1427, 1434 (5th Cir.1989).

BPS has asserted a third party claim of contribution [*28] against Akin Gump; therefore, the issue is whether or not there is a substantive basis for the contribution claim. BPS contends that all of the activities leading to the alleged conversion occurred in New York, and that BPS' claim for contribution with respect to the conversion claim should be governed by the law of New York. In contrast to Texas law, New York law provides a very broad right to contribution that applies not only to joint tortfeasors, but also to concurrent, successive, independent, alternative, and even intentional tortfeasors. Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley, 71 N.Y.2d 21, 27, 517 N.E.2d 1360, 1364, 523 N.Y.S.2d 475, 478 (1987). [7] Under New York law, even the perpetrator of an intentional tort may require contribution from one who by mere negligence contributed to the plaintiff's injury. Anderson v. Comardo, 107 Misc. 2d 821, 823, 436 N.Y.S.2d 669, 671 (1981).

[*29] Akin Gump contends that BPS cannot assert a contribution claim for legal malpractice against Akin Gump for Akin Gump's alleged malpractice to 50-Off. In support of this argument, Akin Gump cites to a case that denied impleader under Fed.R.Civ.P. 14(a) on the basis that the legal malpractice claim could not be derivative because state law did not provide a cause of action for legal malpractice to non-clients. Erickson v. Erickson, 849 F. Supp. 453 (S.D.W.Va.1994). According to Erickson, the determining factor for this issue, therefore, is whether state law would recognize a contribution claim against lawyer by a non-client for injury caused to the lawyer's client. Akin Gump cites to Texas cases that have held that attorneys are not liable for damages to a non-client because privity of contract is absent. See Draper v. Garcia, 793 S.W.2d 296, 301 (Tex.App.--Houston[14th Dist.] 1990, no writ); Dickey v. Jansen, 731 S.W.2d 581, 582-83 (Tex.App.--Houston[14th Dist.] 1987, writ ref'd n.r.e.). Although Texas law precludes such a claim, Akin Gump fails to cite any New York cases that would preclude such a claim. Under New York law, a third party [*30] action for contribution against an attorney does not require privity of contract with the attorney in order to state a cause of action. Schauer v. Joyce, 54 N.Y.2d 1,

---

[7] As discussed in detail infra, contribution under the original contribution statute in Texas is available from joint tortfeasors only for claims of negligence. Texaco, Inc. v. B.G. Forester, 456 S.W.2d 196, 201 (Tex.Civ.App.--Beaumont 1970, writ ref'd n.r.e.)(interpreting prior law); See also Charter Builders v. Durham, 683 S.W.2d 487, 489 (Tex.App.--Dallas 1984, writ ref'd n.r.e.)(there must be a showing of common liability of negligent tortfeasors).

1997 U.S. Dist. LEXIS 11136, *30

5, 429 N.E.2d 83, 84, 444 N.Y.S.2d 564, 565 (1981). Under New York law, such a claim for contribution is allowed if the attorney and the third party plaintiff each owed a duty to the plaintiff, and by breaching their duties they contributed to the plaintiff's injuries. *Id.* Therefore, if New York law applies, BPS may require contribution from Akin Gump because its legal malpractice in regard to its duty to 50-Off may be a cause of 50-Off's injuries, even though (1) 50-Off alleges that its injuries were caused by the intentional torts of BPS and others, and (2) there was no privity of contract between BPS and Akin Gump. Since New York provides a substantive basis for BPS' third party claim of contribution against Akin Gump, but Texas law does not, the Court must undertake a choice-of-law analysis to determine the source of the governing law on this issue.

### 1. Choice-Of-Law analysis

*HN14* A federal court must follow the choice-of-law rules of the state in which it sits. *St Paul Mercury Ins.* [*31] *Co. v. Lexington Ins. Co., 78 F.3d 202, 205 (5th Cir.1996)*. *HN15* The Texas Supreme Court has adopted the "most significant relationship" test that is provided in §§ 6 & 145 of the Restatement (Second) of Conflicts to decide which law applies. *Gutierrez v. Collins, 583 S.W.2d 312, 318 (Tex.1979)*. Under § 6, the factors relevant to the choice of law include:

> (1) the needs of the interstate and international systems,(2) the relevant policies of the forum,(3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,(4) the protection of justified expectations,(5) the basic policies underlying the particular field of law,(6) certainty, predictability and uniformity of result, and(7) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflicts § 6 (1969). *HN16* Under § 145, an analysis of the factors in § 6 must take into account the relative importance of the following types of contacts that the respective jurisdictions have to the parties and the occurrence at issue in this case:

> (1) the place where [*32] the injury occurred,
>
> (2) the place where the conduct causing the injury occurred,
>
> (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>
> (4) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflicts § 145.

BPS contends that New York has the most significant relationship to the alleged conversion, and that courts faced with similar facts have applied the law where the alleged conversion occurred. In support of its argument, BPS cited two cases, *In re Conticommodity Services, Inc. Securities Litigation, 733 F. Supp. 1555, 1569 (N.D.Ill.1990), rev'd on other grounds, 976 F.2d 1104 (7th Cir.1992),* and *Morgan Guar. Trust Co. of N.Y. v. Amer. Sav. and Loan Assoc., 605 F. Supp. 1086, 1093 n.10 (C.D.Cal.1985), rev'd on other grounds, 804 F.2d 1487 (9th Cir.1986), cert. denied, 482 U.S. 929, 107 S. Ct. 3214, 96 L. Ed. 2d 701 (1987)*. The choice of law issue was governed in the *Morgan Guaranty* case by New York's uniform commercial code choice of law statute, which is not even similar to the "most significant [*33] relationship" analysis that the Court must employ. *Morgan Guaranty, 605 F. Supp. at 1093 n.10*. Therefore, the holding in that case is not relevant to the Court's analysis. The *Conticommodity* court purportedly employed the most significant relationship test, but the holding was based on an evaluation of only the types of contacts provided in § 145 that the respective jurisdictions had to the parties and the occurrence at issue in that case. The *Conticommodity* court did not consider the factors set forth in § 6 even though § 145 expressly indicates that the contacts set forth in § 145 are to be taken into account in applying the principles of § 6 to determine the law applicable issue. Restatement (Second) of Conflicts § 145(2). Also, the Texas Supreme Court has emphasized that the "application of the 'most significant relationship' analysis should not turn on the number of contacts, <u>but more importantly on the qualitative nature of those contacts as affected by the policy factors enumerated in Section 6.</u>" *Gutierrez, 583 S.W.2d at 319* (emphasis added). Therefore, the precedential value of the holding in *Conticommidity* is questionable, [*34] due to the court's failure to evaluate the factors provided in § 6 that are relevant to the choice of law.

BPS also cited to § 147 of the Restatement as authority for using the law of the jurisdiction where the injury occurred. § 147 is not dispositive because it provides that the law of the jurisdiction where the injury occurred should apply, unless some other state has a *more* significant relationship under the principles stated in § 6. Restatement (Second) of Conflicts § 147. Thus, the "*most* significant relationship" test is still applicable.

The Court's determination of the state that has the most significant relationship to the parties and occurrence at issue must begin with findings in regard to the type of contacts described in § 145. In regard to the conversion claim only, the place where the injury occurred was New York. This finding is based on the allegation in 50-Off's pleading that 50-Off instructed its New York transfer agent to issue stock certificates to Dennis Morris, and then the shares were deposited at Chase Manhattan

Bank, and from there the shares were wrongfully transferred and sold. However, the conduct causing the injury consisted of directives [*35] or instructions issued by persons outside of New York. All defendants, except Chase Manhattan Bank, are located outside of New York. Also, the relationship of the parties centered in Texas. The business relationship between the parties started in Texas, and the relationship continued as a result of the parties repeated contacts with 50-Off in Texas until the securities at issue were held and transferred from New York, at which time the business relationship disintegrated.

These contacts must be considered in light of the factors provided in § 6. In consideration of these factors, the undersigned notes that New York has an interest in this proceeding because one of the parties, Chase Manhattan Bank, is located in New York. However, considering the type of contacts discussed previously, Texas would seem to have a stronger interest in this proceeding for several reasons. First, 50-Off has allegedly suffered a huge loss as a result of a business relationship between it and foreign citizens and companies. According to BPS, if New York is applied to BPS' claim of contribution, Akin Gump would potentially face liability, but if Texas law is applied, then Akin Gump would not face liability. [*36] Thus, it would have a detrimental effect on interstate good will and trade relations if New York law were to be applied in order to impose a measure of liability against a Texas law firm for the loss to 50-Off that allegedly resulted from its (1) actions in structuring a business deal in Texas between persons and entities outside of New York, and (2) failure to check the backgrounds of foreigners involved in the deal. The balance of the interests of New York and Texas favors the use of Texas law.

It cannot be said that BPS had an expectation that New York law would apply because it fought vigorously to have these proceedings take place in Switzerland. The policy behind the legal principle of contribution is to equalize the ultimate responsibility among tortfeasors. Although each state has laws providing contribution, the arguments of the parties indicates that the application of New York law would effectively add a new cause of action. It does not seem fair to provide such a remedy for a foreign corporation that had no expectation of the applicability of the law that is the source of that remedy.

Although the "place of injury" contact is stressed by BPS in its suggested analysis, [*37] a comment in the Restatement indicates that if the place of injury is fortuitous or bears little relation to the occurrence and parties, then this contact will not play an important role. Restatement (Second) of Conflicts § 145 cmt. e. Aside from the alleged place of the conversion, New York has no relation to the occurrence that serves as the basis of this suit. Also, in cases involving fraud and misrepresentation, there is little reason to say that one state rather than another is the place of injury. Restatement (Second) of Conflicts § 145 cmt. e. In this case, the claims of fraud and misrepresentation are interrelated to the claim of conversion. Thus, BPS' suggested focus on the place of injury is not dispositive of the issue.

The most significant factor in this analysis is that BPS would have the Court apply New York law solely to one claim asserted in this case, even though all the claims are interrelated and based on the same set of facts. In our case, proof of the alleged actions of the defendants could establish liability under several causes of action. The application of a different rule as to apportionment of liability as to only one of the causes of action would neither [*38] serve the desire for uniformity nor would it be easy for the Court or a jury to determine how to impose liability in that situation. For these reasons, the undersigned concludes that Texas law should apply to the conversion claim.

### 2. Texas Law on Contribution

As argued by BPS, § 173 of the Restatement provides that the source of law governing the conversion claim also governs the contribution claim. Restatement (Second) of Conflicts, § 173. Therefore, Texas law governs the contribution claim because of the finding that Texas law should apply to the conversion claim.

Texas law provides four different contribution schemes, with the appropriate scheme determined by the theory upon which liability is sought to be imposed. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 5 (Tex.1991). The four schemes are provided by the following:

> (1) the original contribution statute, TEX.CIV.PRAC. & REM.CODE ANN. § 32.001 et seq. (Vernon 1986);(2) the former comparative negligence statute, former TEX.CIV.PRAC. & REM.CODE ANN. § 33.001 et seq. (Vernon 1986), amended by Acts 1987, 70th Leg., 1st C.S., Ch. 2, § 2.04;(3) the comparative responsibility [*39] statute, TEX.CIV.PRAC. & REM.CODE ANN. § 33.001 et seq. (Vernon 1991); and(4) the common law contribution by comparative causation provided the holding in ***Duncan v. Cessna Aircraft Co.***, 665 S.W.2d 414, 429 (Tex. 1984).

*Stewart Title*, 822 S.W.2d at 5. The comparative negligence statute applies only to pure negligence cases filed before September 2, 1987, therefore it is inapplicable in this case. *Id.* The *Duncan* comparative causation scheme is similarly inapplicable because it applies only to products cases involving certain types of claims. *Id.* Therefore, contribution in this case is governed by either the original contribution statute or the comparative responsibility statute.

*HN17* Contribution under the original contribution statute in Texas is available from joint tortfeasors only for

1997 U.S. Dist. LEXIS 11136, *39

claims of negligence. *Texaco, Inc. v. B.G. Forester*, 456 S.W.2d 196, 201 (Tex.Civ.App.--Beaumont 1970, writ ref'd n.r.e.)(interpreting prior law). *See also Charter Builders v. Durham*, 683 S.W.2d 487, 489 (Tex.App.--Dallas 1984, writ ref'd n.r.e)(there must be a showing of common liability of negligent tortfeasors). Therefore, [*40] BPS's allegations of Akin Gump's negligence in handling the underlying stock transaction are insufficient to show right of contribution for claim for intentional conduct by BPS. As this is a case that was filed before September 1, 1996, the comparative responsibility statute does not apply to claims based on intentional torts. TEX.CIV.PRAC. & REM.CODE ANN. § 32.002 (1986), amended by Acts 1995, 74th Leg., Ch.136, § 1. Therefore, BPS cannot seek contribution under the comparative responsibility statute for the intentional tort of conversion.

BPS contends in its responses to the motion that BPS is entitled to assert contribution claims with respect to some of 50-Off's claims. BPS attempted to support this argument by arguing that it could assert a claim of contribution with respect to 50-Off's claim of conversion. In regard to the federal securities claims, contribution is only allowed for joint tortfeasors. *Stratton Group, Ltd. v. Sprayregen*, 466 F. Supp. 1180, 1185 (S.D.N.Y.1979); *Stowell v. Ted S. Finkel Inv. Serv.*, 641 F.2d 323, 325 (5th Cir.1981). And as previously discussed, state law allows contribution only for joint tortfeasors in regard to claims based on [*41] negligence. Therefore, BPS cannot maintain a claim for contribution against Akin Gump.

### C. BPS' Affirmative Defenses

BPS has asserted numerous affirmative defenses in its answer, including lack of jurisdiction, improper venue, failure to state a claim, contributory negligence, comparative responsibility, and unclean hands. 50-Off's motion to strike is addressed to the affirmative defenses that are directed at the actions of Akin Gump. BPS has asserted several affirmative defenses claiming that the damages suffered by 50-Off were a result of Akin Gump's failure to use reasonable care or were a result of Akin Gump's failure to protect 50-Off's interests. BPS contends that Akin Gump was either negligent or grossly negligent in regard to its duties owed to 50-Off, but BPS does not allege that 50-Off's damages were caused by any intentional conduct on the part of Akin Gump.

As previously discussed, comparative negligence does not apply to this case, and comparative responsibility does not apply to claims of intentional conduct. *HN18* In Texas, there is no obligation to seek return of property that has been converted by another. *Herrera v. Gibbs*, 499 S.W.2d 912, 916 (Tex.Civ.App.--El [*42] Paso 1973, no writ). BPS' affirmative defenses in regard to the federal claims also lack support because *HN19* allegations of negligent conduct are not a defense to intentional acts of securities fraud. *Morgan, Olmstead*

*Kennedy & Gardner, Inc. v. Schipa*, 585 F. Supp. 245, 250 (S.D.N.Y.1984). Likewise, BPS' allegations of negligent conduct by Akin Gump are insufficient to support the affirmative defenses of *in pari delicto* and unclean hands in regard to 50-Off's claims against BPS. *Id*. It is clear that BPS cannot maintain any affirmative defense that is based on the allegedly negligent conduct of Akin Gump. In contrast to 50-Off's allegations of BPS' intentional conduct, all of BPS' defenses in regard to Akin Gump are based on some form of negligent conduct, so all such affirmative defenses are insupportable.

### Conclusion

50-Off moved the Court to dismiss the counterclaims of slander, libel, defamation and business disparagement for lack of jurisdiction because they are allegedly permissive counterclaims that lack an independent basis of jurisdiction. In contrast, the undersigned found that they were compulsory counterclaims because the Fifth Circuit stated [*43] in a recent case that the defendant's counterclaims of slander and commercial disparagement were, indeed, compulsory counterclaims. Therefore, the counterclaims should not be dismissed for lack of jurisdiction.

The motions to dismiss filed by 50-Off and Akin Gump seek dismissal of the counterclaims and the third party claims against Akin Gump for slander, libel, defamation and business disparagement on the basis that they fail to state a claim. The undersigned found that BPS' counterclaims and third party claims based on slander, libel and defamation were defeated by the finding that they were based on an Akin Gump lawyer's statements that were absolutely privileged. The undersigned also found that the counterclaims and third party claims based on business disparagement failed to state a claim because BPS sought to protect its reputation instead of protecting its economic interests against pecuniary loss. Therefore, the motions to dismiss for failure to state a claim should be granted. Accordingly the counterclaims and third-party claims of slander, libel, defamation and business disparagement should be dismissed.

The motions are also directed to the third party claim of contribution [*44] against Akin Gump and to the affirmative defenses asserted by BPS that concern Akin Gump's alleged legal malpractice. BPS contends that New York law should apply at least to the conversion claim and the related, third party claim of contribution because the activities leading to the alleged conversion occurred in New York. The undersigned found that Texas law should apply and that the third party claim of contribution and the affirmative defenses directed toward the actions of Akin Gump are legally unsupportable. Therefore, the motion to strike should be granted. Accordingly, BPS' third party claim against Akin Gump should be stricken, along with all of BPS' affirmative defenses that are directed toward the actions of Akin Gump.

1997 U.S. Dist. LEXIS 11136, *44

The motions before the Court also seek the alternative relief of severance of any claims against Akin Gump. Considering the findings made, the motions to sever should be denied.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that the motions to dismiss and the motion to strike be **GRANTED**. It is also recommended that the alternative relief sought in the motions to sever be **DENIED**.

### Instructions for Service and Notice [*45] of Right to Appeal/Object

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by mailing a copy to each of them by Certified Mail, Return Receipt Requested. Pursuant to Title 28 U.S.C. § 636(b)(1) and Rule 72(b), Fed.R.Civ.P., any party who desires to object to this report must serve and file written objections to the Memorandum and Recommendation within 10 days after being served with a copy unless this time period is modified by the district court. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. *Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.* A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. See *Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472, 88 L. Ed. 2d 435 [*46] (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation contained in this Memorandum and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428 (5th Cir. 1996).

SIGNED this 19th day of May, 1997.

**JOHN W. PRIMOMO**

**United States Magistrate Judge**