**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ODELIA ABECASSIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 4:09-cv-03884 |
| | ) | |
| OSCAR WYATT, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT OSCAR WYATT, JR.'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Raul Suazo
Martin, Disiere, Jefferson & Wisdom, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas 77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101

Michael J. Miller
David J. Dickens
The Miller Firm, LLC
The Sherman Building
108 Railroad Avenue
Orange, Virginia 22960

Gavriel Mairone
Bena Ochs,
Mann & Mairone
Rehov Ha-Mered, 25, Suite 3000
Tel Aviv 61501, Israel

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

LEGAL STANDARD ........................................................................................... 1

    A.  Federal Rule of Civil Procedure Rule 12(c) ................................................. 2

    B.  Federal Rule of Civil Procedure Rule 54(b) and the Doctrine of the Law of the Case ....................................................................................................... 4

ARGUMENT ...................................................................................................... 6

    A.  This Court Has Already Ruled That Allegations of Intent Are Not Required Under the ATA and Plaintiffs' Amended Complaint Contains Sufficient Allegations That El Paso Knowingly Paid Kickbacks to Saddam Hussein ........................................ 6

    B.  This Court Has Already Ruled That Plaintiffs' Have Alleged Facts Sufficient To Meet The Requisite Standard for Proximate Causation Under the ATA ...................... 10

CONCLUSION .................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F. 3d 1000 (7th Cir. 2002)................................................................................................................ 8, 11

*Bryson v. Brand Insulations, In*c., 621 F. 2d 556 (3d Cir. 1980).................................................. 3

*Cape Flattery Ltd. v. Maritime, LLC*, 2012 U.S. Dist. LEXIS 106419 (D. Hawaii, July 31, 2012) ................................................................................................................................................ 3

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988).............................................. 5

*Christy v. We the People*, 213 F.R.D. 235 (D.N.J. 2003) ............................................................. 2

*Estep v. City of Somerset, Kentucky*, 2011 U.S. Dist. LEXIS 23486 (E.D. Ky. March 8, 2011) ... 3

*Greener v. Cadle Co.*, 298 B.R. 82 (N.D. Tex. 2003) ................................................................... 5

*In re Toyota Motor Corp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 124055 (C.D. Cal. Feb. 21, 2012). 2

*Lashawn A. v. Barry*, 87 F. 3d 1389 (D.C. Cir. 1996) .................................................................. 5

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) ................................................................................................................................................ 2

*Livingston Downs Racing Association, Inc. v. Jefferson Downs Corporation*, 259 F. Supp. 2d 471 (E.D. La. 2002)................................................................................................................ 4

*Mataorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 208 F. Supp. 2d 687 (S.D. Tex. 2001) ..... 4

*Mpoy v. Fenty*, 2012 U.S. Dist. LEXIS 158323 (D.D.C. Nov. 5, 2012) ....................................... 5

*Munoz v. PHH Corp.*, 2013 U.S. Dist. LEXIS 42919 (E.D. Cal. Mar. 26, 2013) ......................... 3

*Perforaciones Maritimas Mexicanas S.A. v. Seacor Holdings, Inc.*, CA 2008 U.S. Dist. LEXIS 112595 (S.D. Tex. 2008)..................................................................................................... 4, 5

*Phillips Petroleum Co. v. Int'l Bhd. Of Boilermakers*, 251 F. Supp. 2d 1354 (S.D. Tex. 2003).... 3

*R.G. Financial Corp. v. Vergara-Nunez*, 446 F. 3d 18 (1st Cir. 2006) ........................................ 3

*Reed v. Islamic Republic of Iran*, 242 F.R.D. 125 (D.D.C. 2007)................................................ 4

*Rodriguez v. Christus Spohn Health Sys. Corp.*, 874 F. Supp. 2d 635 (S.D. Tex. 2012).............. 2

*Ross v. Marshall*, 426 F. 3d 745 (5th Cir. 2005) ........................................................................ 4

*Rothstein v. UBS AG*, 647 F. Supp. 2d 292 (S.D.N.Y., 2009) .................................................... 12

*Rothstein v. UBS AG,* 708 F. 3d 82 (2d Cir. 2013) ...................................................... 1, 11, 12, 13

*Rothstein v. UBS AG*, 722 F. Supp. 2d 511 (S.D.N.Y. 2010) ..................................................... 12

*Santander Consumer USA Inc. v. Walsh*, 762 F. Supp. 2d 217 (D. Mass. 2010) ......................... 3

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ........................................................................... 3

*Stansell v. BGP, Inc.*, No. 8:09-cv-2501, 2011 WL 1296881 (M.D. Fla. March 31, 2011)..... 9, 10

*Stoffels v. SBC Communications, Inc.*, 677 F. 3d 720 (5th Cir. 2012).......................................... 5

*Strauss v. Credit Lyonnais, S.A.*, 2013 U.S. Dist. LEXIS 28451 (E.D.N.Y. Feb. 28, 2013).. 11, 13

*Weiss v. Nat'l Westminster Bank, PLC*, 2013 U.S. Dist. LEXIS 52628, (E.D.N.Y. Mar. 28, 2013) ................................................................................................................................................ 8

*Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010) ........................................... 8

**Other Authorities**

18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and
    Procedure § 4478.4 (2002) ........................................................................................... 5

**Rules**

Federal Rule of Civil Procedure Rule 12(c) ............................................................. 2, 3
Federal Rule of Civil Procedure Rule 54(b) ............................................................. 2, 4

## PRELIMINARY STATEMENT

Defendant Oscar S. Wyatt's (hereinafter "Wyatt" or "Defendant") Motion for Judgment on the Pleadings is nothing more than a reiteration of the same arguments asserted by El Paso Corporation in support of their Motion for Judgment on the Pleadings and a request for this Court to reconsider and overrule Judge Rosenthal's earlier denial of his Motion for Failure to State a Claim under Rule 12(b)(6). Wyatt claims that he is entitled to judgment on the pleadings under Rule 12(c) on two issues "not previously addressed": (1) whether Plaintiffs have alleged sufficient facts to establish proximate cause under the standards enunciated by the Second Circuit in *Rothstein v. UBS AG*, 708 F.3d 82 (2nd Cir. 2013); and (2) whether Plaintiffs have adequately alleged that Wyatt intended for his illegal kickbacks to Sadaam Hussein to fund terrorist activities. Wyatt's arguments are without merit for several reasons.

As noted in Plaintiffs' Opposition to El Paso Corporation's Motion for Judgment on the Pleadings [Doc. 265][1] this Court has already considered and ruled that: (1) Plaintiffs have alleged sufficient facts to show proximate causation under all relevant applicable authority, including the reasoning set forth in *Rothstein*; and (2) allegations of a specific intent to commit an act of terrorism are not required under either direct or secondary liability theories under the ATA. As this Court has already considered and denied Defendant's arguments, Wyatt's Motion for Judgment on the Pleadings under Rule 12(c) should be denied.

## LEGAL STANDARD

As demonstrated below, this Court has already considered each of the arguments raised by Wyatt in his Motion for Judgment on the Pleadings and concluded that Plaintiffs' Amended Complaint contains sufficient factual allegations to survive a motion to dismiss. Accordingly,

---

[1] Plaintiffs' hereby incorporate their Opposition to El Paso's Corporation's Motion for Judgment on the Pleadings [Doc. 265] by reference.

Wyatt's Motion is merely a motion for reconsideration filed under a different name. As recently stated by one district court:

> Defendants' motion for judgment on the pleadings addresses matters previously raised in their motion to dismiss, and decided - either explicitly or by necessary implication - in the Court's resolution of that motion. The Court views this motion as an untimely request for reconsideration rather than an independent motion for judgment on the pleadings that raises new issues. While the Court is not barred from reexamining the issues raised in the instant motion, see Fed. R. Civ. P. 54(b), the Court sees no reason to do so. Judicial economy would be undermined by allowing parties an unlimited right to revisit issues raised in Rule 12(b)(6) motions via Rule 12(c) motions.

*In re Toyota Motor Corp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 124055 (C.D. Cal. Feb. 21, 2012).

Although Wyatt brings this motion pursuant to Rule 12(c), Plaintiffs respectfully submit that, if the Court chooses to consider Wyatt's motion, it should be analyzed pursuant to the standard set forth under Rule 54(b).

### A. Federal Rule of Civil Procedure Rule 12(c)

A motion under 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Rodriguez v. Christus Spohn Health Sys. Corp.*, 874 F. Supp. 2d 635, 653 (S.D. Tex. 2012); *Christy v. We the People*, 213 F.R.D. 235, 238 (D.N.J. 2003)("any distinction between a judgment on the pleadings under Rule 12(c) and a motion to dismiss under 12(b) is merely semantic because the same standard applies to motions made under either section."). "Thus, the Court must accept the plaintiff's allegations as true and draw all reasonable inferences in her favor." *Id.* at 653; *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

A Motion to dismiss under Rule 12(c) is designed to "dispose of cases where material facts are not in dispute and judgment on merits can be rendered by looking to substance of pleadings and any judicially noticed facts." *Phillips Petroleum Co. v. Int'l Bhd. Of Boilermakers*,

251 F. Supp. 2d 1354 (S.D. Tex. 2003). As a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom in the nonmovant's behalf." *Santander Consumer USA Inc. v. Walsh*, 762 F. Supp. 2d 217, 233 (D. Mass. 2010); *quoting R.G. Financial Corp. v. Vergara-Nunez*, 446 F. 3d 18, 182 (1st Cir. 2006). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974). Judgment may only be entered where "no set of facts could be adduced to support the plaintiff's claim for relief." *Bryson v. Brand Insulations, Inc*., 621 F. 2d 556, 559 (3d Cir. 1980).

Determinations on substantive motions are the "result of considerable time and resources expended by not only the parties, but also this [C]ourt." *Munoz v. PHH Corp*., 2013 U.S. Dist. LEXIS 42919, * 13014 (E.D. Cal. Mar. 26, 2013); *quoting Cape Flattery Ltd. v. Maritime, LLC*, No. 08-cv-00482, 2012 U.S. Dist. LEXIS 106419, 2012 WL 3113168, *7 (D. Hawaii, July 31, 2012). "A motion for judgment on the pleadings is not an opportunity to re-litigate issues raised and decided in a motion to dismiss." Even if the Federal Rules allow a defendant to assert the defense for failure to state a claim in a Rule 12(c) motion for judgment on the pleadings even if he previously raised it in a Rule 12(b)(6) motion to dismiss…courts should only grant such motions in limited circumstances." *Estep v. City of Somerset, Kentucky*, 2011 U.S. Dist. LEXIS 23486 at * 4. (E.D. Ky. March 8, 2011). **"If the defendant's 12(c) motion simply reiterates the same arguments that he made in his 12(b)(6) motion, the court should deny it out of hand."** *Id*; *see also Munoz*, 2013 U.S. Dist. LEXIS at * 13 ("[T]o allow Defendant to reopen the door to

the issues decided in [previous] rulings would run wholly counter to the efficient administration of justice.").

**B. Federal Rule of Civil Procedure Rule 54(b) and the Doctrine of the Law of the Case**

Federal Rule of Civil Procedure 54(b) allows the Court to reconsider "any order or other decision…that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54(b); *Mataorda Ventures, Inc. v. Travelers Lloyds Ins. Co*., 208 F. Supp. 2d 687, 688 (S.D. Tex. 2001). Although the standard of review for interlocutory decisions under Rule 54(b) is less exacting than the standards applied to final judgments under Federal Rules of Civil Procedure Rule 59(e) and Rule 60(b), "courts have looked to the kinds of consideration under those rules for guidance." *Livingston Downs Racing Association, Inc. v. Jefferson Downs Corporation*, 259 F. Supp. 2d 471, 475 (E.D. La. 2002). A motion to reconsider should "clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Ross v. Marshall*, 426 F. 3d 745, 763 (5th Cir. 2005). Likewise, a motion for reconsideration is not "an opportunity to reargue facts and theories upon which a court has already ruled." *Reed v. Islamic Republic of Iran*, 242 F.R.D. 125 (D.D.C. 2007)(denying motion for reconsideration as plaintiffs renewed motion is "little more than a rehash of the arguments previously argued and rejected by the court.").

"The doctrine of the law of the case and the principle of judicial comity are also relevant to the Court's reconsideration of an order issued by a predecessor judge." *Perforaciones Maritimas Mexicanas S.A. v. Seacor Holdings, Inc.*, CA No. 4:05-cv-419, 2008 U.S. Dist. LEXIS 112595 at *3, (S.D. Tex. 2008). Under the law of the case doctrine, "courts show deference to decisions already made in the case they are presiding over." *Stoffels v. SBC*

*Communications, Inc.*, 677 F. 3d 720, 727 (5th Cir. 2012).[2] "As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988). "When a district judge has rendered a decision in a case, and the case is later transferred to another judge, the successor should not ordinarily overrule that earlier decision." *Perforaciones Maritimas Mexicanas S.A. v. Seacor Holdings, Inc.*, 2008 U.S. Dist. LEXIS 112595 at *3; *quoting Loumar, Inc. v. Smith*, 698 F. 2d 759, 762 (5th Cir. 1983).

Although the law of the case doctrine does not prevent a district court from reconsidering its prior rulings, a successor judge should "in accordance with values of comity and predictability, carefully and respectfully consider the conclusions of prior judges before deciding to overturn them. *Stoffels, 677* F. 3d at 728; citing 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478.4 (2002). The Supreme Court has cautioned that although a court has the power to revisit its prior decisions "as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Greener v. Cadle Co.*, 298 B.R. 82, 94-95 (N.D. Tex. 2003); *quoting Christianson*, 486 U.S. at 817; *see also Mpoy v. Fenty*, 2012 U.S. Dist. LEXIS 158323 (D.D.C. Nov. 5, 2012); *Lashawn A. v. Barry*, 87 F. 3d 1389, 1393 (D.C. Cir. 1996)(describing the law of the case doctrine as proposition that "the same issue presented a second time in the same case in the same court should lead to the same result.").

---

[2] Courts have previously concluded that the law of the case doctrine does not apply to a district court's reconsideration of interlocutory orders. The Fifth Circuit, however, has recently applied the doctrine to an interlocutory order finding that "[T]hese differing approaches reflect differences in terminology more than differences in practice." *Stoffels*, 677 F. 3d at 728, n. 3.

## ARGUMENT

**A. This Court Has Already Ruled That Allegations of Intent Are Not Required Under the ATA and that Plaintiffs' Amended Complaint Contains Sufficient Allegations That Wyatt Knowingly Paid Kickbacks to Saddam Hussein.**

Wyatt argues in relevant part that his "mere intention for payment of crude oil was simply to acquire crude oil" and that that it is merely conclusory to allege he should have known that the money he paid to Saddam Hussein would be used to support terrorism against Americans. *See*, Def.'s Mot. at p. 3. Based on this assertion, Wyatt appears to argue that the Plaintiffs have failed to allege a cause of action under the ATA, although he cites no authority or applicable provision of the ATA to support his argument.

Nevertheless, Wyatt's self-serving description of his conduct in this case is irrelevant at this stage of the litigation. In *Abecassis II*, this Court outlined the relevant allegations specific to Wyatt as follows:

> Wyatt was chairman and sole shareholder of Coastal Corporation. Wyatt later formed NuCoastal Corporation, a Houston energy company, and NuCoastal Trading, S.A., a Panama corporation. Both Nucoastal entities are also defendants. The plaintiffs allege that on the day Iraq invaded Kuwait, Wyatt owed Iraq $90 million. After the U.N. sanctions froze Iraq's bank accounts, Wyatt began repaying the money directly to the Hussein government and not to the U.N.-controlled accounts. (*Id.*, ¶¶ 139-43). Wyatt maintained a close relationship with Hussein while the U.N. embargo was in place, hoping that he would be rewarded with Iraqi oil-purchase contracts once the sanctions were lifted. This relationship extended to providing Hussein communications equipment and GPS devices in the mid-1990s, including an INMAR satellite, which Wyatt allegedly gave to the ministry of oil and paid to operate. (*Id.*, ¶ 143).
>
> The plaintiffs allege that Wyatt was involved in lobbying the U.N. to lift its sanctions and make Iraqi oil available for purchase. The plaintiffs allege that Wyatt also lobbied the U.N. to reduce the OSP to below-market level, enabling Iraq to extract surcharges from Wyatt and other direct buyers while allowing those buyers to make a profit. (*Id.*, ¶¶ 148-52, 210). The plaintiffs allege that Wyatt obtained allocations under the OFP and paid under-the-table surcharges—kickbacks—in exchange for some of those allocations, which involved traveling to Iraq to negotiate with Hussein and others. Wyatt

allegedly made the payments through "front companies" he controlled in Switzerland and Cyprus using two associates who are not named as defendants. (*Id.*, ¶¶ 31-38).

Wyatt was prosecuted for conduct related to the OFP and pleaded guilty to conspiracy to commit wire fraud on October 1, 2007. (*Id.*, ¶ 228). According to the complaint in this case, Wyatt has testified that he caused surcharge payments to be deposited in a bank account in Jordan controlled by Hussein. Wyatt acknowledged knowing that the payments violated the OFP and stated that he had intended to defraud the U.N. (*Id.*). The plaintiffs also allege that Wyatt committed treason by giving Hussein information about American war plans. (*Id.*, ¶ 146).

*Abecassis II,* 785 F. Supp. 2d 614, 619-620 (S.D. Tex. 2011)

Thus, Plaintiffs' allege that Wyatt did not merely purchase oil from Iraq, but rather, he paid illegal kickbacks to Iraq, specifically to circumvent the OFP program and avoid any sort of accountability for the money he paid to Sadaam Hussein.  As this Court already determined, this is not a case of engaging in routine business with Iraq. Plaintiffs' allegations establish that Wyatt "knowingly bypassed the strict rules of the OFP by agreeing to pay the kickbacks described." *Id.* at 649. The Court further noted that:

The purpose of these kickbacks was clearly to provide money to Hussein for unlimited discretionary use rather than the very limited humanitarian uses permitted for money paid to the OFP escrow account. Given the expanded allegations about Hussein's publicly stated dedication to, and involvement in, attacks on Israel, it was foreseeable that if given off-book money, Hussein would use at least some of it to support terrorist attacks in that country intended and likely to target Americans.

*Id.*

In finding that the "amended complaint sufficiently alleges facts supporting ATA claims based on aiding and abetting liability and primary liability under §2339A,  §2339B, §2339C" Judge Rosenthal has already decided that Plaintiffs amended complaint sufficiently alleges facts to meet the "act of international terrorism" requirement under the ATA. *See Weiss v. Nat'l Westminster Bank, PLC*, 2013 U.S. Dist. LEXIS 52628, 38-39 (E.D.N.Y. Mar. 28,

2013)("violations of Sections 2339B and 2339C are considered to be acts of 'international terrorism' under Section 2333(a)"); *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev*., 291 F. 3d 1000, 1015 (7th Cir. 2002) ("Boim I") ("If the plaintiffs could show that [Defendants] violated either section 2339A or section 2339B, that conduct would certainly be sufficient to meet the definition of 'international terrorism' under sections 2333 and 2331.").

In finding that Plaintiffs sufficiently alleged that Wyatt knew that his money was going to a group engaged in terrorist acts targeting Americans, the Court concluded that Wyatt's actions would "appear to be intended" to achieve the purposes of terrorism. The attacks that injured plaintiffs "by [their] nature and context appears to have been intended to intimidate and coerce the Israeli population, to influence the policies of the Israeli government by intimidation and coercion, and to affect the conduct of the Israeli government by mass destruction." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 49 (D.D.C. 2010). Although directly attributable to PIJ and Hamas, "a reasonable person could easily infer similar intent of [defendant] by virtue of its having allegedly provided material support…despite having allegedly been aware of a substantial probability that its support would facilitate the planning, preparation for, and execution of terrorist attacks" aimed at Americans. *Id.* at 49; *Boim III*, 549 F. 3d at 694 (finding that the law only requires a defendant's acts "appear to be intended" which is based on a matter of external appearance rather than subjective intent.").

Based on the foregoing, this Court concluded that Plaintiffs' allegations in the present case "provide a reasonable basis to infer that the alleged kickbacks paid to Hussein were used to support terrorist activities – specifically suicide bombings in Israel – <u>and the defendants knew the kickbacks would be used for that purpose</u>." *Abecassis II*, 785 F. Supp. 2d at 647 (emphasis added); *see also Wultz*, 755 F. Supp. 2d at 48-49 ("At first glance, it does seem remarkable that

BOC—an internationally respected financial institution with branches in this country – would actually intend to facilitate the terroristic murder of American civilians by the PIJ. Unfortunately for BOC, actual subjective intent is not what the ATA is concerned with.").

Although Wyatt cites no authority at all, his argument with regard to the issue of "intent" appears to mimic the court's analysis in *Stansell v. BGP, Inc.*, No. 8:09-cv-2501, 2011 WL 1296881 (M.D. Fla. March 31, 2011).  Assuming Wyatt is relying on *Stansell*, such reliance is misplaced.  *Stansell* was decided by the District Court in Florida on the same date as *Abecassis II* was decided and does not establish binding precedent for this Court. Accordingly, there is no justification for overruling Judge Rosenthal's analysis in *Abecassis II*.

Moreover, the facts of *Stansell* are highly distinguishable from the present case.  In *Stansell* the Court held that the plaintiffs' complaint failed to allege that defendant BGP Inc.'s conduct did not "appear to intend" either to intimidate or coerce a civilian population; influence the policy of a government by intimidation or coercion; or affect the conduct of a government by mass destruction, assassination, or kidnapping.  *Stansell* at **25-26 (citing 18 U.S.C. § 2331(b)(B)).  The Court reasoned that the complaint actually alleged the opposite, stating that defendant BGP had paid money to FARC specifically to prevent FARC from engaging in terrorist activity:

> Plaintiffs simply state, in conclusory fashion, that Defendants actions appear to be intended to achieve any of the enumerated results. Plaintiffs' factual allegations, however, contradict that assertion. Specifically, Plaintiffs allege Defendants made payments to the FARC "in exchange for the FARC's agreement to allow [Defendants] to conduct [their] oil exploration activities without fear of terrorist acts." …. This allegation would not lead an objective observer to conclude Defendants intended to achieve any one of the results listed in § 2331(1)(B).

*Stansell v. BGP, Inc.*, 2011 U.S. Dist. LEXIS 39808 (M.D. Fla. Mar. 31, 2011) (emphasis added).

9

In the present case, there is no allegation that Wyatt was paying illegal kickbacks to Sadaam Hussein in order to avoid or prevent a terrorist act.  Rather, he was paying such illegal kickbacks at a time when it was well-known and reported that Iraq was a state sponsor of terrorism, and that Sadaam Hussein was offering cash payments to the families of Palestinian "martyrs" engaged in suicide bombings.  Therefore, to extent Wyatt's arguments reference or rely on *Stansell*, such reliance is clearly misplaced.

**B.   This Court Has Already Ruled That Plaintiffs' Have Alleged Facts Sufficient To Meet The Requisite Standard for Proximate Causation Under the ATA**

With regard to proximate cause, Wyatt argues, without citation to any authority whatsoever, that Plaintiffs must allege that the suicide bombers themselves "knew or had reason to believe their families would benefit by suicidal action on their part." *See*, Wyatt's Mot. to Dismiss at p. 2. Wyatt then argues that without such allegations, Plaintiffs have failed to show that "the injuries or death of Plaintiffs would not have happened <u>but for</u> the payment to the government of Iraq of illegal payments by the Defendants herein."  *Id.* (emphasis added). Wyatt's argument is without merit for two reasons.

First, Wyatt's argument again ignores the allegations of the First Amended Complaint. Plaintiffs have extensively alleged facts demonstrating the well-documented and publicized history of Saddam Hussein's funding of suicide bombers and the offering of substantial cash payments to their families following the completion of their suicide missions.  *See*, First Am. Complt. at ¶¶ 91- 123.  The Israeli government, United States government officials and even captured terrorists themselves have confirmed that Saddam Hussein's contractual offer to terrorists encouraged suicide bomb attacks.  *Id.* at ¶ 91.  Moreover, with regard to the attacks against Plaintiffs specifically, the families of those suicide bombers were compensated by Sadaam Hussein.  *Id.* at ¶94.  These allegations are more than sufficient to demonstrate that the

individual bombers "knew or had reasons to believe their families would benefit by suicidal action on their part."

Moreover, Wyatt's argument that Plaintiffs must show that the bombings would not have occurred "but for" his illegal kickback payments to Sadaam Hussein applies a causation standard already rejected by this Court. Judge Rosenthal began her discussion of causation by noting that while "courts agree that 'but for' causation is not required…courts disagree on what causal standard must be alleged and proven" under the ATA. *Abecassis I*, 704 F. Supp. 2d at 665 (emphasis added). After considering causation in light of the ATA, Judge Rosenthal concluded that regardless of whether plaintiff is advancing under a direct or secondary liability theory, "foreseeability is the cornerstone of proximate causation, and in tort law, a defendant will be held liable only for those injuries that might have reasonably been anticipated as a natural consequence of the defendant's actions." *Id*; *quoting Boim I*, 291 F. 3d at 1012. Judge Rosenthal properly ruled that the "amended complaint also contains factual allegations that, if proven, would show proximate cause." *Abecassis II*, 785 F. Supp. 2d at 649.

Wyatt's argument that Plaintiffs' allegations are "too attenuated" to hold him liable under the ATA has been briefed *ad nauseum* and there is nothing within the Second Circuit's opinion in *Rothstein v. UBS AG,* 708 F. 3d 82 (2d Cir. 2013) that was not already considered by Judge Rosenthal in denying Defendants' motions to dismiss under Rule 12(b)(6). Judge Rosenthal already detailed the appropriate standard for proximate causation which is not materially different from the standard outlined in *Rothstein*. *See Strauss v. Credit Lyonnais, S.A*., 2013 U.S. Dist. LEXIS 28451, 51-52 (E.D.N.Y. Feb. 28, 2013)(denying summary judgment finding that under the ATA "proximate cause requires a showing that Defendant's actions were 'a substantial factor in the sequence of responsible causation,' and that the injury was 'reasonably foreseeable

11

or anticipated  as a natural consequence" and "a reasonable juror could conclude that the sizable amount of money sent from Defendant to Hamas front organizations was a substantial reason that Hamas was able to perpetrate the terrorist attack at issue.")(decided after *Rothstein*).

The Plaintiffs in *Rothstein* argued that the "by reason of" language "chosen by under the ATA was intended to permit recovery on a showing of less than proximate cause, as the term is ordinarily used." *Rothstein*, 708 F. 3d at 95. The court further rejected plaintiffs' argument that causation could be presumed or that the burden shifted to defendant to prove that its wrongful conduct was not the cause of plaintiffs' harm. *Id.* at 94-95. The *Rothstein* court, however, found that based on the facts before it, plaintiffs failed to allege proximate cause. *Id.* at 97. Essentially, the court in *Rothstein* found that plaintiffs' complaint contained no factual allegations to establish that it would be foreseeable that plaintiffs' injuries would have been caused by providing routine banking services to Iran.

In denying Defendants' Motions to Dismiss under Rule 12(b)(6), this Court had the benefit of the District Court's decision and reasoning in *Rothstein v. UBS AG*, 722 F. Supp. 2d 511 (S.D.N.Y. 2010) and *Rothstein v. UBS AG*, 647 F. Supp. 2d 292 (S.D.N.Y., 2009).[3] *Abecassis II*, 785 F. Supp. 2d at 641-643. In fact, Judge Rosenthal cited *Rothstein* in recognizing that "there are differences between paying money to a state sponsor of terrorism and paying money to a foreign terrorist organization." *Abecassis II*, 785 F. Supp. 2d at 649; *quoting Rothstein v. UBS AG*, 722 F. Supp. 2d 511. However, as previously mentioned, Judge Rosenthal properly differentiated Plaintiffs' allegations in this case from the factual allegations alleged in *Rothstein*. Specifically, this Court held:

---

[3] Defendant asserts that the Court denied Defendants' motions under Rule 12(b)(6) without the benefit of *Rothstein*. Although the Second Circuit had not yet issued its opinion, the appellate court adopted and applied the District Court's reasoning related to proximate causation.

> Unlike *Rothstein*, in which the defendants provided funds to a state sponsoring terrorism in violation of applicable regulations and the plaintiffs failed to allege a basis to infer that the funds were spent to support terrorists, the plaintiffs allegations in the present case provide a reasonable basis to infer that the alleged kickbacks paid to Hussein were used to support terrorist activities – specifically suicide bombings in Israel – and the defendants knew the kickbacks would be used for that purpose.

*Abecassis II*, 785 F. Supp. 2d at 647.

Wyatt, however, attempts to stretch the *Rothstein* opinion beyond the limits of foreseeability. Wyatt states that in order to establish proximate causation, Plaintiffs *must* ultimately prove all of the following:

- Wyatt participated in the terrorist attacks that injured Plaintiffs;
- The money paid by Wyatt  in kickbacks was given to Hamas or other terrorist organizations; and
- But for Wyatt's transfer of money to Hussein, Iraq would not have funded the attacks that injured plaintiffs.

Def's Mot. at p. 4.

A fair reading of the *Rothstein* opinion, however, does not establish that Plaintiffs *must* allege these factors to establish causation. Rather, the court in *Rothstein* highlights these elements as possible allegations that would have met Plaintiffs burden under their analysis. In fact, had the Rothstein plaintiffs supported their statement that "[Defendant] knew full well that the cash dollars it was providing to a state-sponsor of terrorism such as Iran would be used to cause and facilitate terrorist attacks by Iranian-sponsored terrorist organizations such as Hamas, Hizbollah and PIJ" with factual, nonconclusory allegations they would have presumably met their burden under the Second Circuit's causation standard. *Rothstein*, 708 F. 3d at 97.  *See Strauss v. Credit Lyonnaise*, 2013 U.S. Dist. LEXIS 28541 (E.D.N.Y. Feb. 28, 2013)(denying summary judgment finding that "plaintiffs who bring an ATA action are not required to trace specific dollars to specific attacks to satisfy the proximate cause standard.").

In denying Defendants Motion for failure to state a claim, this Court properly recognized that this is not a case of engaging in routine business with Iraq, as Wyatt would have this Court believe.  Plaintiffs' allegations establish that Wyatt "knowingly bypassed the strict rules of the OFP by agreeing to pay the kickbacks described." *Id.* at 649. The Court further noted that:

> The purpose of these kickbacks was clearly to provide money to Hussein for unlimited discretionary use rather than the very limited humanitarian uses permitted for money paid to the OFP escrow account. Given the expanded allegations about Hussein's publicly stated dedication to, and involvement in, attacks on Israel, it was foreseeable that if given off-book money, Hussein would use at least some of it to support terrorist attacks in that country intended and likely to target Americans.

*Id.*

The *Rothstein* opinion is not binding on this Court and does not confirm any new standard of causation under the ATA. The proper standard remains whether it was foreseeable that Hussein would use kickbacks from the OFP to support Palestinian terrorist attacks. *Abecassis II*, 285 F. Supp. 2d at 649. This Court has already ruled that Plaintiffs' amended complaint contains sufficient allegations to establish proximate causation. *Id.*

## **CONCLUSION**

As this Court has previously noted, Plaintiffs have plead sufficient allegations that Wyatt knowingly paid kickbacks to Saddam Hussein despite an understanding that these funds would be used to support terrorist activities. *Abecassis II*, 785 F. Supp. 2d at 646-647. Wyatt knowingly bypassed the strict rules of the OFP and paid kickbacks to Hussein "for unlimited discretionary use". *Abecassis II*, 785 F. Supp. at 649.

Judge Rosenthal has previously considered each of the arguments raised in Wyatt's Motion and concluded that Plaintiffs' have sufficiently alleged a factual basis to pursue their claims against Wyatt. Regardless of whether the Court considers this Motion under Rule 12(c) or

14

Rule 54(b), Wyatt has failed to establish that there are "no set of facts could be adduced to support the plaintiff's claim for relief." Accordingly, the reasoning of Judge Rosenthal should be affirmed and Wyatt's motion should be denied.

Respectfully submitted,


<u>*/s/ Raul Suazo*</u>
Raul Suazo
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas 77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101

<u>/s/ Michael J. Miller</u>
Michael J. Miller
David J. Dickens
THE MILLER FIRM, LLC
The Sherman Building
108 Railroad Avenue
Orange, Virginia 22960

<u>/s/ Gavriel Mairone</u>
Gavriel Mairone
Bena Ochs
MANN & MAIRONE
Rehov Ha-Mered, 25, Suite 3000
Tel Aviv 61501, Israel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of May 2013, a true and correct copy of the foregoing Plaintiffs' Opposition to Defendant Oscar S. Wyatt, Jr.'s Motion for Judgment on the Pleadings was filed electronically with the Clerk of Court using the CM/ECF system which will send a notification of such filing on all counsel of record.


*/s/ Raul Suazo*
Raul Suazo