UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ODELIA ABECASSIS, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-3884 |
| | § | |
| OSCAR S. WYATT, JR., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are 33 motions to dismiss filed by various third party defendants in response to Bayoil (USA), Inc., David Chalmers, Jr., Oscar Wyatt, Jr., and Nucoastal Corporation's (collectively, "Third Party Plaintiffs") third party complaint. After considering the motions, responses, replies, and applicable law, the court is of the opinion that the motions should be granted.[1]

**I. BACKGROUND**

Prior to the filing of the third party complaint, plaintiffs, who were victims of three separate terrorist attacks in Israel in 2001 and 2002, filed the original action in this case alleging violations of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333.[2] Dkt. 121 at 5-7. Plaintiffs assert that

---

[1] The court's ruling disposes of the following motions by docket number: 210, 262, 331, 332, 333, 335, 336, 343, 344, 346, 347, 349, 351, 352, 354, 358, 360, 362, 365, 366, 367, 375, 380, 383, 387, 389, 390, 391, 410, 466, 468, 471, and 475. Motions pending under docket nos. 216 and 394 are also denied as moot.

[2] In their Original Complaint (Dkt. 3), plaintiffs also asserted claims under the Alien Tort Statute, 28 U.S.C. § 1350, and the Torture Victim Protection Act, 28 U.S.C. § 1350. These claims were dismissed for lack of Article III standing and failure to state a claim. Dkt. 118; *Abecassis v. Wyatt*, 704 F. Supp. 2d 623 (S.D. Tex. 2010). The previously presiding court also dismissed certain of plaintiffs' claims against certain defendants, leaving only the ATA claims remaining. Dkt. 150; *Abecassis v. Wyatt*, 785 F. Supp. 2d 614 (S.D. Tex. 2011).

defendants/Third Party Plaintiffs made illegal payments to bank accounts controlled by the Saddam Hussein regime for the purchase of oil in violation of the rules established regulating the Oil for Food Program. *Id.* at 63-66. Plaintiffs further allege that the defendants/Third Party Plaintiffs knew these funds were being used by the Hussein regime to support terrorist activities by remunerating family members of the terrorists who carried out the three attacks in Israel. *Id.* at 66-68.

On October 30, 2012, Third Party Plaintiffs filed their third party complaint against 62 companies and individuals based on their purchase of oil from Iraq during the relevant time period. Dkt. 186. Third Party Plaintiffs asserted a single claim for contribution against third party defendants in the event that Third Party Plaintiffs are found liable to plaintiffs for ATA violations. *Id.* at 9-10. ("[I]f [defendants] are found liable for violating the ATA as Plaintiffs allege, then Third Party Plaintiffs allege any individual or businesses who paid money to Hussein as part of doing business with Iraq during the pendency of that Regime would also be liable to Plaintiffs under the ATA."). Essentially, Third Party Plaintiffs maintain that third party defendants engaged in the same conduct as they did, and therefore, should be liable to plaintiffs as well. *Id.*

## II. LEGAL STANDARD

Rule 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In considering 12(b)(6) motions, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings when determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). In order to survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is

plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570, 127 S. Ct. 1955 (2007). A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937 (2009). Though a complaint does not need detailed factual allegations, the "allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

### III. ANALYSIS

#### A. Claim for Contribution

Third party defendants bring their motions to dismiss on two primary grounds: (1) the sole claim in the third party complaint for contribution under the ATA is not a legally cognizable claim; and (2) the third party complaint does not state sufficient facts to support a claim for contribution under the ATA, if such claim exists. The court need only address the first issue in order to resolve the pending motions.

The United States Supreme Court enunciated the test which courts must apply in order to determine if an implied cause of action exists absent explicit legislative authorization. *Nw. Airlines, Inc. v. Transport Workers Union of Am., AFL-CIO*, 451 U.S. 77, 90-91, 101 S. Ct. 1571 (1981); *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638, 101 S. Ct. 2061 (1981). Specifically, in the right to contribution context, there are two ways by which such a right may arise under federal statutes. *Id.* First, Congress may affirmatively create the claim, either expressly or by clear implication. *Id.* Second, courts may have the power through federal common law to fashion a claim for contribution. *Id.*

There is no dispute that the ATA does not contain an express right of action for contribution. Because nothing in the statute creates a claim for contribution, the court must consider whether such claim exists by implication. *Id.* at 639. In order to determine if a claim for contribution is clearly implicated by Congress, the court must look at the intent of Congress. *Nw. Airlines*, 451 U.S. at 91. Such intent may be discerned by "looking to the legislative history and other factors: *e.g.*, the identity of the class for whose benefit the statute was enacted, the overall legislative scheme, and the traditional role of the states in providing relief." *Id.*

A review of the language of the ATA and its legislative history reveals no clear implication that Congress intended for a right of contribution to be available to those who violate the statute. The only legislative history cited by Third Party Plaintiffs includes statements made by a former Department of Justice attorney, a former general counsel for the U.S. Information Agency and U.S. Office of Personnel Management, and a witness from the Foreign Policy Institute. Dkt. 232 at 8; Dkt. 416 at 8. While these witnesses advocate for the incorporation of general tort law principles into the ATA, it strains credulity to conclude from such isolated statements that Congress intended to imply a right of contribution. Third Party Plaintiffs do not cite to testimony from any actual members of Congress.

It is equally clear that the comprehensive remedial scheme enacted for victims under the ATA was not adopted for the benefit of those who violate the statute. On the contrary, Third Party Plaintiffs are "members of the class whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class." *Tex. Indus.*, 451 U.S. at 639 (quoting *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 37, 97 S. Ct. 926 (1977)); *Litle v. Arab Bank, PLC*, 611 F. Supp. 2d 233, 242 (E.D.N.Y. 2009) ("[I]t is clear that the ATA was enacted to benefit the victims of terrorism, not

terrorists or those who aid and abet them.") Not only are the Third Party Plaintiffs not the intended beneficiaries of the statute, but the remedial scheme enacted demonstrates Congress' consideration of these issues. The ATA provides for criminal and civil penalties, including treble damages. *See* 18 U.S.C. §§ 2332, 2333. "The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." *Litle*, 611 F. Supp. 2d at 242. Thus, neither the legislative history nor the overall legislative scheme support a finding of a right to contribution under the ATA by implication.

Third Party Plaintiffs argue that the claim for contribution would advance the purpose of the statute by requiring all wrongdoers to share in the liability, thereby creating greater deterrence and promoting greater enforcement of violations of the ATA. While this may be true, the *Litle* court noted the contrary position: "implying a right of contribution would not necessarily further the statutory purpose of compensating victims of terrorism. Plaintiffs, should they prevail, are entitled to full recovery . . ., and adding a right of contribution would add to the expense of their litigation." *Id.* Strong opposing policy positions of this type were advanced in *Texas Industries*; however, the Supreme Court acknowledged that the conflicting policy positions demonstrates that this is a matter of consideration for Congress and "inappropriate[ ] for judicial resolution." *Tex. Indus.*, 451 U.S. at 646.

The absence of any reference to contribution in the legislative history or an discernable intent of Congress to benefit those who violate the statute makes the examination of the other factors unnecessary. *Id.* at 639. Therefore, the court finds that Congress did not clearly intend to create a right of contribution under the ATA.

Besides express creation or by implication, the only other source of a right to contribution must arise from federal common law. *Id.* at 640. While there is no general federal common law, Congress has recognized in a "few and restricted" instances the need to formulate federal common law. *Id.*; *In re Walker*, 51 F.3d 562, 566 (5th Cir. 1995). These instances fall into essentially two categories: (1) those in which a federal rule of decision is necessary to protect uniquely federal interests; and (2) those in which Congress has given the courts the power to develop substantive law. *Tex. Indus.*, 451 U.S. at 640 (internal quotations omitted).

The Supreme Court has limited the areas involving uniquely federal interests to those "concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Id.* at 641. Third Party Plaintiffs argue that because terrorism implicates international relations and commerce, then the courts are at liberty to protect these unique federal interests by devising a federal common law right to contribution. While there will always be a federal interest in applying and enforcing federal statutes, "contribution among [ ] wrongdoers does not involve the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority." *Id.* at 642. The Supreme Court has held that, outside of the admiralty context, a treble damages suit remains a private action involving the rights and obligations of private parties and does not constitute a unique federal interest warranting the formulation of federal common law. *Id.*

Additionally, Congress may vest jurisdiction in the federal courts to fashion substantive rules of law. *Id.* However, the authority of the courts to fashion new or additional remedies is clearly circumscribed when Congress has enacted an extensive remedial scheme designed to enforce the

6

statutory provisions at issue. *Id.* at 643-44 (noting a "sharp distinction between the lawmaking powers conferred [on the federal courts] in defining violations and the ability to fashion the relief available to parties claiming injury"). "The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Nw. Airlines*, 451 U.S. at 97. As discussed previously, Congress enacted specific remedies under the ATA for victims for terrorism, and for that reason, the court declines Third Party Plaintiffs' invitation to create additional remedies not clearly authorized by Congress. *See id.* at 93-94 ("The comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies."); *Walker*, 51 F.3d at 567 (refusing to "wantonly use our power to fashion common-law remedies").

Finally, the Eastern District of New York is the only court to directly consider the existence of a right to contribution under the ATA. *Litle v. Arab Bank, PLC*, 611 F. Supp. 2d 233 (E.D.N.Y. 2009). The *Litle* court thoroughly analyzed whether an implied right of contribution existed under the ATA and determined that it did not. *Id.* at 248-49. This court agrees with the analysis in *Litle*, and does not find Third Party Plaintiffs' attempt to distinguish the *Litle* case persuasive. Third Party Plaintiffs argue the *Litle* case is distinguishable from the instant matter because the third party complaint in *Litle* alleged a claim for contribution based on conduct that was dissimilar to the conduct of the original defendant. While the *Litle* court noted this difference, it did so in regard to the sufficiency of the allegations in the third party complaint. *Id.* at 239-40. However, the court did not "reach the issue of whether Arab Bank's allegations would be sufficient to state a claim under the ATA or ATS because, simply put, Arab Bank has no right of contribution under either statute." *Id.* at 240. Given the comprehensive remedial provisions in the ATA and the lack of reference to

contribution in the statute or its legislative history, the court will not alter or supplement the remedies legislated by Congress and declines to formulate a right of contribution under federal common law.

### B. Leave to Amend

Third Party Plaintiffs also requested leave to amend their complaint. Dkt. 416 at 10. Ordinarily, Rule 15(a)(2) dictates that the court should freely give leave to amend, but it may refuse to do so if it is "clear that the defects are incurable." *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Here, Third Party Plaintiffs have not shown how they could amend their complaint in any manner that would revive their claim for contribution. *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir.2003) ("A bare request in an opposition to a motion to dismiss[,] without any indication of the particular grounds on which the amendment is sought[,] . . . does not constitute a motion within the contemplation of Rule 15(a)." (quotations omitted)). Their claim fails as a matter of law, not due to a lack of sufficiency or specificity. Therefore, the defects to the third party complaint are incurable, and amendment would be futile.

### IV.  CONCLUSION

The court finds that the sole claim for contribution under the ATA does not state a legally cognizable claim, and therefore, third party defendants' motions to dismiss are GRANTED. Third Party Plaintiffs' claims and the Third Party Complaint are DISMISSED WITH PREJUDICE.[3]

Signed at Houston, Texas on February 12, 2014.

Gray H. Miller
United States District Judge

---

[3] The court's holding that the Third Party Plaintiffs' claim fails as a matter of law applies equally to all third party defendants, including those that remain unserved or defaulting. Because all of the third party defendants are similarly situated to the moving third party defendants, the court may also dismiss Third Party Plaintiffs' claim against the remaining defendants. *See Ducksworth v. City of Laurel*, 2012 WL 1345356, at *2 n.7 (S.D. Miss. Apr. 5, 2012) (collecting cases).