# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ODELIA ABECASSIS, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-3884 |
| | § | |
| OSCAR S. WYATT, JR., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendants, El Paso Corporation's motion for judgment on the pleadings (Dkt. 235), Oscar Wyatt, Jr.'s motion for judgment on the pleadings (Dkt. 237), and Bayoil (USA), Inc. and David Chalmers, Jr.'s motion for judgment on the pleadings (Dkt. 462). Despite the court's previous ruling on the defendants' Rule 12(b)(6) motions to dismiss, defendants ask this court to reconsider the sufficiency of the allegations in plaintiffs' first amended complaint in light of subsequent rulings in other circuits on the legal standards governing the Anti-Terrorism Act. After considering the motions, responses, reply, and applicable law, the court is of the opinion that the motions should be DENIED in part and GRANTED in part.

## I. BACKGROUND

Plaintiffs alleged violations of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331, *et seq.*, against defendants for making allegedly illegal payments outside of the U.N.-sanctioned Oil for Food Program that were funneled directly to Saddam Hussein's regime in order for Hussein to fund terrorist activity. Dkt. 121. Plaintiffs are United States citizens who were victims or family members of victims of three terrorist attacks that occurred in Israel on November 1, 2001, December 1, 2001, and March 9, 2002. *Id.* at 27. Plaintiffs' first amended complaint specifically alleged that

defendants violated the ATA by providing material support to terrorist organizations and by engaging in unlawful financial transactions with Iraq during Hussein's rule.  *Id.* at 63, 66.  Prior to being transferred to this court, the Honorable Lee Rosenthal analyzed the claims presented in plaintiffs' first amended complaint under Rule 12(b)(6).  *Abecassis v. Wyatt*, 785 F. Supp. 2d 614 (S.D. Tex. March 31, 2011).  Defendants argued that plaintiffs failed to allege sufficient facts to establish that defendants had knowledge that the kickbacks paid to Hussein's regime were used to fund terrorism targeting Americans and that a causal connection existed between the defendants' conduct and the terrorist attacks which injured plaintiffs. *Id.* at 618.[1]  The court denied defendants' motions in part, but did dismiss the conspiracy claims and the claims under 18 U.S.C. § 2332(d) against defendants uninvolved in the current motions.  *Id.*

Despite the exhaustive analysis performed by Judge Rosenthal in two previous orders on the proper causation and scienter standards applicable to plaintiffs' ATA claims, defendants request a renewed examination of these issues in light of subsequent rulings from the Second Circuit and other lower courts.  Plaintiffs object to defendants' motions for judgment on the pleadings on the grounds that they impermissibly request reconsideration of the court's previous ruling and violate the law of the case doctrine.

Before considering the merits of defendants' motions, the court will address plaintiffs' preliminary argument that these motions should not be considered.  The court finds that it does have

---

[1]  The court also previously considered these issues in its order addressing defendants' motions to dismiss plaintiffs' original complaint.  The court found that sufficient non-conclusory facts had not been alleged in plaintiffs' complaint to state an ATA claim as to the elements of knowledge and causation.  Dkt. 118 at 69, *Abecassis v. Wyatt*, 704 F. Supp. 2d 623 (S.D. Tex. 2010).  The court granted plaintiffs leave to amend their complaint, which led to the court's analysis of these issues in relation to the first amended complaint.  Since that order, this case was transferred to this court.

the authority to reconsider or reverse prior rulings in this case in response to a motion for judgment on the pleadings.  First, under the rules of procedure, a Rule 12(c) motion is the proper vehicle for challenging the sufficiency of plaintiffs' claims at this stage of the case.  FED. R. CIV. P. 12(h)(2)(B); *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007); *Stoffels v. SBC Communications, Inc.*, 430 F. Supp. 2d 642, 647 (W.D. Tex. 2006).  Generally, a party is not permitted to file successive motions under Rule 12 when a defense or objection was previously available to a party when it filed its original motion.  *Id.* at 12(g)(2).  However, a party is permitted to file successive motions for failure to state a claim pursuant to a Rule 12(c) motion for judgment on the pleadings.  *Id.* at 12(h)(2)(B).  Thus, defendants have properly moved for a review of plaintiffs' claims under Rule 12(c).

Additionally, the court is cognizant of the principles underlying the law of the case doctrine, but such doctrine does not bar this court from reconsidering previous rulings in the case.  Under the law of the case doctrine, courts will show deference to decisions already made in the case they are presiding over.  *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010).  The law of the case doctrine, however, "does not operate to prevent a district court from reconsidering prior rulings." *Id.*  Further, when a successor judge replaces another judge, "[t]he successor judge has the same discretion as the first judge to reconsider [the first judge's] order." *Abshire v. Seacoast Products, Inc.*, 668 F.2d 832, 837-38 (5th Cir. 1982).  A successor judge may overrule a previous judge's order as long as the successor judge has a "reason [he or she] deems sufficient." *Zarnow*, 614 F.3d at 171.

While the court may properly consider defendants' motions, however, the court agrees with plaintiffs' position that these issues have been extensively addressed and considered by Judge

Rosenthal.  "Much of the dispute in the initial round of motions to dismiss was over the proper causation and scienter standards applicable to an ATA claim."  *Abecassis*, 785 F. Supp. 2d at 628.  These are the same issues defendants ask this court to reconsider in light of rulings outside of this circuit.  The court declines defendants' invitation to overturn the court's previous ruling, with the exception of the aiding and abetting claims lodged by plaintiffs.  The subsequent rulings do not in any material respect alter the court's analysis or previous ruling, and the primary issues reurged in defendants' motions for judgment on the pleadings were fully briefed, addressed, and resolved by the court.

## II. LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam).  The standard for evaluating a Rule 12(c) motion is the same as the standard for evaluating a Rule 12(b)(6) motion for failure to state a claim.  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

The court does not look beyond the face of the pleadings when determining whether the plaintiff has stated a claim under Rule 12(b)(6).  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  In order to survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Aschroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570, 127 S. Ct. 1955 (2007)).

### III. ANALYSIS

**A.     Relevant Statutes**

The ATA establishes a right of action for treble damages to "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs." 18 U.S.C. § 2333(a).  "International terrorism" is defined in the statute as "activities that":

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
> (B) appear to be intended–
>      (i) to intimidate or coerce a civilian population;
>      (ii) to influence the policy of a government by intimidation or coercion; or
>      (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>
> (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

*Id.* at § 2331(1).

Plaintiffs' first amended complaint invokes five underlying criminal statutes under Subsection A to show acts of international terrorism were committed.  Plaintiffs rely on criminal statutes within the ATA, which prohibit providing material support and conducting unlawful financial transactions with known terrorist organizations.  Specifically, plaintiffs allege a claim under Section 2339A, which makes it a federal crime to "provide [ ] material support or resources[2] . . .

---

[2]  Under both § 2339A and § 2339B, "material support or resources" include "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives,

knowing or intending that they are to be used in preparation for, or in carrying out, a violation of [various federal criminal statutes]" or to attempt to or conspire to do such an act. *Id.* at § 2339A(a). One of the criminal statutes listed in Section 2339A is 18 U.S.C. § 2332, which criminalizes killing, attempting to kill, conspiring to kill, or intentionally causing serious bodily injury to a United States national outside the United States.      Second, plaintiffs allege defendants violated Section 2339B, which states that "[w]hoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so" is guilty of a crime.  A "terrorist organization" is a designated Foreign Terrorist Organization under 8 U.S.C. § 1189.  *Id.* at § 2339B(g).  Hamas and PIJ were designated as Foreign Terrorist Organizations during the time that the attacks occurred in this case.  A 2004 amendment to this statute clarified that "[t]o violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989)."  *Id.* at § 2339B.  While this amendment was not in effect during the occurrences at issue in this case, it does provide some guidance on the proper legal standard applicable to Section 2339B.      The fourth relevant criminal statute, 18 U.S.C. § 2339C, punishes:

> Whoever, [subject to jurisdictional requirements in] subsection (b), by any means, directly or indirectly, unlawfully and willfully provides or collects funds with the intention that such funds be used, or with the knowledge that such funds are to be used, in full or in part, in order to carry out–

_____

personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials." 18 U.S.C. §§ 2339A(b)(1), 2339B(g)(4).

(A) an act which constitutes an offense within the scope of a treaty specified in subsection (e)(7), as implemented by the United States, or

(B) any other act intended to cause death or serious bodily injury to a civilian, or to any other person not taking an active part in the hostilities in a situation of armed conflict, when the purpose of such act, by its nature or context, is to intimidate a population, or to compel a government or an international organization to do or to abstain from doing any act[.]

*Id.* at § 2339C(a)(1). Conspiracy and attempt are also punishable. *Id.* at § 2339C(a)(2). There is no requirement that the funds provided or collected "were actually used to carry out" an act of international terrorism. *Id.* at § 2339C(a)(3).

Finally, plaintiffs also rely on 18 U.S.C. § 2332(d), which prevents a person in the United States from engaging in a financial transaction with the government of a country that he knows or reasonably should know to be designated under section 6(j) of the Export Administration Act of 1979 as a country supporting international terrorism. Iraq had been designated as a state sponsor of terrorism during the time period at issue in this case.

### B. Previous Ruling

Plaintiffs allege that defendants bypassed the sanctioned regulations of the Oil for Food Program ("OFP") in order to send Iraq, under the rule of Saddam Hussein, illegal kickbacks. Dkt. 121 at 39, 47. Plaintiffs further assert that defendants knew or should have known that Hussein was using this money for the purpose of supporting terrorism. *Id.* The court previously dismissed plaintiffs' original ATA claims and allowed plaintiffs leave to amend their complaint. Dkt. 118. In its ruling on defendants' motions to dismiss under Rule 12(b)(6), the court examined the sufficiency of the plaintiffs' factual allegations in their first amended complaint based on the

applicable scienter and causation standards of the ATA. *Abecassis v. Wyatt*, 785 F. Supp. 2d 614 (S.D. Tex. 2011).

The court examined, in detail, the five underlying criminal statutes made the basis of plaintiffs' civil claims of liability. The court recognized that knowledge is a required element in each of the statutes. *Id.* at 645-46. Specifically, the court ruled that for plaintiffs to prove primary liability under Sections 2339A or 2339C, plaintiffs must plead facts which, if proven, would show defendants knew or intended that their money was going to a group engaged in terrorist acts or was being used to support terrorist acts. *Id.* at 645. Further, plaintiffs were also required to show that defendants knew or intended that the terrorism or terrorist group it was supporting targeted Americans. *Id.*

As to the alleged violation of Section 2339B, the court required that, at a minimum, the plaintiffs "must still allege that each defendant knew its money was going 'to' a particular entity if the basis of liability is that the entity falls in a particular category, such as foreign terrorist organization." *Id.* at 646. The court noted that even though the 2004 amendment to Section 2339B, which was interpreted in the recent decision of *Holder v. Humanitarian Law Project*, 561 U.S. 1, 130 S. Ct. 2705 (2010), did not apply, the *Humanitarian Law Project* holding made clear that a lower showing of knowledge was required to establish direct liability under 2339B. *Id.* The defendant need not know that its money will reach any particular aspect of the terrorist group's activities. *Id.* The court found the expanded allegations in plaintiffs' first amended complaint supported an inference that defendants knew that money paid in kickbacks would be used to support terrorist activity in Israel or "at a minimum, the defendants willfully blinded themselves to knowledge that their money would be used to fund terrorist attacks on Israel." *Id.* at 647-48.

Consistent with the majority of other courts, the court also determined that plaintiffs must demonstrate that their injuries were proximately caused by the conduct of the defendants. *Id.* at 646. The court found that "a defendant will be held liable only for those injuries that might have reasonably been anticipated as a natural consequence of the defendant's actions." *Id.* The facts alleged by plaintiffs were "sufficient to support an inference that it was foreseeable that Hussein would use the kickbacks to support Palestinian terrorist attacks" given the off-the-book nature of the kickbacks and Hussein's known support and involvement in attacks on Israel.[3] *Id.* at 649.

### C. *Rothstein* **and subsequent cases**

Defendants seek a reexamination of the sufficiency of the claims in plaintiffs' first amended complaint in light of several cases decided after the court's ruling on defendants' previous Rule 12(b)(6) motions. Initially, the court notes that the cases cited by defendants are not binding precedent in this circuit. More importantly, though, the legal standards adopted and applied in these cases are not materially different than those applied by the court in its prior ruling. Certainly, there have not been any significant alterations in the law that would cause this court to reverse the standing ruling on the sufficiency of the allegations in plaintiffs' first amended complaint.

Defendants argue that the causation requirement for ATA claims has somehow been heightened by the ruling in *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013). *Rothstein* involved civil ATA claims by direct and indirect victims of terrorist attacks in Israel. *Id.* at 85. Plaintiffs alleged that UBS was liable for aiding and abetting international terrorism because it furnished U.S.

---

[3]   The court also found that the knowledge and causation facts alleged by plaintiffs under the 18 U.S.C. § 2332(d) criminal provision were sufficiently pled. None of the arguments or cases presented by defendants directly challenges the standards under this statute. Thus, the court will not disturb the standing ruling relating to Section 2332(d).

currency to Iran, a listed state sponsor of terrorism, which in turn funded Hamas terrorist activity. *Id.* at 84-85, 88.  Plaintiffs argued that a standard lower than proximate cause applied to their ATA claims.  *Id.* at 94.  The court rejected this argument because the "by reason of" language enacted by Congress in the ATA is well understood to require proof of proximate causation.  *Id.* at 95.

The court affirmed the dismissal of plaintiffs' claims  because the complaint failed to allege sufficient non-conclusory facts to support a showing that UBS's actions proximately caused plaintiffs' injuries.  *Id.* at 94.  Specifically, the court found the complaint lacked any allegations that UBS was a participant in the terrorist attacks involving plaintiffs, that UBS provided money directly to Hizbollah or Hamas, that the U.S. currency UBS transferred to Iran was given to Hizbollah or Hamas, or that if UBS had not transferred U.S. currency to Iran, Iran would not have funded the attacks in which plaintiffs were injured.  *Id.* at 97.  Thus, the court reasoned the complaint failed to allege facts that, if proven, would plausibly show that the money transferred to Iran was in fact sent to Hizbollah or Hamas or that Iran would have been unable to fund the attacks by Hizbollah and Hamas without the cash provided by UBS.  *Id.*

*Rothstein* did not announce a new causation standard under the ATA.  It applied the same standard used in this case to different facts.  While the facts alleged in the complaint in *Rothstein* may not have adequately pled proximate cause, the facts alleged in the instant case are sufficient and meet the standard set out in *Rothstein*.  The court in this case specifically compared the instant facts with those alleged in *Rothstein* and found that, here, plaintiffs have provided a reasonable basis to infer that the alleged kickbacks paid to directly to the Hussein regime were used to support suicide bombings in Israel and the defendants knew these illicit payments would be used for terrorism. *Abecassis*, 785 F. Supp. 2d at 647.  Unlike the plaintiffs in *Rothstein*, plaintiffs set forth facts that,

if proven, would show that the illegal kickbacks paid to Hussein were given to the bombers or their family members and that Hussein would have been unable to make these payments to terrorists without the off-the-books money paid by defendants.  Dkt. 121 at 21, 27, 34-36, 64.

Certain district courts have also made rulings with respect to the ATA since the court's previous ruling.  The Eastern District of New York addressed the applicable knowledge standard in the context of motions for summary judgment for causes of action based on the underlying criminal provisions in Sections 2339B and 2339C.  *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414 (E.D.N.Y. 2013).  In *Strauss*, the court held that plaintiffs were not required to prove that the defendant intended specifically to support terrorist acts to be held liable under the ATA.  *Id.* at 427. But rather, plaintiffs must show that the defendant knew or was deliberately indifferent to the fact that its conduct served to financially support terrorist organizations.  *Id.* at 428-29.  *Stansell v. BGP, Inc.*, 2011 WL 1296881 (M.D. Fla. 2011) also addressed the applicable knowledge standard for an ATA Section 2339B claim.  Relying on *Humanitarian Law Project*, the court recognized that Section 2339B does not have a specific intent requirement and that the only knowledge required was the knowledge that the organization was a terrorist organization or engaged in terrorist activities. *Id.* at *7.  Like this court's previous ruling, both courts also found that causation between the defendants' conduct and the plaintiffs' injuries had to be proximate.  *Id.* at *9; *Strauss*, 925 F. Supp. 2d at 432.

While the *Stansell* court found sufficient facts alleging scienter and causation for an ATA claim, it dismissed plaintiffs' complaint on the basis of Subsection B in the definition of "international terrorism" under the ATA.  The court found plaintiffs failed to allege adequate non-conclusory facts that the defendants' actions also "appear[ed] to be intended" to intimidate or coerce

11

a civilian population, influence the policy of a government by intimidation or coercion, or affect the conduct of a government by mass destruction, assassination or kidnaping. *Stansell*, 2011 WL 1296881, at *9 (citing 18 U.S.C. § 2331(1)(B)).

Defendants contend that the *Stansell* holding warrants dismissal in this case because plaintiffs' allegations do not sufficiently allege an act of international terrorism. The court has not addressed this particular argument. In order for an act to constitute "international terrorism," such activity must "appear to be intended" to intimidate or coerce a civilian population, influence the policy of a government by intimidation or coercion, or affect the conduct of a government by mass destruction, assassination or kidnaping. 18 U.S.C. § 2331(1)(B). This element is not a "state-of-mind requirement; [but rather] it is a matter of external appearance." *Boim v. Holy Land Found. for Relief & Dev.,* 549 F.3d 685, 694 (7th Cir. 2008). The subjective intent of the defendant is not relevant. *Id.*

Subsection B of the definition of "international terrorism" incorporates the requisite terrorism aspect in order to distinguish between acts of terrorism and ordinary acts of violent crime. *Id.* Donations appear to be intended to intimidate or coerce a civilian population, influence the policy of a government by intimidation or coercion, or affect the conduct of a government by mass destruction, assassination or kidnaping when a donor knows the terroristic aims and activities of its recipient and when it is foreseeable that the donations will advance such terroristic aims. *Id.* In this case, the terrorist attacks at issue in Israel, by their nature, were intended to intimidate and coerce the Israeli population and influence the policies of the Israeli government by intimidation, coercion, and mass destruction. *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 49 (D.D.C. 2010) (finding sufficient pleading of an appearance of intent by the Bank of China to achieve the three

12

results under Section 2331(1)(B) when the Bank of China continued to transmit funds for the PIJ despite being aware of the substantial probability that their continued support of the PIJ would facilitate the planning, preparation, and execution of terrorist attacks in Israel).

The *Stansell* holding does not warrant dismissal in this case.  In *Stansell*, plaintiffs pled that defendants' purpose in providing financial support to the terrorist organization was to prevent interference with their exploration activities in Colombia.  *Stansell*, 2011 WL 1296881, at *9.  While the court found an objective observer could not conclude defendants intended to achieve any of the results listed in the statute, the court relied on the subjective intent of the defendants as pled by the plaintiffs.  In this case, the continued financial and material support outside of the regulations of the OFP by the defendants to the Hussein regime, which was known to fund terrorist acts in Israel, could lead an objective observer to infer that such donations appeared to be intended to accomplish terroristic aims.  Plaintiffs' allegations in their first amended complaint satisfy the minimum pleading requirements for this element of their ATA claims.

In sum, the rulings relied upon by the defendants do not alter in any material respect the law or change the application of the law to the facts as previously done in this case.  Here, the court applied the same governing principles to the expanded allegations made in plaintiffs' first amended complaint.  The court determined that plaintiffs' allegations were sufficiently pled, and the court finds no reason to disturb that ruling on the basis of the subsequent case law presented by defendants.

### D.    Aiding and Abetting

In its previous ruling, the court did not directly address whether secondary liability, or aiding or abetting, was available under the ATA.  *Abecassis*, 785 F. Supp. 2d at 645 ("Assuming, without deciding, that secondary liability is available under the ATA, it would be governed by [ ] tort

13

principles . . ..").  However, the court went on to consider the applicable legal standards governing either primary or secondary liability, and in most instances, found that plaintiffs had alleged sufficient facts to make a claim for primary or secondary liability under the ATA.  The court ultimately held that the amended complaint alleged sufficient facts supporting ATA claims based on aiding and abetting liability under Sections 2339A, 2339B, and 2339C.  *Id.* at 649.

The Second Circuit recently addressed directly whether aiding and abetting was a viable basis for liability under the civil provision of the ATA.  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 123 (2d Cir. 2013); *Rothstein*, 708 F.3d at 97.  Consistent with the Seventh Circuit, the court found that an aiding and abetting theory of liaiblity was not available under the ATA.  *Id.*; *Boim*, 549 F.3d at 689.  The court reasoned that the statutory language does not signify an intent by Congress to imply such a cause of action.  *Rothstein*, 708 F.3d at 97 (citing *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 182, 114 S. Ct. 1439 (1994) ("Thus, when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors.")).  Because the ATA is silent as to the permissibility of aiding and abetting liability in the civil liability provision, yet includes aiding and abetting language in the corresponding criminal provisions, the court refused to conclude that Congress intended such liability to exist.  *Id.* at 97-98.

For the same reasons, the court agrees with the holding in *Rothstein* and *Boim* as it pertains to aiding and abetting liability.  Although the court previously declined to find whether a specific cause of action for aiding and abetting existed, it assumed in its analysis that the same standards would apply if secondary liability were available.  While the plaintiffs have stated a cause of action

14

under theories of primary liability, this court holds that aiding and abetting is not available to private litigants under the civil provision of the ATA.  Plaintiffs' claims for aiding and abetting are dismissed.

### E.    Respondeat Superior - El Paso Corp.

The court also directly addressed plaintiffs' claims against El Paso based on respondeat superior.  *Abecassis*, 785 F. Supp. 2d at 649-50.  While El Paso may have failed to make a "specific argument as to why this claim should be dismissed," the court considered imputed liability to El Paso on the basis of Oscar Wyatt's purported agency or employment relationship with El Paso.  *Id.* at 650.  The court found that the plaintiffs' allegations of respondeat superior liability for El Paso were sufficient to survive a motion to dismiss.  *Id.*  The court finds no reason to disturb this ruling.

## IV.  CONCLUSION

For the reasons stated herein, the court finds that defendants' motions for judgment on the pleadings (Dkts. 235, 237 & 462) are DENIED in part and GRANTED in part.  The plaintiffs' first amended complaint alleges sufficient facts that, if proven, plausibly state causes of action for direct liability under the ATA.  The court finds no reason to amend the previous ruling with respect to these claims.  However, the court does find that plaintiffs' claims for aiding and abetting are not available under the ATA; and, therefore, those claims are DISMISSED.

It is so **ORDERED**.

Signed at Houston, Texas on March 12, 2014.

_____
Gray H. Miller
United States District Judge

15